## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| In re: | Chapter 11 |
| **MID-STATES SUPPLY COMPANY, INC.,** | Case No. 16-_____ (___) |
| **Debtor.** | |

## MOTION FOR ORDER AUTHORIZING MAINTENANCE AND CONTINUATION OF EXISTING CASH MANAGEMENT SYSTEMS AND BANK ACCOUNTS

Debtor Mid-States Supply Company, Inc. ("Debtor"), pursuant to 11 U.S.C. §§ 105(a) and 345 and Local R. Bank. P. 2015-6, for its Motion for Order Authorizing Maintenance and Continuation of Existing Cash Management Systems and Bank Accounts (the "Motion"), states and alleges as follows:

### Procedural Background

1.      On February 7, 2016 (the "Petition Date") Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code in this Court in the United States Bankruptcy Court for the Western District of Missouri.

2.      Debtor remains in possession of its assets and continues to operate as debtor-in-possession in accordance with 11 U.S.C. §§ 1107 and 1108.

3.      An Official Committee of Unsecured Creditors has not yet been appointed.

4.      This is a core proceeding pursuant to 28 U.S.C. § 157(2)(A).

5.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1408.

### Debtor's Background

7.     Debtor supplies pipes, valves and fittings to ethanol, pipeline and power industries in the United States. It also offers hoses, tools, compounds, gauges and thermometers. In addition, Debtor provides compressed air, steam, process control and services, along with IT solutions, such as project and customer websites, PocketPC software, customer inventory management, integrated supply, order tracking system and communication options. Debtor's products are sold to a myriad of industries, including large industrial plant operations, food production, oil and gas pipeline transportation, mechanical construction and other large industrial players.

8.     Founded and headquartered in Kansas City, Missouri since 1947, Debtor, a family-owned company, operates out of 23 locations, certain of which branches operate under the "Midco" fictitious brand name, in the following states—Alabama, Colorado, Kansas, Louisiana, Mississippi, Missouri, Montana, Nebraska, New Mexico, North Dakota, Oklahoma, Texas, Utah, West Virginia and Wyoming.  Debtor currently has approximately 228 employees.

9.     On September 1, 2011, Debtor entered into Credit and Security Agreement, as amended from time to time (the "Credit Agreement") with Wells Fargo Bank, National Association ("Wells Fargo"), under which it borrowed $45 million, which line grew with its growth to approximately $60 million (the "Prepetition Credit Facility").  Using the expanded availability from Wells Fargo, Debtor roughly doubled its sales and EBITDA from fiscal 2011 through today.  By 2015, a confluence of factors, including the demand for inventory with over 32,000 SKU's, no concentration in the customer base (meaning a broad demand for stocked product) and a rapid decline in the oil and gas sector, kept Debtor's inventory and payables at unsustainably high levels. These factors led Debtor's management to implement plans to right-

WA 7763410.2

size the business with respect to inventory, payables, rationalizing the customer base, operating expenses and tightly managing cash flow.

10.     As a result of various defaults under the Credit Agreement, on August 28, 2015, Debtor entered into its first forbearance agreement with Wells Fargo.  In connection with this forbearance agreement and Debtor's restructuring efforts, on August 25, 2015, Debtor engaged Winter Harbor LLC to provide certain services of a chief restructuring officer ("CRO") and other support services.  Stuart Noyes has been acting as Debtor's CRO since August 2015 pursuant to an engagement letter dated August 25, 2015, which is discussed in further detail in Debtor's application to employ Winter Harbor LLC.

11.     Since the first forbearance agreement with Wells Fargo, Debtor has entered into two other forbearance agreements with Wells Fargo, the most recent of which, dated December 28, 2015, expires by its terms on February 29, 2016 and contains numerous benchmarks (the "Benchmarks").   While Debtor and its CRO have been working tirelessly to restructure its business and meet the Benchmarks, Debtor has determined in its business judgment that filing the captioned bankruptcy case is in the best interest of its creditors.

## Cash Management System

12.     In the ordinary course of its business and prior to the Petition Date, Debtor utilized a cash management system that provided for well-established mechanisms for the collection, concentration, management and disbursement of funds used in the Debtor's business operations (the "Cash Management System").   A list of Debtor's bank accounts (the "Bank Accounts") is set forth on **Exhibit A**.  Through the Cash Management System, Debtor is able to monitor its cash position on a daily basis, monitor the collection and disbursement of funds and maintain control over the administration of the various Bank Accounts required to effect the collection, disbursement and movement of cash.

