**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| In re: | Chapter 11 |
| **MID-STATES SUPPLY COMPANY, INC.,** | Case No. 16-40271-11 |
| Debtor. | |

**EMERGENCY MOTION TO APPROVE INTERIM ORDER**
**(I) AUTHORIZING SECURED POST-PETITION FINANCING ON A**
**SUPERPRIORITY BASIS PURSUANT TO 11 U.S.C. § 364, (II) AUTHORIZING**
**FOURTH AMENDMENT TO CREDIT AGREEMENT AND DIP FACILITY, AND**
**(III)  SCHEDULING A FINAL HEARING PURSUANT TO**
**BANKRUPTCY RULE 4001(c)**

Debtor Mid-States Supply Company, Inc. ("Debtor"), by and through its undersigned attorneys, for its *Emergency Motion to Approve Stipulation and Interim Order (I) Authorizing Secured Post-Petition Financing on a Superpriority Basis Pursuant to 11 U.S.C. 364, (II) Authorizing Fourth Amendment to Credit Agreement and DIP Facility, and (III) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001(c)* (the "Motion").  In further support of this Motion, Debtor states as follows:

**I.      Concise Statement of Material Provisions Pursuant to Bankruptcy Rule**
**4001(b)(1)(B) and (c)(1)(B)**

1.      Debtor and Wells Fargo Bank, National Association (the "Lender") entered into that certain Credit and Security Agreement dated as of September 1, 2011, as amended, modified or restated from time to time (collectively, the "Credit Agreement"), and as further documented, recorded and evidenced by various other agreements, instruments, financing statements and documents entered into in connection with the Credit Agreement, all as may have been amended,

modified or restated from time to time (collectively, the "Lender Pre-Petition Agreements"),[1]

pursuant to which the Lender made certain loans and other extensions of credit available to

Debtor.  A copy of the key Lender Pre-Petition Agreements is attached as **Exhibit A**.

    2.    Debtor is seeking post-petition financing in the form of a revolving line of credit

up to a maximum aggregate principal amount outstanding as of any day not to exceed

$20,000,000 and subject to a Borrowing Base (the "DIP Facility"). The DIP Facility shall bear

interest at a floating annual interest rate equal to Daily Three Month LIBOR plus three and three

fourths percent (3.75%), which interest rate shall change when the Daily Three Month LIBOR

Changes. The DIP Facility is more fully described in the proposed Fourth Amendment to Credit

Agreement (together with the Pre-Petition Lender Agreements, the "Loan Documents"), attached

as **Exhibit B** and the proposed Interim Order attached as **Exhibit C**.[2] The DIP Facility will allow

Debtor to continue its operations, meet payroll and other necessary, ordinary course business

expenditures, administer and preserve the value of its estate, and avoid immediate and

irreparable harm.

    3.    The DIP Facility shall continue through April 24, 2016, or such earlier date as all

Pre-Petition Indebtedness and DIP Facility is paid in full, unless terminated by Lender prior to

this date following an Event of Default or otherwise pursuant to the terms of the Loan

Documents or the Interim Order.

    4.    The following chart[3] lists and sets out the location within the Interim Order and

relevant documents of all material provisions of the agreed proposed Interim Order:

---

[1] All capitalized terms not otherwise defined in the Interim Order shall have the meaning given such terms in the Lender Pre-Petition Agreements.

[2] At the time of filing this Motion, the Debtor and Lender were still in the process of finalizing the Interim Budget referenced in the Interim Order and Proposed Amendment. Accordingly, the Debtor reserves the right to amend the attached Budget prior to the Interim Hearing. Debtor acknowledges that Lender's obligation to fund and to consummate the proposed DIP Facility is subject to the negotiation and execution of mutually acceptable, definitive, written loan documents, and an Interim Budget that is agreed to by the Lender and the Debtor.

[3] The chart is meant as a summary only and parties should refer directly to the Lender Pre-Petition Agreements (Ex. A), Fourth Amendment (Ex. B) and the Interim Order (Ex. C) for complete details with respect to the relief provided therein.

