**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| In re: | Chapter 11 |
| **MID-STATES SUPPLY COMPANY, INC.,** | Case No. 16-40271 (can) |
| **Debtor.** | |

**DEBTOR'S MOTION TO APPROVE THE SALE OF SUBSTANTIALLY ALL OF ITS
ASSETS FREE AND CLEAR OF ALL LIENS, INTERESTS, CLAIMS AND
ENCUMBRANCES AND RELATED PROCEDURES AND BID PROTECTION
PURSUANT TO 11 U.S.C. § 363 AND RELATED RELIEF
PURSUANT TO 11 U.S.C. §§ 102 AND 105**

Debtor Mid-States Supply Company, Inc. ("Debtor"), for its Motion to Approve the Sale

of Substantially All of Its Assets Free and Clear of All Liens, Interests, Claims and

Encumbrances, and Related Procedures and Bid Protection Pursuant to 11 U.S.C. § 363 and

Related Relief Pursuant to 11 U.S.C. §§ 102 and 105 (the "Motion"), states and alleges as

follows:

## BACKGROUND

**Procedural Posture**

1.      On February 7, 2016 (the "Petition Date"), Debtor filed its voluntary petition for

relief under Chapter 11 of the United States Bankruptcy Code.

2.      Debtor remains in possession of its assets and continues to operate as debtor-in-

possession in accordance with 11 U.S.C. §§ 1107 and 1108.

3.      An Official Committee of Unsecured Creditors (the "Committee") was appointed

on February 12, 2016.

4.      This is a core proceeding pursuant to 28 U.S.C. § 157(2)(A), (M), (N) and (O).

5.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1408.

**Nature of Pre-Petition Date Business Operations**

7.      Debtor supplies pipes, valves and fittings to ethanol, pipeline and power industries in the United States. It also offers hoses, tools, compounds, gauges and thermometers. In addition, Debtor provides compressed air, steam, process control and services, along with IT solutions, such as project and customer websites, PocketPC software, customer inventory management, integrated supply, order tracking system and communication options. Debtor's products are sold to a myriad of industries, including large industrial plant operations, food production, oil and gas pipeline transportation, mechanical construction and other large industrial players.

8.      Founded and headquartered in Kansas City, Missouri since 1947, Debtor, a family-owned company, operates out of 23 locations, certain of which branches operate under the "Midco" fictitious brand name, in the following states—Alabama, Colorado, Kansas, Louisiana, Mississippi, Missouri, Montana, Nebraska, New Mexico, North Dakota, Oklahoma, Texas, Utah, West Virginia and Wyoming.  Debtor currently has approximately 228 employees.

9.      On September 1, 2011, Debtor entered into Credit and Security Agreement, as amended from time to time (the "Credit Agreement") with Wells Fargo Bank, National Association ("Wells Fargo"), under which it borrowed $45 million, which line grew to approximately $60 million (the "Prepetition Credit Facility").  Using the expanded availability from Wells Fargo, Debtor roughly doubled its sales from fiscal 2011 through 2014.  By 2015, a confluence of factors, including the demand for inventory with over 32,000 SKU's, no concentration in the customer base (meaning a broad demand for stocked product) and a rapid decline in the oil and gas sector, kept Debtor's inventory and payables at unsustainably high levels. These factors led Debtor's management to implement plans to right-size the business with

WA 7824154.3

respect to inventory, payables, rationalizing the customer base, operating expenses and tightly managing cash flow.

10.     As a result of various defaults under the Credit Agreement, on August 28, 2015, Debtor entered into its first forbearance agreement with Wells Fargo.  In connection with this forbearance agreement and Debtor's restructuring efforts, on August 25, 2015, Debtor engaged Winter Harbor LLC to provide certain services of a chief restructuring officer ("CRO") and other support services.  Stuart Noyes has been acting as Debtor's CRO since August 2015.

11.     Since the first forbearance agreement with Wells Fargo, Debtor entered into two other forbearance agreements with Wells Fargo, the most recent of which was dated December 28, 2015. On January 21, 2016, Wells Fargo notified Debtor of a termination of the forbearance period and that it would only continue to make advances on a more restricted basis. While Debtor and its CRO have been working tirelessly to restructure its business and operate under the tighter credit requirements, Debtor realized that its only option was to sell substantially all of its assets (collectively, "Assets"), which "Sale Process" it implemented prior to the Petition Date.

12.     When a potential pre-petition sale transaction fell through, Debtor determined in its business judgment that filing the captioned bankruptcy case was in the best interest of its creditors.

**Material Post-Petition Developments**

13.     On February 9, 2016, the Court entered the Interim Order Granting Debtor's Motion for Authorization to Obtain Secured Credit on an Interim and Final Basis (the "DIP Order" or the "DIP Facility"), which is scheduled for final hearing on February 26, 2016. Pursuant to the DIP Order, Debtor obtained post-petition financing in the form of a revolving line of credit up to a maximum aggregate principal amount outstanding as of any day not to exceed $20,000,000 and subject to a Borrowing Base, as defined in the DIP Order.

WA 7824154.3

14.     Debtor has continued in the operation of its businesses since the Petition Date. The DIP Facility has allowed Debtor to continue to purchase inventory, and pay its employees, rent and utility expenses.  Termination of Debtor's operations would jeopardize the Sale Process, injure all of Debtor's creditors, both unsecured and secured, and could cost approximately 228 employees their jobs.

15.     The DIP Order not only contemplates a "Sale Process," but also identifies specific "Milestones," which if not met, constitute "Events of Default" under the DIP Order as follows—

> (a)     By no later than February 16, 2016, Debtor shall file a motion with the Bankruptcy Court seeking authorization to sell substantially all of its assets and seeking approval of bidding and sale procedures therefor (which motion shall be in form and substance satisfactory to Wells Fargo);

> (b)     By no later than February 26, 2016, a bid procedures Order (in form and substance satisfactory to Wells Fargo) shall be entered by the Bankruptcy Court;

> (c)     By no later than March 11, 2016, Debtor shall have entered into a definitive asset purchase agreement with a prospective purchaser in form and substance satisfactory Wells Fargo;

> (d)     By no later than April 11, 2016, a sale hearing shall be held and a sale order entered by the Bankruptcy Court approving such sale under Code § 363 (in form and substance acceptable to Wells Fargo); and

> (e)     By no later than April 15, 2016, the sale of substantially all of Debtor's assets shall be consummated.

16.     To effect the Sale Process, on January 27, 2016, Debtor entered into an "Engagement Letter" with SSG Advisors, LLC ("SSG") and Frontier Investment Banc Corporation ("Frontier") under which SSG and Frontier would act as Debtor's "Investment Banker."

17.     Debtor selected SSG based on its experience and expertise in providing investment banking services in Chapter 11 cases. Moreover, SSG has significant experience advising sellers and purchasers in the industrial sector at large. In addition, SSG's investment-

WA 7824154.3

banking professionals have extensive experience in advising debtors in Chapter 11 cases and have served as investment bankers to numerous debtors, Chapter 11 trustees, creditors' committees and buyers in Chapter 11 proceedings.

18.     Debtor selected Frontier based on its experience and expertise in providing investment banking services in the industrial sector and its track record of successful engagements for Debtor in the past.  Frontier has intimate knowledge of Debtor and its operations based on its prior engagements with Debtor, including successfully obtaining new financing in 2011 and finding parties interested in potentially acquiring Debtor more recently.

19.     On the Petition Date, Debtor filed its Application for Order Authorizing Retention and Employment of SSG Advisors, LLC and Frontier Investment Banc Corporation as Debtor's Investment Bankers pursuant to 11 U.S.C. § 327.

**Debtor's Pre-Petition Date and Post-Petition Date Marketing Efforts**

20.     Debtor engaged Frontier in October 2015 to pursue a Sale Process outside of bankruptcy.  Frontier contacted approximately 200 potential buyers, primarily financial buyers, but also several potential strategic buyers (the "Pre-Petition Sale Process"). To this end, prior to the Petition Date, Debtor had offers from three financially-qualified, interested parties to acquire Debtor, and Debtor chose and granted exclusivity to one of those three interested parties. Debtor actively negotiated the sale of substantially all of its Assets to such prospective purchaser, but such prospective purchaser withdrew its offer in mid-January 2016. However, one of the other two prospective buyers remained interested in acquiring Debtor's Assets (the "Potential Stalking Horse").

21.     Debtor then engaged SSG to work with Frontier to continue the efforts from the Pre-Petition Sale Process and transition those efforts into the current Sale Process.  Between their engagement on January 27, 2016 and the Petition Date, the Investment Banker identified

WA 7824154.3

numerous potential financial and strategic buyers and prepared a "Teaser" to take to the marketplace.  Soon after the Petition Date, the Investment Banker sent a Teaser to over 160 potential financial and strategic buyers. To date, several potential financial and strategic buyers have entered into non-disclosure agreements ("NDAs") with Debtor to pursue a potential sale transaction.

