IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| In re: | Chapter 11 |
| MID-STATES SUPPLY COMPANY, INC., | Case No. 16-40271-can |
| Debtor. | |

# FINAL ORDER
## GRANTING DEBTOR'S MOTION FOR AUTHORIZATION TO OBTAIN SECURED CREDIT ON INTERIM AND FINAL BASIS

This matter initially came before the Court on February 9, 2016, upon the motion (the "**Motion**"), dated February 7, 2016, filed by the debtor (the "**Debtor**") in the above-captioned chapter 11 case (the "**Case**") pursuant to sections 105, 361, 362, 363, 364 and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et. seq.* (as amended, the "**Bankruptcy Code**"), and Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), requesting, among other things entry of a final order:

(i)     authorizing the Debtor to obtain secured post-petition financing on a super-priority basis subject to only to the Permitted Liens (as defined in the Credit Agreement (defined herein));

(ii)    authorizing the Debtor to execute and enter into the Fourth Amendment to Financing Agreement (the "**Fourth Amendment**"), which amends the Credit Agreement dated as of September 1, 2011, between the Debtor and Wells Fargo Bank, National Association ("**Lender**") (as amended, including as amended by the Fourth Amendment, the "**Credit Agreement**") (a copy of which, including all amendments (but excluding schedules and exhibits), has been filed with the Court, is available on the Court's website and is also available

upon request by contacting counsel for the Debtor) to provide for a committed post-petition revolving line of credit of up to $20,000,000.00 (the "**DIP Facility**"), and to perform such other and further acts as may be required in connection with the Credit Agreement and the Loan Documents (as defined in the Credit Agreement);

(iii) granting super-priority administrative expense claims to Lender for all post-petition financing provided by Lender payable from, and having recourse to all of the pre-petition and post-petition property of the Debtor's estate (the "**Estate**") and all proceeds thereof, subject only to the Carve-Out (defined herein) and the Permitted Liens, and granting liens for the post-petition financing to Lender in all Post-Petition Collateral (defined herein) in accordance with the Credit Agreement, the Loan Documents and this Interim Order; and

(iv) scheduling a final hearing (the "Final Hearing") to be held within 25 days of the entry of the interim order to consider entry of a final order authorizing, among other things, the Debtor to obtain financing under the DIP Facility, the Credit Agreement and the other Loan Documents on a final basis (the "**Final Order**");

An initial interim hearing (the "**Initial Interim Hearing**") on the Motion was held before the Court on February 9, 2016 and a second interim hearing (the "**Second Interim Hearing**" and together with the Initial Interim Hearing, the "Interim Hearings") on the Motion was held before the Court on February 26, 2016, which resulted in the Court's entry of an Interim Order dated February 9, 2016 [Dkt. # 49] and a Second Interim Order dated February 26, 2016 [Dkt. #135]. Thereafter, the Court held a final hearing on March 14, 2016 (the "**Final Hearing**") at which the Debtor requested the Court to enter a Final Order (hereinafter referred to as the "**Final Order**"), with all objections to the entry thereof being resolved, overruled or withdrawn, and after due deliberation and consideration and sufficient cause appearing therefor:

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, THAT:

1. <u>Jurisdiction; Petition Date.</u>

(a) This Court has jurisdiction to hear the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(D), (K), (M), and (O).

(b) On February 7, 2016 (the "**Petition Date**"), the Debtor filed its chapter 11 petition. Since the Petition Date, the Debtor has remained in possession and control of its assets as a debtor-in-possession pursuant to sections 1107 and 1108 of Title 11 of Bankruptcy Code.

2. <u>Disposition.</u> The Motion is hereby granted on a final basis on the terms set forth herein. Any objections to the Motion or to the relief sought in the Motion have been resolved, withdrawn or are hereby overruled on the merits. This Final Order shall be valid, binding on all parties in interest and fully effective on a final basis upon entry by the Court.