WA 7763410.2

13.    As reflected on Exhibit A, Debtor maintains several Bank Accounts, which are primarily maintained at Wells Fargo, Bank of America, N.A. ("Bank of America"), First National Bank ("First National") and Commerce Bank.    The Cash Management System primarily consists of the following accounts:

a.    Lockbox Account.    Substantially all of Debtor's accounts receivable payments are collected in a "lockbox" maintained by Wells Fargo (the "Lockbox Account").    Approximately 75% of the payments are received by check to the Lockbox Account, and the remaining payments of 25% are by direct wire transfer and ACH.    As of the Petition Date, Wells Fargo exercises dominion and control over the Lockbox Account, and the cash is swept daily to pay down the Prepetition Credit Facility.

b.    Merchant Account.    Debtor has an agreement with a merchant card services company to make credit card sales (Visa and American Express) and to allow customers to pay outstanding accounts receivable balances.    These credit card collections are deposited in the Merchant Account at Wells Fargo and then transferred to pay down the Prepetition Credit Facility.

c.    Operating Accounts.

i.    Primary Operating Account—On a daily basis, Debtor submits a request to Wells Fargo to approve disbursements from the Primary Operating Account, which typically includes disbursements for payment of a majority of operating expenses and other accounts payable; payroll expenses, which are transferred to Debtor's payroll service company; transfers to the "Store Disbursement Account" to cover other operating expenses and purchases at

WA 7763410.2

branch locations; transfers to the Healthcare Account; and payment of certain healthcare premiums and claims.

    ii. <u>Store Disbursement Account</u>—Debtor maintains a zero balance "Stores Disbursement Account" for the payment of other select operating expenses not paid from the Operating Account. On a daily basis, funds from the Operating Account are automatically transferred to the Store Disbursement Account to the fund Debtor's daily disbursements.

    d. <u>Healthcare Account</u>. Debtor maintains a zero balance "Healthcare Account" for disbursements of self-insured medical claims that are paid by UMR (Debtor's third party administrator). On a daily basis, funds from the Operating Account are automatically transferred to the Healthcare Account to the fund Debtor's daily disbursements.

    e. <u>Branch Bank Accounts</u>. Debtor maintains three separate checking accounts with small balances for *de-minimus* cash sales and for replenishing the petty cash account as further identified on Exhibit A.

<b><u>Relief Requested</u></b>

14. Pursuant to Code § 345(a), a "trustee in a case under this title may make such deposit or investment of the money of the estate for which such trustee serves as will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment."

15. Furthermore, the guidelines established by the United States Trustee for Region 13 instructs a debtor-in-possession to, among other things, immediately close all of its bank accounts, open new bank accounts and deposit all future receipts in these new accounts. *See* Guideline # 3.

WA 7763410.2

16.    By virtue of the size and nature of the business operations in which Debtor is engaged and the numerous suppliers, customers and others with whom Debtor transacts business, corresponds and issues documentations on a daily basis, it is imperative that Debtor be permitted to continue to use its existing Cash Management System. Debtor believes that the "doctrine of necessity" amply justifies such continued use.

17.    Debtor submits that the granting of the relief requested herein will facilitate the smooth and orderly transition of Debtor's operations into an effective reorganization and minimize the disruption to its business affairs.  Also, Debtor will promptly contact each of its banks and inform them of the commencement of the captioned bankruptcy case,  thereby helping to prevent the inadvertent payment of checks drawn pre-petition, except as otherwise authorized by this Court.

18.    If Debtor is forced to close its existing bank accounts and open new bank accounts, it would cause extensive delays, confusion and result in damage to Debtor's operations and reorganization efforts.  Given the disruptive and possibly detrimental impact upon Debtor's estate  in requiring Debtor it to abandon the Cash Management System, it is in the best interest of Debtor, its estate and its creditors to grant the relief requested herein.

19.    All of the accounts listed on Exhibit A are held at FDIC insured financial institutions, thus fulfilling Debtor's obligations under Code § 345(a) and Local R. Bank. P. 2015-6.

WHEREFORE, Debtor respectfully requests this Court enter an Order granting this Motion and authorizing Debtor to maintain and continue the Cash Management System, maintain use of its existing checks and other business documents, maintain use of its existing

WA 7763410.2

bank accounts as described herein and grant any other relief at equity or law this Court deems

necessary.

February 7, 2016

**SPENCER FANE LLP**

By: /s/ Lisa A. Epps
Scott J. Goldstein          MO Bar No. 28698
Lisa A. Epps                MO Bar No. 48544
Eric L. Johnson             MO Bar No. 53131
1000 Walnut Street, Suite 1400
Kansas City, MO 64106
Office: 816-474-8100
Facsimile: 816-474-3216
sgoldstein@spencerfane.com
lepps@spencerfane.com
ejohnson@spencerfane.com

PROPOSED COUNSEL FOR DEBTOR

WA 7763410.2