WA 7764555.4

| Provision | Location and Nature |
|---|---|
| (1) Events of Default | **Credit Agreement § 6.1; 4th Amendment ¶ 15-16.** The primary location for Events of Default under the DIP Facility.<br><br>**Page 11-12, ¶ 11** – In addition to the Credit Agreement, the Interim Order provides for several milestones as events of default with respect to the sale of the Debtor's assets. |
| (2) Provisions granting a priority or a lien on property of the estate under 11 U.S.C. § 364(c) or (d) or providing adequate protection or priority for a claim that arose before the commencement of the case, including the grant of a lien on property of the estate to secure the claim, or the use of property of the estate or credit obtained under § 364 to make cash payments on account of the claim. | **Page 9, ¶ 8** – Superpriority Claim with priority over any and all administrative expenses.<br>**Page 9, ¶ 8** – First priority, perfected Lien upon all assets subject to the Carve-Out, Counsel's Fees with respect to Retainers, and Permitted Liens.<br><br>**See 4th Amendment ¶ 1, Credit Agreement §§ 2.1, 5.3(a).** |
| (3) Provisions that prime any properly perfected lien without that lienholder's consent. | Not applicable. |
| (4) Provisions that grant cross-collateralization protection to the Lender  (i.e., clauses that secure prepetition debt with categories of collateral that were not covered by the Lender's lien pre-petition) other than liens granted solely as adequate protection against diminution in value of the Lender's Pre-Petition Collateral. | To the extent applicable, see Box #2 of the Chart. |
| (5) Provisions regarding the validity, enforceability, priority, or amount of a pre-petition claim, or of any lien securing the pre-petition claim. | **Page 3-4, ¶ 4** – Concerns amount, validity, priority and enforceability of Lender's claims.<br>**Page 16, ¶ 18** – Findings contained Paragraph 4 of the Interim Order shall be binding unless certain action is commenced the later of 45 days after the entry of the Interim Order or 30 days from the date of formation of an official committee.<br><br>**See 4th Amendment ¶ 22, Credit Agreement Art. IV, Exhibit D** |
| (6) Provisions regarding a waiver or modification of the applicability of nonbankruptcy law relating to the perfection of a lien on property of the estate, or on the foreclosure or other enforcement of the lien. | **Page 11, ¶ 9** – Entry of Interim Order automatically perfects liens granted by Interim Order. |
| (7) Provisions that relate to a sale of substantially all of the Debtors' assets | **Page 11-12, ¶ 11** – An event of default if Debtor's fail to meet any of the 363 Sale Benchmarks as set forth in the Interim Order. **See also 4th Amendment ¶ 16, Credit Agreement § 6.1.** |
| (8) Provisions for the payment of professional fees of the Debtors or any committee, including any carve-outs for such payments. | **Page 13, ¶ 15** – The carve-out provisions include: (1) UST Fees and court costs; (2) Debtor's attorneys' fees and expenses in the amount $375,000; and (3) the Committee's professional fees in the amount of $25,000. **See also 4th Amendment ¶ 2, 20, Credit Agreement § 1.2(a), Exhibit A.** |
| (9) Provisions for the payment of pre-petition debt. | **Page 11, ¶ 10** – Proceeds or payments received by Lender with respect to the Collateral shall be applied to Pre-Petition Indebtedness before the Post-Petition indebtedness. **See also 4th Amendment ¶ 25, Credit Agreement § 1.6.** |
| (10) Provisions regarding a waiver or modification of Bankruptcy Code provisions or applicable rules relating to the automatic stay, including provisions that establish procedures or conditions with respect to the same. | **Page 12, ¶ 12** – Shortens and limits Debtor's ability to respond to relief from the automatic stay by the Lender in the event of default. **See also 4th Amendment ¶ 17, Credit Agreement § 6.2(b).** |