22.     As a result of the Investment Banker's efforts in the Pre-Petition Sale Process, on February 2, 2016, the Potential Stalking Horse submitted a "Letter of Intent" to Debtor for the purchase of substantially all of its Assets.  As of the time of the filing of the Motion, Debtor and the Investment Banker continue to negotiate with the Potential Stalking Horse to execute an asset purchase agreement and become the "Stalking Horse" or "Stalking Horse Bid" that drives the Sale Process.

23.     Although Debtor seeks to establish a Stalking Horse, the Investment Banker continues its tireless efforts to generate interest in the Sale Process and attract additional prospective buyers.  Selection of the Stalking Horse, or removal and replacement of the Stalking Horse, is in the discretion of the CRO, after consultation with the Investment Banker, Wells Fargo and the Committee.

**The APA and Sale Process**

24.     Debtor proposes to effectuate a sale of its Assets to the highest bidder, or bidders, by a form of asset purchase agreement (as amended from time to time, the "Form APA") that will be presented at the initial hearing on the Motion.[1] The Form APA will provide for, among

---

[1]  If the Stalking Horse bid identified in paragraph 22 is timely submitted, then Debtor currently anticipates making the APA very similar to the anticipated APA in the Stalking Horse Bid to facilitate comparison of bid proposals from different Qualified Bidders.

WA 7824154.3

other things, the sale of substantially all of Debtor's Assets, or portions thereof, free and clear of any and all liens, claims, encumbrances and other interests (the "Transaction").

25.    Debtor proposes to effectuate the Transaction(s) via the process and procedures outlined in the Bid Procedures (as defined below) in order to determine the highest and best bidder or bidders to enter into the Transaction(s) under the Timeline required by Wells Fargo as set forth in paragraph 15.

## RELIEF REQUESTED

### Introduction

26.    Pursuant to Code §§ 105, 363 and 365 and Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Debtor requests that the Court, *inter alia*, (a) approve the bid procedures ("Bid Procedures") attached as Exhibit A to the proposed Order ("Bid Procedures Order") attached as **Exhibit 1**, (b) approve the form and manner of notice of the Bid Procedures, the Sale Hearing (as defined below), the Objection Deadline, the respective dates, times and places for an auction, if required under the Bid Procedures, substantially in the form attached as Exhibit B to the Bid Procedures Order (the "Transaction Notice"), (c) approve the Form APA and Bid Procedures as set forth in the Bid Procedures Order, (d) establish procedures for objections to the Sale Motion, and (e) set a hearing on the Sale Motion.

### Summary of Key Provisions

| Event | Date and Time (if applicable) |
|---|---|
| Transaction Notice | Within 3 days of the entry of this Order |
| Bid Deadline | **April 1, 2016, 5:00 p.m. prevailing Central Time** |
| Auction | **April 5, 2016, 9:30 a.m. prevailing Central Time** |

WA 7824154.3

| Sale Hearing Objection Deadline | **April 7, 2016,  3:00 p.m. prevailing Central Time** |
| Sale Hearing | **April 8, 2016, _____ a.m. prevailing Central Time** |

### Sale Hearings

27.     Debtor requests that an initial hearing on the Motion (the "<u>Initial Hearing</u>") be set on February 26, 2016, to approve the procedures described herein including, without limitation, the Bid Procedures.[2] Debtor also requests that a final hearing on the Sale Motion (the "<u>Final Hearing</u>") be set on or before April 11, 2016 to grant the remaining relief requested hereunder.

### The Sale Process

28.     Pursuant to Bankruptcy Rule 6004(f)(1), sales of property outside the ordinary course of business may be by private sale or auction. Good cause exists to expose the Assets to auction. Debtor and the Investment Banker believe that an auction conducted substantially in accordance with the Bid Procedures will enable Debtor to obtain the highest or best offer(s) for the Assets under the circumstances, thereby maximizing the value of Debtor's estate.

29.     Pursuant to the Bid Procedures, a Potential Bidder must deliver the following to the Investment Banker, prior to submitting any Bid:

a.     An executed Confidentiality Agreement acceptable to the Investment Banker; and

b.     Financial statements of, or other information relating to, the Potential Bidder or, if the Potential Bidder is an entity formed for the purpose of the Transaction, financial statements of or other information relating to the equity holder(s) of the Potential Bidder, or such other form of financial disclosure or evidence of financial capability and performance and legal authority acceptable to the Investment Banker as requested by the Investment Banker (and, if requested by the Investment Banker, certified to by a duly authorized representative of the Potential Bidder (or equity holders thereof, as applicable)), demonstrating such Potential Bidder's financial capability and legal authority to close the proposed Transaction in a timely manner.

---

[2]  A separate motion to shorten the time for scheduling the Initial Hearing is being filed contemporaneously with the Motion.

WA 7824154.3

30.     A Potential Bidder that delivers the documents described in subparagraphs (a) and (b) above, and that the CRO, in consultation with the Investment Banker, determines in its business judgment is financially capable of consummating the Transaction in a timely manner, will be permitted to further participate in the Bidding Process.

31.     A Potential Bidder who desires to make a Bid must deliver a written copy of its Bid on or before the Bid Deadline to the Investment Banker. The CRO, in consultation with the Investment Banker, may extend the Bid Deadline, but the Investment Banker will promptly notify all Potential Bidders of any such extension.

32.     A Bid received from a Potential Bidder by the Bid Deadline will constitute a "Qualified Bid" only if it includes all of the following requirements, all solely as determined by the CRO after consultation with the Investment Banker, Wells Fargo and the Committee:

    a.     The Bid must provide for consideration under the APA for each Property proposed to be purchased.

    b.     The Bid must be in cash unless otherwise consented to by Debtor, after consultation with the Investment Banker and Committee, and Wells Fargo.

    c.     The Bid must be accompanied by satisfactory evidence of committed financing or other financial ability to consummate the Transaction in a timely manner.

    d.     If a Bid indicates that a Potential Bidder will seek the assumption and assignment of executory contract(s) or unexpired lease(s), the Bid must include sufficient information to permit Debtor, if necessary, to timely file a motion to assume and assign such executory contract(s) or unexpired lease(s) to determine the proposed assignee's ability to comply with Code § 365 (to the extent applicable).

    e.     The Bid cannot be conditioned upon the Bankruptcy Court's approval of any bid protections, such as a break-up fee, termination fee, expense reimbursement, working fee or similar type of payment.

    f.     The Bid must expressly acknowledge and represent that the Potential Bidder: (i) has had an opportunity to conduct any and all due diligence regarding the Assets and business of Debtor and the Transaction prior to making its Bid, (ii) has relied solely upon its own independent review, investigation and/or inspection of any documents and the Assets and business of Debtor in making its Bid, and (iii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties

WA 7824154.3

whatsoever, whether express, implied, by operation of law or otherwise, regarding the business or Assets of Debtor or the Transaction, or the completeness of any information provided in connection therewith, except as expressly stated in the representations and warranties contained in the APA ultimately accepted and executed by Debtor, and (iv) has authority to make the Bid, execute any documents to close on the Transaction, and proceed to closing on the Transaction.

   g.  The Bid must be received by the Bid Deadline.

  33.  If more than one Qualified Bid is submitted for the Assets in accordance with the Bid Procedures, Debtor, with the assistance of the Investment Banker, will conduct an auction (the "Auction") on April 5, 2016, at 9:30 a.m., prevailing Central time, or at such later time as determined by the CRO, in consultation with the Investment Banker, Wells Fargo and Committee. The Investment Banker will notify all Qualified Bidders who have submitted Qualified Bids (collectively, the "Auction Participants") of any change in schedule.

  34.  Prior to the Auction, the CRO, in consultation with the Investment Banker, Wells Fargo and the Committee, will evaluate the Qualified Bids and select the Qualified Bid or combination of Qualified Bids that the CRO determines in its business judgment to be the highest or best Qualified Bid(s) (the "Initial Highest Bid") for the assets of Debtor's estate. In making this determination, the CRO may consider, among other things, the amount of cash to be paid or delivered, the conditions to closing, the Assets being purchased, the amount of liabilities being assumed and related matters.

  35.  The Investment Banker will give each of the Auction Participants notice of the Initial Highest Bid and a copy of such Bid prior to the scheduled start of the Auction.