3. <u>Notice</u>. The Interim Hearings and Final Hearing with respect to the Motion were held pursuant to the authorization of Bankruptcy Rule 4001(c)(2). Notice was served on the parties listed on the certificate of service filed in respect of the Motion.

4. <u>Debtor's Stipulations Regarding Pre-Petition Indebtedness.</u> In connection with the Credit Agreement, the other Loan Documents and this Final Order, the Debtor acknowledges, represents, stipulates and agrees (subject to paragraph 18 below) that:

(a) Lender is the holder of a claim as of February 7, 2016, against the Debtor in the approximate sum of $23,473,699.65 consisting of line of credit borrowings of $22,162,068.72, term loan borrowings of $616,666.59, purchasing card indebtedness of approximately $1,600.00, accrued interest and unused line fees of $689,014.64, reimbursement obligations for outstanding letters of credit of $4,349.70, plus all other costs, fees and obligations owing, including, without limitation, all costs and expenses of administration, collection and

enforcement incurred by Lender prior to the Petition Date (the "**Pre-Petition Indebtedness**").  To the extent permitted under § 506(b) of the Bankruptcy Code, Lender is also entitled to interest accrued after commencement of the Case and the reasonable fees, costs and charges referred to in § 506(b).

(b)    The Pre-Petition Indebtedness is evidenced by, without limitation, (i) the Credit Agreement, (ii) an Amended and Restated Revolving Note in the original principal amount of $58,000,000.00, dated February 21, 2014, (iii) a Term Loan Note in the original principal amount of $1,000,000.00, dated February 21, 2014, a Wellsone® Commercial Card Agreement dated April 14, 2014, and (iv) certain other documents relating to the foregoing (collectively, the "**Loan Documents**").[1]

(c)    Payment of the Pre-Petition Indebtedness is absolutely and unconditionally due and payable, without defense, offset or counterclaim, and the Debtor waives and releases (i) any right to object to the allowance of, and any defense with respect to, the Pre-Petition Indebtedness, and (ii) any right to contest the priority, perfection or validity the liens securing such Pre-Petition Indebtedness.

(d)    Pursuant to section 552(b) of the Bankruptcy Code and the Loan Documents, including, without limitation, the Credit Agreement, the Pre-Petition Indebtedness is secured by a security interest and lien in substantially all of the Debtor's personal property, whether now owned or hereafter acquired, including, without limitation, all accounts, chattel paper and electronic chattel paper, deposit accounts, documents, equipment, general intangibles, goods, instruments, investment property, intellectual property rights, inventory intellectual property rights, inventory, letter-of-credit rights, letters of credit, together with all substitutions and replacements for and products of

---

[1] In connection with the Credit Agreement, the Debtor executed an Equipment Purchase Loan Note in the original principal amount of $1,000,000.00, dated February 21, 2014.  However, no funds have been advanced by Wells Fargo under the Equipment Purchase Loan Note and nothing is owed by the Debtor thereunder.

any of the foregoing, the proceeds of any and all of the foregoing and all proceeds and products of such collateral security acquired by the Estate after the commencement of the Case (such collateral security, proceeds and products are herein called the "**Pre-Petition Collateral**").

5. Findings Regarding the DIP Facility Based on the Record at the Interim Hearing.

(a) It is necessary for the Debtor to obtain post-petition financing for a period of time and in an amount which would allow the Debtor to continue to operate as a going concern, to pay employees, and to preserve the value of its assets. An immediate need exists for the Debtor to obtain further credit from Lender. Without such funds, the Debtor will not be able to continue the operation of its business and to pay its employees.

(b) Lender has indicated a willingness to extend post-petition secured credit under the terms and conditions of this Final Order, the Credit Agreement and the Loan Documents. The Debtor is unable to obtain financing on terms more favorable than terms offered by Lender under the Credit Agreement and the Loan Documents and is unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. The Debtor is also unable to obtain secured credit under section 364(c) and (d) of the Bankruptcy Code on terms more favorable than those set forth in the Credit Agreement and Loan Documents.