WA 7764555.4

| | |
|---|---|
| (11) Provisions containing a waiver or modification of any entity's authority or right to file a plan or seek an extension of time in which the debtor has the exclusive right to file a plan or solicit acceptances of a plan during the time periods specified in 11 U.S.C. § 1121. | Not applicable. |
| (12) Provisions that require or prohibit specific terms in the debtor's plan or that establish that proposing a plan inconsistent with the Interim Order constitutes a default. | **Page 8, ¶ 7** – Entry of Order Confirming Plan terminates the DIP Facility. **See also 4th Amendment ¶ 20, Credit Agreement Exhibit A**<br><br>**Page 14-15, ¶ 16** – Credit Agreement and other Loan Documents shall not be modified by Confirmation Order.<br><br>**4th Amendment ¶ 16, Credit Agreement § 6.1** - Event of default if the Bankruptcy Court shall enter an order approving a disclosure statement in connection with a plan of reorganization proposed by Company or any other Person which plan of reorganization is inconsistent with Company agreements and obligations hereunder or under the Interim Order or the Final Order, e.g., a plan which does not provide for payment in full in cash of the Indebtedness as required by Section 1129(a)(9) of the Bankruptcy Code. |
| (13) Provisions regarding the establishment of deadlines for filing a plan of reorganization, for approval of a disclosure statement, for a hearing on confirmation, or for entry of a confirmation order. | Not applicable. |
| (14) Provisions containing a waiver or modification of any entity's authority or right to request the use of cash collateral under § 363(c), or request authority to obtain credit under § 364. | **4th Amendment ¶ 16, Credit Agreement § 6.1** – Event of Default if an order shall be entered granting any party (other than Wells Fargo) in the Case a priority under Section 364(c)(1) of the Bankruptcy Code unless such order provides for payment in full in cash of the Indebtedness upon closing of such financing<br><br>**See also 4th Amendment ¶ 29, Credit Agreement § 6.1** |
| (15)  Provisions that address the rights and obligations of guarantors or co-obligors. | Not applicable. |
| (16) Provisions that obligate the Debtor to pay any of Lender's professional fees. | **Page 7, ¶ 6.c** – Provides for reimbursement of Lender's professional fees. **See also 4th Amendment ¶ 35. Credit Agreement § 7.7.** |
| (17) Provisions the purport to bind a subsequent trustee. | **See Box #5.** |
| (18) Provisions containing a release, waiver, or limitation on any claim or other cause of action belonging to the estate or the trustee, including any modification of the statute of limitations or other deadline to commence an action. | **Page 13-14, ¶ 15** – Carve-Out and retainer monies cannot be used with respect to claims being brought against Lender.<br><br>**Page 4, ¶ 4**– Waiver and release of defenses against the Lender, subject to parties in interest's right to contest under paragraph 18 of the Interim Order.<br><br>**4th Amendment ¶ 16, Credit Agreement § 6.1** – Event of Default occurs if the Debtors or any other party in interest commences an action adverse to Lender or its rights and remedies.<br><br>**4th Amendment ¶ 34** – Release of Claims by Debtor. |
| (19) Provisions containing the indemnification of any entity. | **Credit Agreement § 7.8** - Indemnity Provision regarding various taxes, charges and claims. |
| (20) Provisions containing a release, waiver, or limitation of any right under 11 U.S.C. § 506(c). | **4th Amendment ¶ 16, Credit Agreement Exhibit D** – Warranty and representation related to § 506(c) surcharge. *Con't* |

WA 7764555.4

| | **Page 17, ¶ 13** – Waiver of claims under 506(c) subject to final order. |
|---|---|
| (21) Provisions granting a lien on any claim or cause of action arising under 11 U.S.C. §§ 544, 545, 547, 548, 549, 553(b), 723(a), or 724(a). | **Page 9, ¶ 8** – Lender's Collateral includes Chapter 5 causes of action and the proceeds thereof, but subject to final order. |
| (22) Provisions providing for a waiver or modification of the applicability of nonbankruptcy law. | **Page 11, ¶ 8** – No requirement filing of financing statements to perfect liens on Collateral.<br><br>**4th Amendment ¶ 34** – Release of Claims by Debtor.<br><br>**Page 16, ¶ 18** – Findings contained Paragraph 4 of the Interim Order shall be binding unless certain action is commenced the later of 45 days after the entry of the Interim Order or 30 days from the date of formation of an official committee.<br><br>**Page 16, ¶ 19** – Preservation of right to Credit Bid. **See also 4th Amendment ¶ 26** |
| (23) Provisions to remain in effect if interim relief granted, but final relief denied. | **Page 14-15, ¶¶ 16-17** – Provides for full protections under § 364(e) and that provisions remain in effect if interim relief is granted, but final relief is denied, stayed or modified. |
| (24) Post-Petition Financing Fee | **Page 7, ¶ 6(d)** - $300,000. **See also 4th Amendment ¶ 5, Credit Agreement § 1.8.** |