  36.  At the commencement of the Auction, the Investment Banker will formally announce the Initial Highest Bid(s) and the assets to which they relate. All Qualified Bids at the Auction will be based on and increased therefrom, and thereafter made in minimum increments

WA 7824154.3

higher than the previous Qualified Bid in an amount to be established by the CRO in consultation with the Investment Banker.[3]

37.     As determined by the CRO, in consultation with the Investment Banker and Wells Fargo, in conducting the Auction (i) the Investment Banker may take bids for all of the Assets as a whole, (ii) after taking such bids, the Investment Banker may then take bids for more than one or a package of the Assets; and (iii) after taking such bids, the Investment Banker may then take bids for each individual Asset.[4] In consultation with the Investment Banker, Wells Fargo, and the Committee, the CRO will have the right to adopt such other rules for the Auction which it believes in its business judgment will promote the goals of the Auction to obtain the highest and best price for the Assets.

38.     The CRO, in consultation with the Investment Banker, may (a) determine which Qualified Bid, if any, is the highest or otherwise best offer(s); and (b) reject at any time before entry of an Order of the Bankruptcy Court approving the Successful Bid(s), any bid that, in the discretion of the Investment Banker, is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code or the Bid Procedures, or (iii) contrary to the best interests of Debtor's estate and its creditors.

39.     The Bid Procedures provide an appropriate framework for obtaining offers for the purchase of the Assets and will enable the CRO and Investment Banker to review, analyze and compare all Bids received to determine which Bid (or Bids) is in the best interests of Debtor's estate and its creditors. Therefore, Debtor respectfully requests that this Court approve the Bid

---

[3]   Minimum bid increments, other than a credit bid of Wells Fargo, must consist solely of cash consideration unless otherwise authorized by the Investment Banker.

[4] As determined by the CRO, in consultation with the Investment Banker and Wells Fargo, prior to the Auction, the Assets may be divided into lots based upon location and nature of the Assets.

WA 7824154.3

Procedures and authorize Debtor and the Investment Banker to take any and all actions necessary or appropriate to implement the Bid Procedures.

## Credit Bid

40.    Code § 363(k) states:

> At a sale under subsection (b) of this section of property that is subject to a lien that secures an allowed claim, unless the court for cause orders otherwise the holder of such claim may bid at such sale, and, if the holder of such claim purchases such property, such holder may offset such claim against the purchase price of the property.

Under the Motion and in connection with the Sale Process, Wells Fargo retains its right to credit bid on the Assets pursuant to Code § 363(k). Wells Fargo may submit a credit bid, in its sole and absolute discretion, at any time prior to announcement of the Successful Bid(s), regardless of whether Wells Fargo participated in prior rounds of the Auction, on any individual Asset, portion of the Assets or all of the Assets as a whole constituting its collateral.

## Objections and Related Procedures

41.    Debtor requests that the following procedures be implemented with respect to the notices discussed herein and relief related thereto:

   a.    Objections, if any, to all or any part of the Motion shall be filed on the docket of the Bankruptcy Court and served such that each objection is actually received by the following parties on or before the relevant objection deadline specified above: (a) counsel for Debtor, Lisa A. Epps, Spencer Fane LLP, 1000 Walnut, Suite 1400, Kansas City, MO 64106, lepps@spencerfane.com; (b) counsel to Wells Fargo Bank, N.A., Mark V. Bossi, Thompson Coburn LLP, 505 N. 7th Street, Suite 3500, St. Louis, MO 63101, mbossi@thompsoncoburn.com; (c) counsel for the Official Committee of Unsecured Creditors, _____; and (d) Office of the United States Trustee's Office, Sherri L. Wattenbarger, Trial Attorney, 400 East 9th Street, Room 3440, Kansas City, Missouri, sherri.wattenbarger@usdoj.gov.

   b.    Any person failing to timely file an objection to the Motion shall be barred from objecting to the Motion, including the sale of the Assets free and clear of any and all liens, claims, encumbrances, and other interests, and will be deemed to consent to the Transaction(s), including the sale of the Assets free and clear of any and all liens, claims, encumbrances, and other interests.

WA 7824154.3

42.     The above procedures are fair, reasonable and appropriate to provide a framework for the Court to consider the Motion and the relief requested thereunder. Debtor respectfully requests that the Court approve the foregoing notice and objection procedures.

### LEGAL ARGUMENT SUPPORTING RELIEF REQUESTED

**Sale Under Code § 363 Generally**

43.     Code § 363(b)(1) provides: "The Trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." Code § 105(a) provides in relevant part: "The Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

44.     A sale of assets of a debtor should be authorized pursuant to Code § 363 if a sound business purpose exists for doing so. *See, e.g., Fulton State Bank v. Schipper (In re Schipper),* 933 F. 2d 513, 515 (7th Cir. 1991); *Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.),* 722 F.2d 1063, 1070 (2d Cir. 1993). The business judgment rule shields a debtor's management from judicial second-guessing. *In re Farmland Industries, Inc.*, 294 B.R. 903, 913 (Bankr. W.D. Mo. 2003) ("'[T]he Code favors the continued operation of a business by a debtor and a presumption of reasonableness attaches to a Debtor's management decisions.'") (quoting *In re Johns-Manville Corp.,* 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986)). Once Debtor articulates a valid business justification, "[t]he business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company.'" *In re Integrated Resources, Inc.,* 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).

45.     As explained above, Debtor, in conjunction with the Investment Banker and Wells Fargo, have determined that a sale of the Assets to the Successful Bidder(s) is the best way

13

to maximize the value of the Assets in this case.  Maximization of asset value is a sound business

purpose, warranting authorization of the sale.

**Sale Free of Liens, Interests, Claims and Encumbrances Under Code § 363(f)**

46.    Code § 363(f) provides:

The trustee may sell property under subsection (b) or (c) of this section
free and clear of any interest in such property of an entity other than the
estate, only if –

(1)    applicable non-bankruptcy law permits sale of such property free
and clear of such interest;

(2)    such entity consents;

(3)    such interest is a lien and the price at which such property is to be
sold is greater than the aggregate value of all liens on such property;

(4)    such interest is in bona fide dispute; or

(5)    such entity could be compelled, in a legal or equitable proceeding,
to accept a money satisfaction of such interest.

47.    Code § 363(f) is drafted in the disjunctive.  Thus, satisfaction of any of the

requirements enumerated therein will suffice to warrant Debtor's sale of the Assets free and clear

of all liens, claims and encumbrances.  Each lien, claim or encumbrance attached to the Assets

satisfies at least one of the five conditions of Code § 363(f), and Debtor submits that any such

lien, claim or encumbrance will be adequately protected by attachment to the net proceeds of the

proposed sale(s), subject to any claims and defenses Debtor or any other party in interest may

possess with respect thereto.  Accordingly, Debtor requests that the Assets be transferred to the

Successful Bidder(s) free and clear of all liens, claim, interests and encumbrances, with such

liens, claims, interests and encumbrances to attach to the proceeds of the sale of the Assets.

**Good Faith Purchaser Code § 363(m)**

48.    Code § 363 (m) provides:

14

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

While the Bankruptcy Code does not define "good faith," the Seventh Circuit in *In the Matter of Andy Frain Services, Inc.,* 798 F.2d 1113 (7th Cir. 1986) held that:

> The requirement that a purchaser act in good faith . . . speaks to the integrity of his conduct in the course of the sale proceedings.  Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.

798 F.2d at 1125 (emphasis omitted) (quoting *In re Rock Industries Machinery Corp.,* 572 F.2d 1195, 1198 (7th Cir. 1978) (interpreting Bankruptcy Rule 805, the precursor of section 363(m))).

Debtor submits that any agreement reached with the Successful Bidder pursuant to the Bidding Procedures is an arm's-length negotiated transaction entitled to the protections of Code § 363(m) and will adduce evidence of the same at the Sale Hearing.  *See In re Trism*, 328 F.3d 1003, 1006 (8th Cir. 2003).

**Bid Protection Under Code § 363**

49.    The exact bid protection that may be requested is not known at this time and will be disclosed if and when a supplement to the Motion is filed with a copy of a potential Stalking Horse Bid. Pending such disclosure, the Motion seeks approval of common forms of bid protection involving termination fees and expense reimbursements. Approval of termination fees and expense reimbursements as an administrative expense claim as a form of bidder protection in connection with a sale of assets pursuant to Code § 363 has become a recognized practice in Chapter 11 cases because it enables a debtor to ensure a sale to a contractually committed buyer at a price the debtor believes is fair, while providing the debtor with the potential of obtaining an

WA 7824154.3

enhanced recovery through an auction process.[5] Courts have held that break-up fees should be approved as long as (i) the relationship between the parties is not tainted by self-dealing, (ii) the fee does not hamper bidding, and (iii) the amount of the fee is reasonable in relation to the size of the transaction. *See, e.g., Official Committee of Subordinated Bondholders v. Integrated Resources, Inc. (In re Integrated Resources, Inc.)*, 147 B.R. 657 (S.D.N.Y. 1992), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993). Bankruptcy courts have approved bidding incentives similar to the ones contemplated in the applicable Stalking Horse Bid under the "business judgment rule," pursuant to which courts typically grant deference to the actions of a debtor's management taken in good faith and in the exercise of honest judgment.