(c) The terms of the Credit Agreement and the Loan Documents are fair and reasonable, were negotiated by the parties at arm's length and in good faith and are the best available to the Debtor under present market conditions and the Debtor's financial circumstances. Based on the foregoing, any credit extended under the Credit Agreement and the other Loan

Documents by Lender is extended in good faith, as that term is used in section 364(e) of the Bankruptcy Code.

(d) The Debtor, in order to satisfy its need for post-petition financing, as determined in the exercise of its sound business judgment, desires the Court to enter this Final Order. Entry of this Final Order is necessary to prevent irreparable harm to the Debtor, including the harm that would result from the disruption of the Debtor's business, will increase the possibilities for a successful sale of the Debtor's business as a going concern, and is in the best interest of the Debtor's Estate. Absent entry of this Final Order, the Debtor's Estate will be immediately and irreparably harmed. Consummation of the DIP Facility is in the best interest of the Debtor's Estate.

6. <u>Authorization of the DIP Facility and Fourth Amendment.</u>

(a) The Debtor is authorized to enter into the DIP Facility and the Fourth Amendment and to incur postpetition debt under the DIP Facility pursuant to the terms of the Credit Agreement, the Loan Documents and this Final Order. To the extent of any conflict between this Final Order and the Fourth Amendment or any other Loan Documents, this Final Order shall govern.

(b) The Debtor is further authorized to continue to use the commercial card program under the Wellsone® Commercial Card Agreement, dated on or around April 14, 2014 (as amended, restated, supplemented or otherwise modified from time to time, the "<u>Card Agreement</u>"), between Debtor and Lender subject to the terms and conditions thereof; provided, however, that the default provisions of the Card Agreement shall be deemed amended to exclude the commencement of this case, or such defaults that existed as of the Petition Date or arose on account of this case. Lender is authorized to make advances from time to time to Debtor with a

maximum exposure at any time up to $20,000.  All prepetition charges and fees are authorized and required to be paid.  Lender may rely on the representations of Debtor with respect to its use of the commercial card program pursuant to the Card Agreement, and Lender shall not have any liability to any party for relying on such representations by Debtor as provided for herein.

(c) In accordance with the terms of this Final Order, the Credit Agreement and the other Loan Documents, the DIP Facility shall be used to (i) fund the working capital requirements and other financing needs of the Debtor during the pendency of the Case, and (ii) pay certain transaction fees and other costs and expenses of the administration of the Case.  Use of funds shall further be consistent with the Budget for the period from February 22, 2016 through and including March 27, 2016 attached to the Second Interim Order and attached hereto as Exhibit 1 (the "**Budget**"), which may be amended from time to time by delivery of a revised and updated Budget by the Debtor to Lender and which shall be effective and become the Budget referred to herein only upon written approval of such amended Budget by Lender in its sole discretion.  The DIP Facility shall not be used to pay any fees or expenses incurred at any time in connection with the filing or prosecution of any action which seeks to invalidate, challenge, dispute, avoid, subordinate or otherwise impair the claims Lender under the Loan Documents or in connection with the DIP Facility, or any liens or priorities created under either the Loan Documents or the DIP Facility, or which seeks to recover on any claims against or transfers made to Lender; provided, however, that any official committee of unsecured creditors (the "**Committee**") may investigate the liens, security interests, and claims of Lender.

(d) Any and all fees and expenses paid or required to be paid in connection with the Credit Agreement shall be paid by the Debtor as detailed therein (with the exception of

fees and expenses of counsel for the Lender, which shall accrue and be payable to the extent permitted under §506(b) of the Bankruptcy Code).