## II.    Procedural Background and Jurisdiction

5.      On February 7, 2016 (the "Petition Date"), Debtor filed for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of Missouri (the "Bankruptcy Court").

6.      Debtor remains in possession of its assets and continues to operate as debtor-in-possession in accordance with 11 U.S.C. §§ 1107 and 1108.

7.      An Official Committee of Unsecured Creditors has not yet been appointed in the case.

8.      This is a core proceeding pursuant to 28 U.S.C. §157(2)(D), (K), (M), and (O).

9.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1334.

10.     Venue is proper in this Court pursuant to 28 U.S.C. §1408.

11.     The Statutory and Rule Predications for this Motion are 11 U.S.C. §§ 105, 361, 362, 363, 364 and 507, and Bankruptcy Rules 2002, 4001, 6004, and 9014.

WA 7764555.4

### III.    Debtor's Background

12.    Debtor supplies pipes, valves and fittings to ethanol, pipeline and power industries in the United States. It also offers hoses, tools, compounds, gauges and thermometers. In addition, Debtor provides compressed air, steam, process control and services, along with IT solutions, such as project and customer websites, PocketPC software, customer inventory management, integrated supply, order tracking system and communication options. Debtor's products are sold to a myriad of industries, including large industrial plant operations, food production, oil and gas pipeline transportation, mechanical construction and other large industrial players

13.    Founded and headquartered in Kansas City, Missouri since 1947, Debtor, a family-owned company, operates out of 23 locations, certain of which branches operate under the "Midco" fictitious brand name, in the following states—Alabama, Colorado, Kansas, Louisiana, Mississippi, Missouri, Montana, Nebraska, New Mexico, North Dakota, Oklahoma, Texas, Utah, West Virginia and Wyoming.  Debtor currently has approximately 228 employees.

14.    On September 1, 2011, Debtor entered into the Credit Agreement with Lender under which it borrowed $45 million, which line grew with its growth to approximately $60 million.  Using the expanded availability from Lender, Debtor roughly doubled its sales and EBITDA from fiscal 2011 through today.  By 2015, a confluence of factors, including the demand for inventory with over 32,000 SKU's, no concentration in the customer base (meaning a broad demand for stocked product) and a rapid decline in the oil and gas sector, kept Debtor's inventory and payables at unsustainably high levels. These factors led Debtor's management to implement plans to right-size the business with respect to inventory, payables, rationalizing the customer base, operating expenses and tightly managing cash flow.

15.    As a result of various defaults under the Credit Agreement, on August 28, 2015,

WA 7764555.4

Debtor entered into its first forbearance agreement with Lender.  In connection with this forbearance agreement and Debtor's restructuring efforts, on August 25, 2015, Debtor engaged Winter Harbor LLC to provide certain services of a chief restructuring officer ("CRO") and other support services.  Stuart Noyes has been acting as Debtor's CRO since August 2015 pursuant to an engagement letter dated August 25, 2015, which is discussed in further detail in Debtor's application to employ Winter Harbor LLC.

16.     Since the first forbearance agreement with Lender, Debtor has entered into two other forbearance agreements with Lender, the most recent of which, was dated December 28, 2015. On January 21, 2016, Lender notified the Debtor of a termination of the Forbearance Period, and would only continue to make advances on a more restricted basis. While Debtor and its CRO have been working tirelessly to restructure its business and operate under the tighter credit requirements, Debtor determined in its business judgment that filing the captioned bankruptcy case is in the best interest of its creditors.