50.     Subject to clarification if and when the Stalking Horse Bid is presented to the Court, the bid protections described herein meet the "business judgment rule" standard. These protections, individually and collectively, are anticipated to be a material inducement for, and condition of, any stalking-horse bid. The bid protection described herein promote more competitive bidding by inducing the stalking-horse bidder to hold its offer open as a minimum or floor bid on which other bidders – and Debtor – can rely. The Stalking Horse Bid increases the likelihood that the price at which the Assets are sold will reflect their true worth, and the Stalking Horse is entitled to be compensated as a result.

---

[5]   *See, e.g.*, *In re Finlay Enters., Inc., et al.*, Case No. 09-14873 (JMP) (Bankr. S.D.N.Y. Aug. 20, 2009) (approving break-up fee); *In re Lehman Bros. Holdings Inc., et al.*, Case No. 08-13555 (JMP) (Bankr. S.D.N.Y. Oct. 22, 2008) (approving break-up fee and expense reimbursement); *In re Steve & Barry's Manhattan LLC, et al.*, Case No. 08-12579 (ALG) (Bankr. S.D.N.Y. Aug. 5, 2008) (approving break-up fee and expense reimbursement); *In re Fortunoff Fine Jewelry and Silverware, LLC*, Case No. 08-10353 (JMP) (Bankr. S.D.N.Y. Feb. 22, 2008) (approving break-up fee); *In re Bally Total Fitness of Greater New York, Inc.*, Case No. 07-12395(BRL) (Bankr. S.D.N.Y. Aug. 21, 2007) (approving break-up fee and expense reimbursement); *In re G+G Retail, Inc.*, Case No. 06-10152 (RDD) (Bankr. S.D.N.Y. Jan. 30, 2006); *In re Footstar, Inc.* Case No. 04-22350 (ASH) (Bankr. S.D.N.Y. Apr. 6, 2004) (authorizing the debtors to enter into purchase agreements with break-up fees); *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc., (In re Integrated Res., Inc.)*, 147 B.R. 650 (S.D.N.Y. 1992), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993) (approving break-up fee and expense reimbursement); *In re Twinlab Corp., et al.*, Case No. 03-15564 (CB) (Bankr. S.D.N.Y. 2003) (approving break-up fee and expense reimbursement); *In re Adelphia Business Solutions, Inc., et al.*, Case No. 02-11389 (REG) (Bankr. S.D.N.Y. 2002) (approving break-up fee and expense reimbursement).

WA 7824154.3

51.     The applicable bid protection payments are anticipated to be fair and reasonable in amount under the circumstances, particularly because they will be paid out of the proceeds of any competing transaction. *See, e.g., In re Hostess Brands, Inc.*, Case No. 12-22052 (Bankr. S.D.N.Y. 2013) (break-up fee equal to 3.5%); *In re Global Crossing Ltd.*, Case No. 02-40187 (Bankr. S.D.N.Y. 2002) (break-up fee equal to 4%); *In re LTV Steel Company, Inc.*, Case No. 00-43866 (Bankr. N.D. Ohio 2000) (break-up fee equal to 7.5%); *In re Fruit of the Loom, Inc.*, Case No. 99-4497 (Bankr. D. Del. 1999) (break-up fee equal to 3.59%); *In re Graham-Field Health Products, Inc.*, Case No. 99-4457 (Bankr. D. Del. 1999) (break-up fee equal to 4.65%).

## Waiver of 14-Day Finality for Orders

52.     Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property…is stayed until the expiration of fourteen (14) days after entry of the order, unless the court orders otherwise." Bankruptcy Rule 6006(d) further provides that an "order authorizing the trustee to assign an executory contract or unexpired lease under § 365(f) is stayed until the expiration of fourteen (14) days after the entry of the order, unless the court orders otherwise."

53.     In light of the current circumstances and financial condition of Debtor, coupled with the requirements of Wells Fargo and the Milestones related to the Sale Process, Debtor believes that in order to maximize value and preserve jobs, the sale of the Assets should be consummated as soon as practicable. Accordingly, Debtor request that each Sale Order be effective immediately upon entry of such order and that the 14-day stay under Bankruptcy Rules 6004(h) and 6006(d) be waived.

## No Prior Request

54.     No prior request for the relief sought herein has been requested from this Court or any other court.

WA 7824154.3

WHEREFORE, Debtor respectfully requests that the Court enter an Order granting the requested relief and granting such other and further relief as is necessary and appropriate in the circumstances.

Date: February 16, 2016

Respectfully submitted,

**SPENCER FANE LLP**

By:  /s/ Lisa A. Epps

| | |
|---|---|
| Scott J. Goldstein | MO Bar No. 28698 |
| Lisa A. Epps | MO Bar No. 48544 |
| Eric L. Johnson | MO Bar No. 53131 |

1000 Walnut Street, Suite 1400
Kansas City, MO 64106
Office:  816-474-8100
Facsimile:  816-474-3216
sgoldstein@spencerfane.com
lepps@spencerfane.com
ejohnson@spencerfane.com

COUNSEL FOR DEBTOR

WA 7824154.3

## <u>EXHIBIT A</u>

**Proposed Bid Procedures and Bid Protection Order for Initial Hearing**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| In re: | Chapter 11 |
| **MID-STATES SUPPLY COMPANY, INC.,** | Case No. 16-40271 (can) |
| Debtor. | |

**ORDER APPROVING PROCEDURES FOR THE SOLICITATION OF OFFERS FOR
THE SALE OF SUBSTANTIALLY ALL OF DEBTOR'S ASSETS FREE AND CLEAR
OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS AND RELATED RELIEF**

At a hearing on February 26, 2016 (the "Bid Procedures Hearing"), this Court considered

the Motion to Approve the Sale of Substantially All of Its Assets Free and Clear of All Liens,

Interests, Claims and Encumbrances, and Related Procedures and Bid Protection Pursuant to 11

U.S.C. § 363 and Related Relief Pursuant to 11 U.S.C. §§ 102 and 105 [Docket No. _____] (the

"Motion")[1] filed by Debtor.   Based on the arguments and evidence at the Bid Procedures

Hearing, the Court hereby finds and determines that:

1.       The Court has jurisdiction to consider the Motion and the relief requested therein

pursuant to 28 U.S.C. §§ 157 and 1334, the consideration of the Motion and the relief requested

therein is a core proceeding pursuant to 28 U.S.C. § 157(b), and venue is proper before this

Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.       As reflected in the Certificate of Service [Docket ___] filed with respect to the

Bid Procedures Hearing, notice of the Motion and of the Bid Procedures Hearing were served on

the Interested Parties as required by the Order Limited Notice and Establishing Notice

Procedures (the "Notice").   The Notice is reasonable and sufficient in light of the circumstances

and nature of the relief requested in the Motion, and no other or further notice of the Motion for

---

[1] Capitalized terms that are not defined herein shall have the meanings given to them in the Bid Procedures.

the Bid Procedures Hearing is necessary.   A reasonable and fair opportunity to object to the

Motion and the relief granted in this Order has been afforded under the circumstances.

3.       Debtor has articulated good and sufficient reasons for this Court to grant the relief

requested in the Motion.   Such good and sufficient reasons were set forth in the Motion and on

the record at the Bid Procedures Hearing and are incorporated by reference herein and, among

other things, form the basis for the findings of fact and conclusions of law set forth herein.

4.       The bid procedures in the form attached as **Exhibit A** (the "Bid Procedures"), are

fair, reasonable and appropriate and are designed to maximize the value of the Debtor's estates.

5.       The form of Asset Purchase Agreement (the "APA") in **Exhibit B**, or as modified

in the discretion of the CRO, in consultation with the Investment Banker, Wells Fargo and the

Committee, is also fair, reasonable and appropriate and is designed to maximize the value of

Debtor's estate.

6.       The service of the notice of the Bid Procedures, the Sale Hearing (as defined

below), the Objection Deadline (as defined below), the respective dates, times and places for an

Auction (as defined below), if required under the Bid Procedures, substantially in the form

attached as **Exhibit C** (the "Transaction Notice"), is adequate and reasonably calculated to

provide due, proper, and timely notice to all interested parties of, among other things, the entry

of this Order, the Bid Procedures, the Auction (if required under the Bid Procedures), the Sale

Hearing, the Sale Motion (as defined below), the proposed Transaction(s), including the sale of

Debtor's estate's right, title and interest in, to and under the Assets free and clear of any and all

liens, claims, encumbrances, and interests, and the procedure for objecting thereto.   Except as

otherwise set forth herein, no other or further notice is necessary.