(e) Debtor shall file a supplemental budget for the period of March 28, 2016 through April 17, 2016 by **March 18, 2016** (the "**Supplemental Budget**"). Prior to filing the Supplemental Budget and to the extent possible, Debtor shall discuss the same with Lender and the Committee, and the Debtor shall use its best efforts to achieve a consensual budget. If no timely objections are received to the Supplemental Budget within a time period set by the Court by subsequent Order, then the Supplemental Budget will become the final budget for the time period for which it covers (the "**Final Budget**", together with the Supplemental DIP Budget, the "**Budget**"). To the extent there are objections raised to the Supplemental Budget and prior to any hearings on such budget, Debtor may operate pursuant to the Supplemental Budget pending final approval by the Court, but only upon written approval of such Supplemental Budget by Lender in its sole discretion.

(f) The Debtor is hereby authorized and directed to pay the DIP Facility Fee (as defined in the Credit Agreement) in accordance with the terms of the Credit Agreement.

(g) In furtherance of the foregoing and without further approval of the Court, the Debtor is authorized and directed on a final basis to perform all acts, to make, execute and deliver all instruments and documents (including the execution or recordation of security agreements, mortgages and financing statements) that may be required, necessary (including necessary by reason of request by Lender) for the Debtor's performance under the Credit Agreement, the Loan Documents or this Final Order.

(h) Upon execution of the Fourth Amendment and the entry of this Final Order, obligations, agreements and covenants of the Debtor under the Credit Agreement and the Loan

Documents shall be valid and binding and enforceable against the Debtor under the terms of the Credit Agreement, the Loan Documents and this Final Order.  Subject to paragraph 18 below, no payment, advance, financial accommodation, transfer or grant of security under the Credit Agreement, the Loan Documents or this Final Order shall be voidable or recoverable under the Bankruptcy Code or under any applicable law (including section 502(d) of the Bankruptcy Code), or subject to any defense, reduction, setoff, recoupment or counterclaim.

7. DIP Facility Advances; Effective Date.

(a) Revolving advances made and the letters of credit issued (or renewed) under the DIP Facility from and after the DIP Facility Effective Date (defined herein) until the DIP Facility Termination Date (defined herein) shall be governed by the terms and conditions of the Credit Agreement, the Loan Documents and this Final Order, including, without limitation, the terms and conditions governing the applicable interest rates. The "**DIP Facility Termination Date**" shall mean the earliest of (i) April 24, 2016, (ii) the closing of a sale of all or substantially all of the assets of the Debtor pursuant to a sale under section 363 of the Bankruptcy Code, (iii) the date on which the Debtor's plan of reorganization becomes effective, or (iv) the occurrence of an Event of Default (as such term is defined in the Credit Agreement).  The "**Post-Petition Indebtedness**" shall be all Indebtedness (as such term is defined in the Credit Agreement) arising subsequent to the date on which the Debtor filed its petition for relief in the Case, including post-petition interest. The "**DIP Facility Effective Date**" shall be the date upon which the Court entered the Initial Interim Order.

(b) Lender shall not be required to extend credit under the DIP Facility unless and until Lender and its legal counsel are satisfied that: (i) the conditions precedent for such

revolving advances set forth in the Credit Agreement have been met; and (ii) no Event of Default under this Final Order has occurred.

    8.    <u>Post-Petition Indebtedness; Liens and Priority</u>.

    (a)    The Post-Petition Indebtedness shall be:

    (1)    allowable under § 503(b)(1) of the Code as an administrative expense with priority pursuant to the provisions of § 364(c)(1) of the Code over all other administrative expenses of the kind specified in § 503(b) or § 507(b) of the Code and all other expenses and claims, subject only to the Carve Out; and