17.     Prior to the Petition Date, Debtor marketed its assets to parties interested in either taking an equity interest in Debtor or purchasing substantially all of its assets.  Debtor intends to continue the sale process and believes that the sale of its assets as a going concern is in the best interest of the captioned estate, the creditors, its employees and community.  In the absence of the DIP Facility, the sale of Debtor's business and assets as a going concern would not be possible, and would cause serious and irreparable harm to Debtor and its estate.

## IV.    Relief Requested

18.     By this Motion, Debtor seeks, *inter alia*, pursuant to Bankruptcy Code  §§ 105, 361, 362, 363, 364 and 507, and Bankruptcy Rules 2002, 4001, 6004 and 9014, the following:

a.     Authority for the Debtor to obtain secured post-petition financing on a super-priority basis subject only to the Permitted Liens (as defined in the Credit

WA 7764555.4

Agreement);

b.    Authority for the Debtor to execute and enter into the Fourth Amendment, which amends the Credit Agreement, to provide for the DIP Facility and to perform such other and further acts as may be required in connection with the Credit Agreement and the Loan Documents;

c.    Granting super-priority administrative expense claims to the Lender for all post-petition financing provided by Lender payable from, and having recourse to all of the pre-petition and post-petition property of the Debtor's bankruptcy estate (the "Estate") and all proceeds thereof, subject only to the Carve-Out (defined in the Interim Order) and the Permitted Liens, and granting liens for the post-petition financing to Lender in all Post-Petition Collateral (defined in the Interim Order) in accordance with the Credit Agreement, the Loan Documents and the proposed Interim Order;

d.    Approval of the terms and conditions of the DIP Facility, the Credit Agreement, and the Interim Order on an interim and final basis; and

e.    Schedule a final hearing (the "Final Hearing") to be held on or before February 26, 2016 or as otherwise allowed under Bankruptcy Rule 4001(c) to consider entry of a final order.

## V.    Lender's Prepetition Claim

19.    Prior to the Petition Date, the Lender loaned money to or for the benefit of the Debtor pursuant to the terms and conditions of the Lender Pre-Petition Agreements.

20.    As of February 5, 2016, (i) Debtor was liable to the Lender in respect of loans made pursuant to the Lender Pre-Petition Agreements in the aggregate principal amount of approximately $23 million (exclusive of interest and fees accrued and unpaid thereon and other costs, expenses and indemnities), and (ii) pursuant to the Lender Pre-Petition Agreements, the

WA 7764555.4

Debtor was liable to the Lender for accrued and unpaid interest, commitment fees, attorneys' and advisors' fees, other out-of-pocket expenses, costs and indemnities (collectively, subsections (i), and (ii) of this paragraph are the "Lender Pre-Petition Loan Indebtedness").

21.     As security for repayment of the Lender Pre-Petition Indebtedness, the Debtor granted to the Lender security interests in, and liens upon, substantially all of its assets, as more fully described in the Lender Pre-Petition Agreements (collectively, the "Pre-Petition Collateral").

**VI.     Terms of the DIP Facility**

22.     The terms of the DIP Facility are more fully set forth in the Interim Order, Credit Agreement, the Fourth Amendment, and the Other Loan Documents. The material terms are summarized in the Debtor's Concise Statement set forth above.

23.     Pursuant to the DIP Facility, Debtor is seeking a loan from Lender in the form of a revolving line of credit up to a maximum aggregate principal amount outstanding as of any day not to exceed $20,000,000 and subject to a Borrowing Base and Budget (as more fully described in the Fourth Amendment and Interim  Order). The DIP Facility shall bear interest at a floating annual interest rate equal to Daily Three Month LIBOR plus three and three fourths percent (3.75%), which interest rate shall change when the Daily Three Month LIBOR Changes. The DIP Facility shall continue through April 24, 2016, or such earlier date as all Pre-Petition Indebtedness and DIP Facility is paid in full, unless terminated by Lender prior to this date following an Event of Default or otherwise pursuant to the terms of the Loan Documents or the Interim Order.