7.     The procedure for objecting to the Transaction(s) is fair, reasonable, and appropriate.

8.     The findings of fact and conclusions of law herein constitute the Court's findings of fact and conclusions of law for the purposes of Bankruptcy Rule 7052, made applicable pursuant to Bankruptcy Rule 9014.  To the extent any findings of facts are conclusions of law, they are adopted as such.  To the extent any conclusions of law are findings of fact, they are adopted as such.

9.     **[add recitals for any Stalking Horse Bid(s)]**

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

a.     The Motion is **GRANTED** as set forth herein.

b.     All objections to the relief requested in the Motion, if any, that have not been withdrawn, waived, or settled as announced to the Court at the Bid Procedures Hearing are denied and overruled in their entirety on the merits.

c.     **[add findings and conclusions for any Stalking-Horse Bid(s)]**

d.     Debtor may proceed with the Transaction(s) in accordance with the Bid Procedures, which procedures are hereby approved in their entirety in the form attached hereto s **Exhibit A**.  However, the consummation of the sale of the Assets (as provided in the APA) shall remain subject to the entry of an Order granting the Motion.

e.     Potential Bidders must comply with all terms of the Bid Procedures in order to participate in the bidding process.  All Bids must satisfy all of the requirements contained in the Bid Procedures.

f.     The CRO and Investment Banker are authorized and directed to take any and all actions necessary or appropriate to implement the Bid Procedures.  The process for submitting Qualified Bids is fair, reasonable and appropriate and is designed to maximize recoveries for the benefit of Debtor's estate, its creditors and other parties in interest.  Any disputes as to the selection of a Qualified Bid, Initial Highest Bid and/or Successful Bid shall be resolved by this Court.

g.     The form of APA, in the form attached as **Exhibit B**, is approved in its entirety.  Notwithstanding the foregoing, the CRO shall have the right to modify the APA as appropriate in its sole discretion after consultation with the Investment Banker, Wells Fargo and the Committee without further Order of this Court in order to consummate the Transaction(s).

WA 7824154.3

h.    As further described below, the key dates for this Order and the Bid Procedures are as follows, with each of such dates being subject to extension by the CRO, with the consent of Wells Fargo:

| Event | Date and Time (if applicable) |
|---|---|
| Transaction Notice | Within 3 days of the entry of this Order |
| Bid Deadline | **April 1, 2016, 5:00 p.m. prevailing Central Time** |
| Auction | **April 5, 2016, 9:30 a.m. prevailing Central time** |
| Sale Hearing Objection Deadline | **April 7, 2016,  3:00 p.m. prevailing Central Time** |
| Sale Hearing | **April 8, 2016, _____  a.m. prevailing Central Time** |

i.    Any person desiring to submit a Bid for the Assets must comply with the Bid Procedures and shall not be permitted to participate at the Auction unless such person is an Auction Participant or is otherwise permitted to participate at the Auction under the Bid Procedures.

j.    If a Bid has been submitted for the Assets in accordance with the Bid Procedures, the Debtor will conduct an auction as to such Assets (the "Auction") on **April 5, 2016, prevailing Central time**, at the offices of Spencer Fane LLP, 1000 Walnut, Suite 1400, Kansas City, Missouri 64106 or at such later time or other place as agreed by the Debtor after consultation with the Investment Banker, Wells Fargo and the Committee, or approved by Order of the Court, and of which the Investment Banker will notify all Qualified Bidders who have submitted Qualified Bids.

k.    A final hearing (the "Sale Hearing") to consider the Motion shall be held **April 8, 2016** in the Courtroom 6A before the Honorable Cynthia A. Norton, United States Bankruptcy Judge, at the United States Bankruptcy Court, Western District of Missouri, 400 East 9th Street, Kansas City, Missouri.

l.    Objections, if any, to the Motion shall be filed on the docket of the Court and served such that each objection is actually received by the following parties on or before 3:00 p.m., prevailing Central time on **April 7, 2016** (the "Objection Deadline"):  (a) counsel for Debtor, Lisa A. Epps, Spencer Fane LLP, 1000 Walnut, Suite 1400, Kansas City, MO 64106, lepps@spencerfane.com; (b) counsel to Wells Fargo Bank, N.A., Mark V. Bossi, Thompson Coburn LLP, 505 N. 7th Street, Suite 3500, St. Louis, MO 63101, mbossi@thompsoncoburn.com; (c) counsel for the Official Committee of Unsecured Creditors, _____; and (d) Office of the United States Trustee's Office, Sherri L. Wattenbarger, Trial Attorney, 400 East 9th Street, Room 3440, Kansas City, Missouri, sherri.wattenbarger@usdoj.gov.

m.    Any person failing to timely file an objection to the Motion shall be barred from objecting to the Motion, including the sale of the Assets in accordance with the

WA 7824154.3

APA, free and clear of any and all liens, claims, encumbrances, and interests and will be deemed to consent to the Transaction(s), including the sale of the Debtor's Assets in accordance with the APA free and clear of any and all liens, claims, encumbrances, and other interests.

n.      For cause shown, notwithstanding Bankruptcy Rules 6004, 6006, or otherwise, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing.   To the extent applicable, the stays described in Bankruptcy Rules 6004(h) and 6006(d) are hereby waived.

o.      The terms of this Order shall control to the extent of any conflict with the Motion or the Bid Procedures.

p.      This Order shall become effective immediately upon its entry.

q.      The Court shall retain jurisdiction over any matter or dispute arising from or relating to the implementation of this Order.

Date: February _____, 2016

_____
HONORABLE CYNTHIA A. NORTON
United States Bankruptcy Judge

WA 7824154.3

<u>Exhibit A</u>

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| In re: | **Chapter 11** |
| **MID-STATES SUPPLY COMPANY, INC.,** | **Case No. 16-40271 (can)** |
| **Debtor.** | |

## BID PROCEDURES

On February 16, 2016, Debtor filed its Motion to Approve One or More Potential Sale(s) of Substantially All of Its Assets Free and Clear of All Liens, Interests, Claims and Encumbrances, and Related Procedures and Bid Protection Pursuant to 11 U.S.C. § 363 and Related Relief Pursuant to 11 U.S.C. §§ 102 and 105 [Docket No. _____] (the "**Motion**"), pursuant to which Debtor requested authority to sell substantially all of the assets of Debtor's estate to the highest and best bidders subject to the process outlined herein (the "**Transaction**"). These Bid Procedures have been approved and authorized pursuant to the Order Approving the Procedures for the Solicitation of Offers and Approving the Form and Manner of Notice [Docket No. [___]] (the "**Bid Procedures Order**") entered by the United States Bankruptcy Court for the Western District of Missouri (the "Bankruptcy Court") on February [___], 2016.

### The Bidding Process

Subject to the conditions set forth therein, at any time on or before April 1, 2016, at 5:00 p.m. (prevailing Central Time) (the "**Bid Deadline**"), SSG Advisors, LLC and Frontier Investment Banc Corporation, the Investment Banker for Debtor (the "**Investment Banker**") will (i) engage in discussions and negotiations regarding a sale transaction with any entity (a "**Potential Bidder**") that has made inquiry with Debtor or its counsel within the past 12 months regarding potential asset sales and/or that the Investment Banker reasonably believes could lead to a bona fide written offer relating to a Transaction that would meet the requirements of these Bid Procedures (the "**Proposal**"), (ii) furnish to such Potential Bidder and its Representatives,[1] and to any other party that has made a request therefor in connection with its consideration of making an offer or proposal relating to a Transaction (each a "**Bid**"), public and non-public information relating to Debtor and its assets and businesses pursuant to a confidentiality agreement between Debtor and such Potential Bidder (the "**Confidentiality Agreement**"), and (iii) afford to any such Potential Bidder who has signed a Confidentiality Agreement reasonable access to any data site, properties, assets, books or records of Debtor. Each Confidentiality

---

[1] "**Representatives**" means, with respect to any person, the officers, directors, employees, members, managers, partners, investment bankers, attorneys, accountants, consultants or other advisors, agents or representatives of such person, when acting in such capacity on behalf of such person.

Agreement entered into after the date of the entry of the Bid Procedures Order shall recognize that Debtor is obligated to comply with the terms of these Bid Procedures. Each confidentiality agreement previously entered into between Debtor and a Potential Bidder in effect on the date of the entry of the Bid Procedures Order shall be deemed to be a Confidentiality Agreement subject to this Bid Procedures Order. By participating in the Bidding Process (as defined below), each Potential Bidder shall be deemed to have agreed to any and all modifications to any previously executed confidentiality agreement as necessary to permit Debtor and its Representatives to comply with the terms of these Bid Procedures.