    (2)    secured by (and Lender, is hereby granted) a security interest in and lien on all present and future property of the Estate whether now held or hereafter acquired by the Estate, and including specifically and without limitation (excepting avoidance actions and the proceeds thereof under sections 544, 547, 548, 549 and 553 of the Bankruptcy Code, <u>provided, however</u>, in the event avoidance actions are sold as part of a sale that no value may be allocated to the same) (A) all of the Estate's now owned or hereafter acquired accounts, chattel paper and electronic chattel paper, deposit accounts, documents, equipment, general intangibles, goods, instruments, investment property, intellectual property rights, inventory intellectual property rights, inventory, letter-of-credit rights, letters of credit, and any items in any lockbox account; together with (i) all substitutions and replacements for and products of any of the foregoing; (ii) in the case of all goods, all accessions; (iii) all accessories, attachments, parts, and repairs now or hereafter attached or affixed to or used in connection with any goods; (iv) all warehouse receipts, bills of lading and other documents of title now

or hereafter covering any of the foregoing; (v) all collateral subject to the lien of any security document in favor of Lender; (vi) any money, or other assets of the Debtor that may or hereafter come into possession, custody or control of Lender; (vii) proceeds of any and all of the foregoing; (viii) books and records of the Debtor, including all mail or electronic mail addressed to the Debtor; (ix) all of the foregoing, whether now owned or existing or hereafter acquired or arising or in which the Debtor now has or hereafter acquires any rights; and (x) all proceeds and products of such collateral security acquired by the Estate, (B) the Pre-Petition Collateral, (C) all real estate owned by the Estate, and (D) all proceeds, products, rents, issues and profits of all of the foregoing (all herein referred to as the "**Post-Petition Collateral**" and collectively with the Pre-Petition Collateral, the "**Collateral**" ), which lien and security interest shall have priority over all other liens, claims and expenses in the Debtor's Case except with respect to the (i) Carve-Out; (ii) Debtor's counsel fees and expenses with respect to any retainers (to the extent such retainers constitute Collateral); and (iii) all other valid, duly perfected pre-petition statutory liens, security interests and other liens in assets of the Debtor which are Permitted Liens. The liens and security interests granted above to secure payment of the Post-Petition Indebtedness shall be valid and enforceable regardless of whether the Court determines that some or all of the security interests and liens held by Lender in the Pre-Petition Collateral are unenforceable for any reason.

9. <u>Perfection of Lender Liens; Termination</u>. Entry of this Final Order automatically perfects the liens granted by paragraph 8 of this Final Order.

10. <u>Use of Collateral; Adequate Protection; Application of Funds.</u>

(a) Any cash collateral of Lender used by the Debtor since the commencement of the Debtor's Case shall constitute Post-Petition Indebtedness under the DIP Facility. Notwithstanding the foregoing, the Debtor is not authorized to use Lender's cash collateral (other than to the extent advances under the DIP Facility constitute cash collateral).

(b) On a daily basis, the Debtor shall pay over to Lender all cash proceeds (and cash equivalents) of Collateral for application to the Pre-Petition Indebtedness and the Post-Petition Indebtedness as provided in the Credit Agreement.

(c) Absent manifest error, application of funds by Lender to the reduction of the Pre-Petition Indebtedness or the Post-Petition Indebtedness shall be final. Nothing shall impair the validity of such application or such security interest or lien, subject to paragraph 18 below.

11. <u>Events of Default and Milestones.</u> The Events of Default contained in the Credit Agreement (as amended by the Fourth Amendment) are hereby approved and incorporated herein by reference.  Such Events of Default, include, but are not limited to the Debtor's failure to satisfy the following milestones in the Case:

(a) By no later than **February 16, 2016**, the Debtor shall file a motion with the Bankruptcy Court seeking authorization to sell substantially all of its assets and seeking approval of bidding and sale procedures therefor (which motion shall be in form and substance satisfactory to Lender);

(b) By no later than **March 21, 2016**, a bid procedures Order (in form and substance satisfactory to Lender) shall be entered by the Bankruptcy Court;

(c) By no later than **March 11, 2016**, the Debtor shall have entered into a definitive asset purchase agreement with a prospective purchaser in form and substance satisfactory Lender;

(d) By no later than **April 13, 2016**, a sale hearing shall be held and a sale order entered by the Bankruptcy Court approving such sale under Section 363 of the Bankruptcy Code (in form and substance acceptable to Lender); and

(e) By no later than **April 15, 2016**, the sale of substantially all of Debtor's assets shall be consummated."