24.     Pursuant to Bankruptcy Code § 364(c) and (d), Debtor will grant to Lender a lien on all of its assets, as more fully described in the Interim Order (the "Collateral") to secure the indebtedness represented by the DIP Facility, subject and junior to any prior liens of third parties

WA 7764555.4

that exist pursuant to law which were properly perfected (or become properly perfected after the Petition Date under Bankruptcy Code § 546(b)) and are senior in priority to the liens of the Lender prior to the Petition Date ("Permitted Liens").  As additional security for the Post-Petition Financing, Lender shall be accorded a super-priority administrative claim pursuant to Bankruptcy Code § 364(c)(1) with priority over all costs and expenses of administration, subject only to the Carve-Out (defined below).

25.    The Liens and Superpriority Claims granted to the Lender pursuant to the Loan Documents and the Interim Order shall be subject and subordinate to a carve-out (the "Carve-Out") for certain professional fees incurred by professionals retained pursuant to Bankruptcy Code §§ 327 or 1103(a), and quarterly fees required to be paid pursuant to 28 U.S.C. § 1930(a)(6) and any fees payable to the Clerk of the Bankruptcy Court, as specifically provided by the terms and conditions of the proposed Interim Order and Loan Documents.

## VII.    Debtors' Efforts to Obtain Post-Petition Credit

26.    Debtor does not have sufficient available sources of working capital and financing to operate its business in the ordinary course of business or operate its business and maintain its property in accordance with state and federal law and has commenced this proceeding to consummate the sale of its business and assets as a going concern.  In order to accomplish this task for the benefit of its creditors and Estate, Debtor has an immediate need for the financing. In the absence of the DIP Facility, the sale of Debtor's business and assets as a going concern would not be possible, and would cause serious and irreparable harm to Debtor and the Estate.

27.    Given the Debtor's current financial condition, financing arrangements and capital structure, the Debtor cannot obtain unsecured credit allowable under Bankruptcy Code § 503(b)(1) as an administrative expense.  Debtor submits that financing on a post-petition basis is not otherwise available without the Debtor (i) granting, pursuant to Bankruptcy Code § 364(c)(l),

WA 7764555.4

claims having priority over any and all administrative expenses of the kinds specified in Bankruptcy Code §§ 503(b) and 507(b), other than as described above in respect of the Carve-Out, (ii) securing, pursuant to Bankruptcy Code §§ 364(c) and (d), such indebtedness and obligations with security interests in and liens on all of the Debtor's assets and the Pre-Petition Collateral as described below, and (iii) providing for adequate protection of the Lender's interests as described below.

28.     Debtor has continued in the operation of its businesses since the Petition Date. Any interruption of cash flow, even on a temporary basis, would severely and irreparably harm its operation.  Debtor must have financing to continue to purchase inventory, and to pay employee, rent and utility expenses.  Due to the lack of favorable credit terms from vendors for the past several months (Debtor is primarily on a COD basis), Debtor's cash position is such that, without the availability of immediate additional capital, Debtor cannot meet operating expenses. Termination of Debtor's operations would jeopardize the sale process, injure all of Debtor's creditors, both unsecured and secured, and could cost approximately 228 employees their jobs. Accordingly, Debtors submit that the DIP Facility reflects the exercise of its sound business judgment.

29.     The terms and conditions of the DIP Facility are fair and reasonable and were negotiated by well-represented, independent parties in good faith and at arms-length. Accordingly, the DIP Lender, and all obligations incurred under the Loan Documents, should be accorded the benefits of Code § 364(e).

## VIII.   The Automatic Stay Should Be Modified On A Limited Basis

30.     The relief requested herein contemplates a modification of the automatic stay (to the extent applicable) to permit the Debtor to: (i) grant the security interests, liens and superpriority claims described in the Interim Order, and to perform such acts as may be

WA 7764555.4

requested to assure the perfection and priority of such security interests and liens; (ii) permit the DIP Lender to exercise, upon the occurrence of and during the continuance of an event of default, all rights and remedies under the DIP Facility; and (iii) implement the terms of the proposed Interim Order.