The Investment Banker[2] shall provide these Bid Procedures, together with a copy of a form Asset Purchase Agreement (the "**APA**"), to each Potential Bidder.

Any Potential Bidder wishing to conduct due diligence concerning a prospective Transaction shall be granted access, subject to execution of a Confidentiality Agreement, to all relevant business, financial and other information of Debtor as may be reasonably necessary (to be determined at the Investment Banker's discretion) to enable such Potential Bidder to evaluate the assets and businesses of Debtor and the prospective Transaction. Debtor shall make such access available during normal business hours as soon as reasonably practicable. Potential Bidders interested in conducting due diligence should contact Scott Victor, SSG Capital Advisors, 610.940.5802, jsvictor@ssgca.com.  Notwithstanding the foregoing, the Investment Banker is not required to provide confidential or proprietary information to any person if the CRO determines, after consultation with the Investment Banker, Wells Fargo Bank, N.A. ("**Wells Fargo**") and Official Committee of Unsecured Creditors (the "**Committee**"), that such disclosure could be detrimental to the interests of Debtor's estate.

Prior to the selection of a Bid as the highest or best offer for any individual asset, portion of the Assets, or all of the Assets (the "Successful Bid(s)"), the CRO and the Investment Banker may: (a) receive Bids from Potential Bidders, (b) request information from Potential Bidders and engage in discussions with Potential Bidders and take such other actions to determine whether any Bid constitutes or could lead to a superior Proposal, (c) evaluate any Bid made by a Potential Bidder, (d) engage in discussions and negotiations with any Potential Bidder with respect to any Bid submitted by a Potential Bidder, and (e) take any other actions contemplated under these Bid Procedures (collectively, the "**Bidding Process**").

### Deliveries by Potential Bidders

In order to participate in the Bidding Process, each Potential Bidder must deliver the following to the Investment Banker prior to the Bid Deadline (unless previously delivered in a form acceptable to Debtor as provided herein or waived by the CRO after consultation with the Investment Banker, Wells Fargo and the Committee):

      a.    An executed Confidentiality Agreement acceptable to the Investment Banker; and

      b.    Financial statements of, or other information relating to, the Potential Bidder or, if the Potential Bidder is an entity formed for the purpose of the Transaction,

---

[2] Unless otherwise defined herein, capitalized terms shall have the same meaning as set forth in the Motion.

financial statements of or other information relating to the equity holder(s) of the Potential Bidder, or such other form of financial disclosure or evidence of financial capability and performance and legal authority acceptable to the Investment Banker (and, if requested by the Investment Banker, certified to by a duly authorized representative of the Potential Bidder (or equity holders thereof, as applicable)), demonstrating such Potential Bidder's financial capability and legal authority to close the proposed Transaction in a timely manner.

A Potential Bidder that delivers the documents described in subparagraphs (a) and (b) above, and that the CRO determines in its business judgment after consultation with the Investment Banker, Wells Fargo and the Committee, is financially capable of consummating the Transaction in a timely manner shall be permitted to further participate in the Bidding Process. The CRO may require an update of such information and an affirmation of any Potential Bidder's financial capability to bid and consummate any Transaction contemplated hereunder.

### Due Diligence for Potential Bidders

To obtain due diligence access or additional information from Debtor, a Potential Bidder must first advise the Investment Banker of the nature and extent of additional due diligence such Potential Bidder may wish to conduct. The Investment Banker shall coordinate all requests for additional information and due diligence access by such Potential Bidders with Debtor. No conditions relating to the completion of due diligence will be permitted to exist after the Bid Deadline, except as otherwise agreed to by the CRO in writing after consultation with the Investment Banker, Wells Fargo and the Committee.

### Submission by Bid Deadline

A Potential Bidder who desires to make a Bid must deliver a written copy of its written asset purchase agreement marked to show the specific changes to the APA that the Potential Bidder requires (which marked copy may be an electronic comparison of the written asset purchase agreement submitted and the APA) on or before **April 1, 2016, 5:00 p.m., prevailing Central time,** to the Investment Banker at Scott Victor, SSG Capital Advisors, 610.940.5802, jsvictor@ssgca.com.  The CRO may, after consultation with the Investment Banker, Wells Fargo and the Committee, extend the Bid Deadline, but the Investment Banker shall promptly notify all Potential Bidders of any such extension.

### Determination of "Qualified Bid" Status

A Bid received from a Potential Bidder by the Bid Deadline will constitute a "Qualified Bid" only if it includes all of the following documents (the compliance of which shall be determined by the Investment Banker after consultation with the CRO, Wells Fargo and the Committee) (collectively, the "**Required Bid Documents**") and a Good Faith Deposit as described below and meets all of the Bid Requirements (as defined below):

a.      A written asset purchase agreement duly executed by the Potential Bidder in substantially the same form as the APA with changes only regarding the applicable Assets and contracts being purchased and changes acceptable to the CRO after consultation with Investment Banker, Wells Fargo and the Committee, together with a

WA 7824154.3

copy of such agreement marked to show the specific changes to the APA that the Potential Bidder requires (which marked copy may be an electronic comparison of the written asset purchase agreement submitted and the APA). The asset purchase agreement submitted by a Potential Bidder shall:

    i.    specifically delineate which individual Asset, portion of the Assets, or all of the Assets set forth in a schedule prepared by the Investment Banker, after consultation with the Debtor, Wells Fargo and the Committee, that will be posted in Debtor's data room (the "**Property Schedule**") the Potential Bidder proposes to purchase;

    ii.    if not purchasing all of the Assets, allocate the value the Potential Bidder places on the Assets delineated in the Property Schedule that is proposed to be purchased;

    iii.    include a complete set of all schedules and exhibits thereto which, to the extent practicable, will be marked to show the specific changes to the schedules and exhibits to the APA, if applicable;

    iv.    identify each and every executory contract and unexpired lease that is to be assumed and assigned to the Potential Bidder, and such list and the proposed amounts to cure any defaults under such executory contracts and unexpired leases shall be acceptable to the Investment Banker after consultation with Wells Fargo and the Committee;

    v.    provide for the payment by such Potential Bidder of all amounts necessary to cure any defaults under any executory contracts and unexpired leases that are to be assumed and assigned to such Potential Bidder;

    vi.    not contain any financing or due diligence contingencies to closing on the proposed Transaction;

    vii.    not contain any condition to closing of the Transaction on the receipt of any third party approvals (excluding required Bankruptcy Court approval and any required governmental and/or regulatory approvals, if any); and

    viii.    provide that the offer of the Potential Bidder is irrevocable through 30 days after the entry of an Order approving the Sale Motion and subject to the backup bidder provisions herein.

    b.    A good faith deposit (the "**Good Faith Deposit**") in the form of a wire transfer to Debtor or a certified or bank check payable to the order of Debtor (or other form acceptable to Debtor with approval by Wells Fargo) in the amount of at least 10% of the proposed purchase price.

Each Potential Bidder that makes a Qualified Bid shall be referred to as a "**Qualified Bidder**."

WA 7824154.3

## Bid Requirements

All Bids must also satisfy all of the following requirements, all solely as determined by the CRO after consultation with the Investment Banker, Wells Fargo and the Committee:

a.      The Bid must provide for consideration under the APA for each Property proposed to be purchased.

b.      The Bid must be in cash unless otherwise consented to by the CRO and Wells Fargo, after consultation with the Investment Banker and the Committee.

c.      The Bid must be accompanied by satisfactory evidence of committed financing or other financial ability to consummate the Transaction in a timely manner.

d.      If a Bid indicates that a Potential Bidder will seek the assumption and assignment of executory contract(s) or unexpired lease(s), the Bid must include sufficient information to permit Debtor, if necessary, to timely file a motion to assume and assign such executory contract(s) or unexpired lease(s) to determine the proposed assignee's ability to comply with Code § 365 (to the extent applicable).

e.      The Bid cannot be conditioned upon the Bankruptcy Court's approval of any bid protections, such as a break-up fee, termination fee, expense reimbursement, working fee or similar type of payment.

f.      The Bid must expressly acknowledge and represent that the Potential Bidder: (i) has had an opportunity to conduct any and all due diligence regarding the assets and businesses of Debtor and the Transaction prior to making its Bid, (ii) has relied solely upon its own independent review, investigation and/or inspection of any documents and the assets and businesses of Debtor in making its Bid, and (iii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the business or assets of Debtor or the Transaction, or the completeness of any information provided in connection therewith, except as expressly stated in the representations and warranties contained in the APA ultimately accepted and executed by Debtor, and (iv) has authority to make the Bid, execute any documents to close on the Transaction and proceed to closing on the Transaction.

g.      The Bid must be received by the Bid Deadline.