12. <u>Lender's Remedies.</u> Upon the occurrence of an Event of Default:

(a) Lender may refuse to make revolving advances or to issue (or renew) Letters of Credit; and

(b) Lender may file an affidavit (the "**Affidavit**") with the Bankruptcy Court certifying the occurrence of the Event of Default and seeking relief from the automatic stay to exercise any and all of its rights and remedies under the Credit Agreement and the other Loan Documents and/or under applicable law. Lender shall, contemporaneously with the filing of such the Affidavit with the Bankruptcy Court, serve a copy of the Affidavit on counsel for the Debtor, the Committee and the U.S. Trustee via e-mail. If the Debtor fails to file a response with the Bankruptcy Court, which response must be limited to whether or not an Event of Default has occurred, within forty-eight (48) hours of the filing of such Affidavit, the Bankruptcy Court may enter an order granting Lender relief from the automatic stay and permitting Lender to enforce its rights and remedies. In the event the Debtor timely files a response, Lender shall be entitled to an expedited hearing on its motion for relief from the stay, such hearing to occur within two (2)

Business Days of the filing of such response subject to Court availability or agreement of the parties.

13.  <u>Allowance for Improvements made by the Estate.</u> Except as otherwise provided for in the Budget, Debtor hereby waives the right to surcharge Lender's collateral for any cost or expense incurred in the administration of the bankruptcy estate pursuant to Section 506(c) of the Bankruptcy Code or otherwise to the full extent allowed under applicable law; <u>provided however</u>, such waiver shall not apply to a trustee appointed pursuant to Chapter 7 of the Bankruptcy Code.

14.  <u>Successors and Assigns.</u> Except as otherwise stated herein, the provisions of this Final Order shall be binding upon all persons and entities and shall inure to the benefit of Lender, the Debtor and their respective successors and assigns, including, without limitation, any subsequent chapter 11 or chapter 7 trustee.

15.  <u>Carve-Out for United States Trustee Fees and Professional Fees.</u>  Subject to the terms and conditions contained in this paragraph 15, all pre-petition and post-petition claims (whether secured or unsecured) of Lender, including Lender's super-priority administrative expense claim, are subject and subordinate to a carve-out (the "**Carve-Out**") for:

(a)  amounts payable to the United States Trustee pursuant to 28 U.S.C. § 1930(a) and any fees payable to the Clerk of the Bankruptcy Court (the "**Statutory Fees**");

(b)  amounts payable for a Chapter 7 trustee in the event of a conversion of this case to a case under Chapter 7 of the Bankruptcy Code in an amount not to exceed $10,000 (the "**Chapter 7 Trustee Fee**");

(c)  the payment pursuant to Orders of the Court of allowed unpaid professional fees, costs and expenses of attorneys and financial advisors retained by the Debtor

or the Committee (the "**Professional Fees and Expenses**"), only to the extent that such Professional Fees and Expenses: (i) were not incurred in the prosecution or assertion of claims, causes of action, actions or proceedings against Lender in respect of the Pre-Petition Indebtedness or otherwise or challenging or raising any defense to the Pre-Petition Indebtedness or Liens of the Lender, or against the Lender in respect of the DIP Facility or otherwise (the "**Excluded Actions**"); (ii) were incurred or accrued prior to the earlier of (A) April 24, 2016, (B) the date on which the Debtor's plan of reorganization becomes effective, or (C) receipt by the Debtor of notice of an Event of Default; and (iii) do not exceed an amount equal to $375,000 for the Debtor's counsel, $150,000 for the Committee's professionals, which amounts are not otherwise payable from funds which are not the Collateral of the Lender or proceeds therefrom such as retainers[2] held by Debtor's professionals; <u>provided however,</u> that in no event shall any retainer or the Carve-Out be used to pay any fees or expenses arising after the conversion of this Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code. Nothing herein shall be construed as consent to the allowance of any fees and expenses of a retained professional, or shall affect any party's rights to object to the allowance and payment of such fees and expense, all such rights being expressly preserved.