31.    Stay modifications of this kind are ordinary and standard features of post-petition debtor financing facilities and, in the Debtor's business judgment, are reasonable and fair under the present circumstances.

## IX.    Request for Interim Relief and Motion for Expedited Hearing

32.    Bankruptcy Rule 4001(c) provides that a final hearing on a motion to use cash collateral or obtain credit, respectively, may not be commenced earlier than fourteen (14) days after the service of such motion. Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on the motion and authorize the use of cash collateral and the obtaining of credit to the extent necessary to avoid immediate and irreparable harm to a Debtor's estate pending a final hearing.

33.    Debtor requests that the Court set a preliminary hearing on the approval of the DIP Facility and that at such preliminary hearing, the Court authorize the temporary use of the DIP Facility on an interim basis. An immediate need exists for Debtor to obtain approval of the DIP Facility in order to pay payroll, rent, utilities, and pay other ongoing expenses in the ordinary course of business and as identified in the Budget.  Without the immediate use of the DIP Facility, Debtor's ability to operate its businesses will be severely impaired.

34.    Prior to a final hearing, Debtor's use of the proceeds of the DIP Facility shall be consistent with the Budget in order to avoid immediate and irreparable harm to the Estate pending a final hearing.  Debtor requests that the Court also set a final hearing for the approval of the DIP Facility at the earliest possible date. In light of the nature of the relief requested, the

12

Debtors respectfully submit that no further notice is necessary.

**X.    Notice**

35.    Debtor's counsel shall serve this Motion and a copy of the proposed Interim Order on all of the following parties via United States, first class mail, postage prepaid:  (i) the Office of the United States Trustee, (ii) the attorneys for Lender, (iii) all creditors known to Debtor who have or may assert liens against Debtor's assets, (iv) the United States Internal Revenue Service, (v) the 20 largest unsecured creditors of Debtors, and (vi) all parties in interest who have filed a notice of appearance or upon whom service must be effected under the Bankruptcy Rules or the Local Rules of the Western District of Missouri.

36.    Objections must be served upon:

to Lender:

> Mark Bossi
> Thompson Coburn LLP
> One US Bank Plaza
> St. Louis, Missouri 63101
> mbossi@thompsoncoburn.com

to Debtor:

> Scott J. Goldstein
> Lisa A. Epps
> Eric L. Johnson
> Spencer Fane LLP
> 1000 Walnut, Suite 1400
> Kansas City, MO 64106
> sgoldstein@spencerfane.com
> lepps@spencerfane.com
> ejohnson@spencerfane.com

to the United States Trustee:

> Office of the United States Trustee
> 400 East 9th Street, Room 3440
> Kansas City, Missouri  64106

WA 7764555.4

## XI.   Conclusion

37.    Debtor has determined, in its business judgment, that using the DIP Facility is necessary to continue in business and that in the absence of such financing, there is a severe risk that operations will cease.  After exploring other options for post-petition financing, Debtor has concluded that the DIP Facility which Lender is willing to provide is the only credit, secured or unsecured, reasonably available to Debtor.

WHEREFORE, Debtor requests that this Court enter an order:

(1)    setting an expedited preliminary hearing for the temporary, interim approval of the DIP Facility;

(2)    setting a time and date for a final hearing on the approval of the DIP Facility;

(3)    approving the DIP Facility under the terms and conditions set forth herein and the Interim Order; and

(4)    granting such other and further relief as may be just and proper.

Dated:  February 7, 2016.

**SPENCER FANE LLP**

By: /s/ Eric L. Johnson
_____
Scott J. Goldstein        MO Bar No. 28698
Lisa A. Epps              MO Bar No. 48544
Eric L. Johnson           MO Bar No. 53131
1000 Walnut Street, Suite 1400
Kansas City, MO 64106
Office: 816-474-8100
Facsimile: 816-474-3216
sgoldstein@spencerfane.com
lepps@spencerfane.com
ejohnson@spencerfane.com

PROPOSED COUNSEL FOR DEBTOR

WA 7764555.4