## Auction

Prior to the Auction (as defined below), the CRO and the Investment Banker (in consultation with Wells Fargo and the Committee) shall evaluate the Qualified Bids and select the Qualified Bid or combination of Qualified Bids that the Investment Banker determines in its business judgment to be the highest or best Qualified Bid(s) (the "**Initial Highest Bid**") for a sale of the Assets. In making this determination, the CRO and Investment Banker may consider, among other things, the amount of cash to be paid or delivered, and the other terms and

WA 7824154.3

conditions of the Qualified Bid(s). The Investment Banker shall provide copies of all Bids to Wells Fargo and the Committee promptly after the Bid Deadline.

If more than one Qualified Bid has been submitted for the Assets in accordance with these Bid Procedures, the Investment Banker will conduct an auction (the "**Auction**") with respect to such Qualified Bids in order to determine, in the business judgment of the CRO and Investment Banker after consultation with Wells Fargo and the Committee, the Successful Bid(s).

The Auction, if required, will commence at 9:30 a.m. (prevailing Central Time) on **April 5, 2016** at the offices of Spencer Fane LLP, 1000 Walnut, Suite 1400, Kansas City, Missouri 64106 or at such later time or other place as agreed by the CRO and the Investment Banker after consultation with Wells Fargo and the Committee, or approved by Order of the Bankruptcy Court, and of which the Investment Banker will notify all Qualified Bidders who have submitted Qualified Bids (collectively, the "**Auction Participants**").

The Investment Banker shall give each of the Auction Participants notice of the Initial Highest Bid and a copy of such Bid prior to the scheduled start of the Auction.

Only Debtor, the Investment Banker, the Auction Participants, potential financing sources of the Auction Participants, Wells Fargo, the Committee and their respective Representatives will be entitled to attend, participate and be heard at the Auction. In order to participate and be heard at the Auction, a party must actually attend the Auction, telephonic appearances will not be allowed.

At the commencement of the Auction, the Investment Banker shall formally announce the Initial Highest Bid(s) and the assets to which they relate. All Qualified Bids at the Auction will be based on and increased therefrom, and thereafter made in minimum increments higher than the previous Qualified Bid in an amount to be established by the CRO after consultation with the Investment Banker, Wells Fargo and the Committee.[3]

As determined by the CRO after consultation with the Investment Banker, Wells Fargo and the Committee, in conducting the Auction (i)  the Investment Banker may take bids, if any, for all of the Assets as whole, (ii) after taking such bids, the Investment Banker may then take bids for any groups of more than one Asset as delineated in the Property Schedule, and (iii) after taking such bids, the Investment Banker may take bids for individual Assets as delineated in the Property Schedule, if any, which are subject to multiple bids.[4]  The CRO, after consultation with the Investment Banker, Wells Fargo and the Committee, shall have the right to adopt such other rules for the Auction which the CRO believes in its business judgment will promote the goals of the Auction, including, without limitation, that the Investment Banker can continue to take and negotiate bids in lot or in bulk until the Successful Bid(s) have been selected.

[3]  Minimum bid increments, other than a credit bid pursuant to a Credit Bid Right, must consist solely of cash consideration unless otherwise authorized by the Investment Banker after consultation with Wells Fargo and the Committee.

[4] As determined by the CRO, in consultation with the Investment Banker and Wells Fargo, prior to the Auction, the Assets may be divided into lots based upon location and nature of the Assets.

WA 7824154.3

Each Auction Participant shall be deemed to have agreed to keep its final Qualified Bid made at or prior to the Auction open through 30 days after the entry of an Order approving the Motion. Bidding at the Auction will continue until such time as the highest or otherwise best Qualified Bid(s) are determined in the business judgment of the CRO, after consultation with the Investment Banker and the Committee, subject to the consent of Wells Fargo. To facilitate a deliberate and orderly consideration of competing Qualified Bids submitted at the Auction, the Investment Banker, after consultation with the CRO, Wells Fargo and the Committee, may adjourn the Auction at any time and from time-to-time and may conduct multiple rounds of bidding. Prior to conclusion of the Auction, the Investment Banker, after consultation with the CRO, Wells Fargo and the Committee, may permit one or more Auction Participants who have submitted bids for less than all Assets to join together as a single Qualified Bidder for the purpose of submitting a joint Qualified Bid to acquire substantially all Assets of the estate, provided that such Auction Participants so join without improper collusion under the Bankruptcy Code or other applicable law. Upon conclusion of the Auction, the CRO and Investment Banker will (a) review each Qualified Bid on the basis of financial and contractual terms and other factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the sale and (b) after consultation with the Committee, identify the Successful Bid(s) subject to the consent of Wells Fargo. In making this determination, the CRO and Investment Banker, after consultation with Wells Fargo and the Committee, may consider, among other things, the amount of cash to be paid or delivered and the other terms or conditions of the Qualified Bid(s), and the determination by the CRO, after consultation with Investment Banker, and the Committee and subject to the consent of Wells Fargo, shall be final for the purposes of these Bid Procedures.

### Credit Bid Right

The sale of the Assets is subject to the credit bid right of Wells Fargo pursuant to Code §363(k).  Wells Fargo shall be deemed a Qualified Bidder in all respects, and shall not be required to submit a Good Faith Deposit, APA, or any other deliverable or documentation to the Investment Banker, Debtor, or their representatives or agents. Wells Fargo may submit a credit bid, in its sole and absolute discretion, at any time prior to announcement of the Successful Bid(s), regardless of whether Wells Fargo participated in prior rounds of the Auction, on any individual Property, portion of Properties, or all of the Property constituting its collateral.

### Sale Hearing

An evidentiary hearing to consider the Sale Motion and approval of the Successful Bid(s) (the "Sale Hearing"), will be held on **April 8, 2016 at _____, prevailing Central time**, in the Courtroom 6A before the Honorable Cynthia A. Norton, United States Bankruptcy Judge, at the United States Bankruptcy Court, Western District of Missouri, 400 East 9th Street, Kansas City, Missouri 64106. The Sale Hearing may be adjourned or rescheduled as ordered by the Bankruptcy Court without further notice to creditors and parties in interest other than by announcement by Debtor of the adjourned date at the Sale Hearing.

Debtor's presentation to the Bankruptcy Court for approval of the Successful Bid(s) does not constitute Debtor's acceptance of the Bid(s). Debtor will be deemed to have accepted a Bid only when the Bid has been approved by Order of the Bankruptcy Court.

WA 7824154.3

## Objections

Objections, if any, to the Motion shall be filed on the docket of the Bankruptcy Court and served such that each objection is actually received by the following parties on or before **3:00 p.m., prevailing Central time on April 7, 2016** (the "**Objection Deadline**"): (a) counsel for Debtor, Lisa A. Epps, Spencer Fane LLP, 1000 Walnut, Suite 1400, Kansas City, MO 64106, lepps@spencerfane.com; (b) counsel to Wells Fargo Bank, N.A., Mark V. Bossi, Thompson Coburn LLP, 505 N. 7th Street, Suite 3500, St. Louis, MO 63101, mbossi@thompsoncoburn.com; (c) counsel for the Official Committee of Unsecured Creditors, _____; and (d) Office of the United States Trustee's Office, Sherri L. Wattenbarger, Trial Attorney, 400 East 9th Street, Room 3440, Kansas City, Missouri, sherri.wattenbarger@usdoj.gov.

## Back-Up Bidders

If any Auction Participant whose Qualified Bid is a Successful Bid (a "**Successful Bidder**") fails to consummate the Transaction because of a breach or failure to perform on the part of such Successful Bidder, or for any reason other than the failure of the Bankruptcy Court to approve the terms of the Transaction, the Auction Participant that had submitted the next highest or otherwise best Qualified Bid for the same asset or assets of the estates at the Auction or prior to the Auction (the "**Back-Up Bidder**") will be deemed to be the Successful Bidder, and Debtor will be authorized to consummate the Transaction with such Auction Participant without further order of the Bankruptcy Court, and such Qualified Bid shall thereupon be deemed the Successful Bid; provided that upon being notified that its Qualified Bid has become the Successful Bid, the Auction Participant submitting such Qualified Bid shall within three (3) business days after such notification provide a Good Faith Deposit (unless such Auction Participant previously shall have provided a Good Faith Deposit that shall not have been returned as described below). Upon providing such Good Faith Deposit, such Auction Participant shall be deemed the Successful Bidder. If any Auction Participant fails to consummate the Transaction because of a breach or failure to perform on the part of such Auction Participant (including, without limitation, the failure to timely deposit the Good Faith Deposit), the process described above may continue with other Auction Participants in decreasing order of the Qualified Bids as determined by the CRO, after consultation with the Investment Banker, Wells Fargo and the Committee, until an Auction Participant shall consummate the Transaction; provided, however, that Wells Fargo shall be allowed two (2) business days after receiving written notice from the Investment Banker in which to exercise a Credit Bid Right.