(d)    Any Carve-Out paid by the Lender shall constitute additional Post-Petition Indebtedness owed to the Lender under this Order. Notwithstanding anything herein to the contrary, no portion of the Carve-Out or retainers may be used to prosecute, object to or contest in any manner, or raise any defenses to the amount, validity, perfection, priority, extent or enforceability of the Pre-Petition Indebtedness or Post-Petition Indebtedness, the Liens securing

---

[2] For the avoidance of doubt, payment of professional fees from retainers shall not otherwise reduce the amount of the Carve-Out.

6311076                                                          - 15 -

the Pre-Petition Indebtedness or Post-Petition Indebtedness, or any claims or causes of action against Lender.

(e) To further secure its professional fees and expenses, the Committee's professionals shall be granted a security interest in and lien on the Debtor's interests in the real estate located Killdeer, North Dakota up to the amount of its fees and expenses; <u>provided however</u>, such security interest and lien shall be subordinate to Lender's security interests granted herein and currently existing encumbrances not otherwise subject to avoidance. The liens and security interests granted above to secure payment of the Committee's professionals shall be valid and enforceable and this Order shall be sufficient and conclusive evidence of the priority, perfection, attachment, and validity of such security interests and liens and constitute valid, automatically perfected and unavoidable security interests, with priorities granted hereunder, without the necessity of creating, filing, recording, or serving any financing statements or other documents that might otherwise be required under federal or state in jurisdiction or the taking of any other action to validate or perfect such security interests and liens.

16. <u>Stay; Modification.</u> Having been found to be extending credit and making loans to the Debtor in good faith, the Lender shall be entitled to the full protection of § 364(e) with respect to the DIP Facility in the event that this Order, or any authorization contained herein is stayed, vacated, reversed or modified on appeal. No subsequent stay, modification, termination, failure to extend the term or vacation of this Final Order shall affect, limit or modify the validity, priority or enforceability of any liability of the Debtor under the Credit Agreement or the other Loan Documents, or any lien or security interest granted to Lender under the such documents. All credit extended under the Credit Agreement and the other Loan Documents is made in reliance on this Final Order, and, except as set forth below, the obligations the Debtor incurs to Lender under

the Credit Agreement and the other Loan Documents cannot be subordinated, lose superpriority status, or be deprived of the benefit of the senior liens granted to Lender, by any subsequent order in the Debtor's chapter 11 case or a converted chapter 7 case. The provisions of this Final Order dealing with the liability of the Debtor under the Credit Agreement and the other Loan Documents shall not be modified or superseded by any order confirming a plan of reorganization (including the use of the cram-down provisions of section 1129(b) of the Code) in the Debtor's Case.

17. <u>Preservation of Rights Under This Final Order.</u> The provisions of this Final Order and any actions taken pursuant hereto shall survive entry of any order which may be entered (a) converting the Debtor's Case to a chapter 7 case, (b) confirming or consummating any plan of reorganization of the Debtor, or (c) dismissing the Debtor's Case or any subsequent chapter 7 case pursuant to sections 303, 305 or 1112 of the Bankruptcy Code, and the terms and provisions of this Final Order as well as the priorities in payment, liens and security interests granted pursuant to this Final Order, the Financing Agreement and the other Loan Documents shall continue in this or any superseding case under the Bankruptcy Code, and such priorities in payment, liens and security interests shall maintain their priority as provided by this Final Order until all Indebtedness is indefeasibly paid and satisfied.