## Disposition of Good Faith Deposit

The Good Faith Deposit of the Successful Bidder(s), or a Back-Up Bidder that consummates a transaction in place of a Successful Bidder as provided for herein, shall be retained by Debtor and applied toward the payment of the Successful Bid(s) at the closing of the Transaction. If any Successful or Back-Up Bidder fails, for any reason other than Bankruptcy Court denial of the Transaction, to close a Transaction, then the Good Faith Deposit shall be retained by Debtor as partial damages for the failure to consummate the Transaction (the "**Forfeited Good Faith Deposit**"). The Good Faith Deposit of all Qualified Bidders (other than the Successful Bidder(s), a Back-Up Bidder that consummates a Transaction in place of a

Successful Bidder as provided for herein, or a Successful Bidder or a Back-Up Bidder that forfeits its deposit as liquidated damages as provided for herein) will be returned, without interest, to each such Qualified Bidder within ten business days after the closing of all proposed Transactions approved by the Bankruptcy Court at the Sale Hearing. For the avoidance of doubt, any Forfeited Good Faith Deposit shall be deemed property of the Debtor's bankruptcy estate and subject to the terms and conditions of the Interim Order and any Final Order granting Debtor's Motion for Authorization to Obtain Secured Credit on Interim and Final Basis, including the security interests granted to Wells Fargo, the Permitted Liens, and the Carve-Out (as defined in such orders).

## Modifications

The CRO, after consultation with Investment Banker and the Committee and subject to the consent of Wells Fargo, may (a) determine which Qualified Bid, if any, is the highest or otherwise best offer(s); and (b) reject at any time before entry of an Order of the Bankruptcy Court approving the Successful Bid(s), any bid that, in the discretion of the CRO, after consultation with the Investment Banker, Wells Fargo and Committee, is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code or the Bid Procedures, or (iii) contrary to the best interests of Debtor's estate and its creditors. At or before the conclusion of the Auction, the CRO and the Investment Banker, after consultation with Wells Fargo and the Committee, may impose such other terms and conditions upon Qualified Bidders as the CRO and the Investment Banker determine to be in the best interests of the Debtor's estate. Additionally, in those instances where consent is not required, but only consultation, nothing herein shall prohibit Wells Fargo or the Committee from seeking immediate Court intervention to the extent that after consultation with the CRO and Investment Banker, Wells Fargo or the Committee disagree with the CRO/Investment Banker's proposed course of action.

WA 7824154.3

## Exhibit B

**Form of Asset Purchase Agreement**

**[to be inserted]**

**<u>Exhibit C</u>**

**Proposed Transaction Notice**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| In re: | **Chapter 11** |
| **MID-STATES SUPPLY COMPANY, INC.,** | **Case No. 16-40271 (can)** |
| **Debtor.** | |

**NOTICE OF THE SALE OF SUBSTANTIALLY ALL OF**
**DEBTOR'S ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES,**
**AND INTERESTS AND RELATED RELIEF**

**TO ALL PERSONS RECEIVING THIS NOTICE, PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.      On February 16, 2016, Debtor filed its Motion to Approve One or More Potential Sale(s) of Substantially All of Its Assets Free and Clear of All Liens, Interests, Claims and Encumbrances, and Related Procedures and Bid Protection Pursuant to 11 U.S.C. § 363 and Related Relief Pursuant to 11 U.S.C. §§ 102 and 105 [Docket No. _____] (the "**Motion**").

2.      In the Motion, among other things, Debtor seeks an order of the Bankruptcy Court authorizing it to sell, pursuant to Bid Procedures set forth in Exhibit A to the Motion, outside the ordinary course of business and free and clear of all liens, claims, encumbrances, and interests, all of Debtor's right, title and interest substantially all of the assets owned by Debtor (collectively, the "**Assets**") to the Successful Bidder(s)[1] and otherwise granting all necessary and appropriate related relief. A copy of the Motion, the Bid Procedures Order identified below and other pleadings in the bankruptcy case can be obtained at the website listed below.[2]

**The Sale Process**

3.      The Bid Procedures Order sets forth the following dates in connection with the transactions contemplated in the Motion:

| Event | Date |
|---|---|
| Second Round of Solicitations With Stalking Horse Bid(s), if any | **Commenced immediately after entry of sale procedures/bid protection order** |

---

[1]   Capitalized terms not defined herein shall have the meanings ascribed to them in the Sale Motion and Bid Procedures.

[2]    http://dm.eqip11.com/MSS

| | |
|---|---|
| Notice to Contract/Lease Parties of Potential Assignment or Rejection | **_____, 2016** |
| Bid Deadline | **April 1, 2016, 5:00 p.m. prevailing Central Time** |
| Auction, if necessary, and Announce Results | **April 5, 2016, 9:30 a.m. prevailing Central time** |
| Contract/Lease and Sale Hearing Objection Deadline | **April 7, 2016, 3:00 p.m. prevailing Central Time** |
| Final Hearing on Motion | **April 8, 2016, _____ a.m. prevailing Central Time** |
| Closing(s) with Successful Bidder(s) | **On or before April 15, 2016** |

4.     An initial hearing on the Motion, focusing on approval of the bid procedures and selection of any Stalking Horse Bidder, including any related Bid Protection, was held on February 26, 2016**.** Thereafter, the Bankruptcy Court entered that certain Order Approving Motion to Approve the Sale of Substantially All of Its Assets Free and Clear of All Liens, Interests, Claims and Encumbrances, and Related Procedures and Bid Protection Pursuant to 11 U.S.C. § 363 and Related Relief Pursuant to 11 U.S.C. §§ 102 and 105 [Docket No. ___] (the "**Bid Procedures Order**")

5.     Pursuant to the Bid Procedures Order, if more than one Qualified Bid has been submitted for the Assets on or before **April 1, 2016** in accordance with the Bid Procedures attached as Exhibit A, the Investment Banker will conduct an auction (the "**Auction**") on **April 5, 2016 at 9:30 a.m., prevailing Central time**, with respect to such Qualified Bids in order to determine the Successful Bid(s) to submit for approval by the Bankruptcy Court at the Final Hearing. Qualified Bidders seeking to participate as a bidder at the Auction must comply with the Bid Procedures.

6.     The Final Hearing on the Sale Motion shall be held on **April 8, 2016, at _____, prevailing Central time**, in the Courtroom 6A before the Honorable Cynthia A. Norton, United States Bankruptcy Judge, at the United States Bankruptcy Court, Western District of Missouri, 400 East 9th Street, Kansas City, Missouri.

## <u>Additional Information Regarding Any Objection</u>

7.     Objections, if any, to all or any part of the Motion shall be filed on the docket of the Bankruptcy Court and served such that each objection is actually received by the following parties on or before the relevant objection deadline specified above: (a) counsel for Debtor, Lisa A. Epps, Spencer Fane LLP, 1000 Walnut, Suite 1400, Kansas City, MO 64106, lepps@spencerfane.com; (b) counsel to Wells Fargo Bank, N.A., Mark V. Bossi, Thompson Coburn LLP, 505 N. 7th Street, Suite 3500, St. Louis, MO 63101, mbossi@thompsoncoburn.com; (c) counsel for the Official Committee of Unsecured Creditors, _____; and (d) Office of the United States Trustee's Office, Sherri L.

Wattenbarger, Trial Attorney, 400 East 9th Street, Room 3440, Kansas City, Missouri, sherri.wattenbarger@usdoj.gov.

8.     Any person failing to timely file an objection to the Motion shall be barred from objecting to the Motion, including the sale of the free and clear of any and all liens, claims, encumbrances, and interests and will be deemed to consent to the Transaction(s), including the sale of the Assets free and clear of any and all liens, claims, encumbrances, and interests.

9.     Copies of the Motion, the Bid Procedures, the Bid Procedures Motion, and the Bid Procedures Order, together with any and all exhibits, schedules, and attachments thereto, may be obtained from the following website— http://dm.eqip11.com/MSS.

Respectfully submitted,

**SPENCER FANE LLP**

By: /s/ Lisa A. Epps
Scott J. Goldstein          MO Bar No. 28698
Lisa A. Epps                MO Bar No. 48544
Eric L. Johnson             MO Bar No. 53131
1000 Walnut Street, Suite 1400
Kansas City, MO 64106
Office:  816-474-8100
Facsimile:  816-474-3216
sgoldstein@spencerfane.com
lepps@spencerfane.com
ejohnson@spencerfane.com

COUNSEL FOR DEBTOR

WA 7824154.3

# EXHIBIT A

**[Bid Procedures]**