18. <u>Challenge of Claim or Lien.</u> The acknowledgements and admissions of the Debtor in paragraph 4 of this Order shall be binding on its Estate and all parties in interest (except the Committee) unless such party in interest has filed an adversary proceeding or contested matter challenging any such acknowledgements or admissions no later than the date that is 45 days from the date of formation of the Committee. With respect to the Committee, the acknowledgements and admissions of the Debtor in paragraph 4 of this Order shall be binding on the Committee unless the Committee has filed an adversary proceeding or contested matter challenging any such

acknowledgements or admissions no later than (a) the date that is 45 days from the date of formation of the Committee with respect to the validity, nature and extent of the Lender's security interests, and liens and amount of the Lender's claims and (b) May 15, 2016 as to any other potential claims against Lender; <u>provided, however</u>, with respect to any claims made pursuant to Paragraph 18(b), the existence or assertion of any such claims against Lender shall not serve as a basis to prevent a distribution to Lender of any proceeds from the sale of property of the estate provided that such distribution remains subject to disgorgement. If no such adversary proceeding or contested matter is timely commenced as set forth herein, the Pre-Petition Indebtedness of Lender shall constitute allowed secured claims, not subject to objection or subordination and otherwise unavoidable, and the pre-petition liens of Lender on the Pre-Petition Collateral shall be deemed legal, valid, binding, perfected, not subject to defense, counterclaim, offset of any kind or subordination, and otherwise unavoidable.

19. <u>Right to Credit Bid.</u> The right of Lender to credit bid the Indebtedness owed to Lender by the Debtor (pursuant to section 363(k) of the Bankruptcy Code), in whole or in part, in connection with any sale or disposition of assets in the Case (including in connection with a plan of reorganization for which confirmation is sought under section 1129(b)(2)(A)(i)) is hereby expressly reserved and preserved by this Final Order. This order is without prejudice to any valid credit bid right of any secured lender as allowed under section 363(k) of the Bankruptcy Code.

20. <u>Amendments and Modifications.</u>

(a) The requirement in Section 6.1(s) of the Credit Agreement, as amended by the Second Interim Order, that a Final Order be entered by the Court in form and content acceptable to Lender by March 14, 2016 be extended to March 18, 2016.

(b)  The following shall constitute new cumulative net cash flow requirements under Section 5.2 of the Credit Agreement for the following periods:

| Reporting Date | Cumulative net cash flow |
|---|---|
| February 28, 2016 | ($800,000) |
| March 6, 2016 | ($1,200,000) |
| March 13, 2016 | ($1,100,000) |
| March 20, 2016 | ($1,200,000) |
| March 27, 2016 | ($850,000) |
| For all periods thereafter | As determined by Wells Fargo in its sole discretion. |

(b)  The Debtor and Lender may enter into any non-material amendments or modifications to the Credit Agreement and the Loan Documents without notice or a hearing or further order of this Court; provided, however, that any such modifications shall be filed with the Court and shall not be adverse to the Debtor or its Estate.

21.  <u>Direct Capital's Adequate Protection</u>.  Debtor is hereby authorized to pay adequate protection to Direct Capital for the months of February, March, and April 2016 in the monthly amount of $28,702.24.  Debtor shall maintain insurance on all equipment that constitutes the collateral of Direct Capital as contractually required and shall provide proof of such insurance upon reasonable request. Debtor agrees to allow non-invasive inspections of Direct Capital's equipment collateral. This order is without prejudice to any blanket lien rights and purchase money security interests asserted by Direct Capital and all the rights of other parties to dispute the same.

22.  <u>Final Order Governs.</u>  Except as otherwise specifically provided in this Final Order, in the event of a conflict between the provisions of this Final Order, the Motion and the Loan Documents, the provisions of this Final Order shall govern.

Dated: March 19, 2016

/s/ Cynthia A Norton
United States Bankruptcy Judge

Submitted by:

**SPENCER FANE LLP**

By: /s/ Eric L. Johnson
Scott J. Goldstein     MO Bar No. 28698
Lisa A. Epps          MO Bar No. 48544
Eric L. Johnson       MO Bar No. 53131
1000 Walnut Street, Suite 1400
Kansas City, MO 64106
Office: 816-474-8100
Facsimile: 816-474-3216
sgoldstein@spencerfane.com
lepps@spencerfane.com
ejohnson@spencerfane.com

COUNSEL FOR DEBTOR