# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| In Re: | ) |
| | ) |
| **MID-STATES SUPPLY COMPANY, INC.,** | ) |
| | )    **Case No. 16-40271-can11** |
| | ) |
| Debtor. | ) |

## JOINT CHAPTER 11 PLAN OF LIQUIDATION

Marcus A. Helt (TX 24052187)
Thomas A. Scannell (TX 24070559)
**GARDERE WYNNE SEWELL LLP**
2021 McKinney Avenue
Suite 1600
Dallas, TX 75201
Telephone: (214) 999-3000
Facsimile: (214) 999-4667
mhelt@gardere.com
tscannell@gardere.com

**COUNSEL TO THE OFFICIAL COMMITTEE
OF UNSECURED CREDITORS**

Scott J. Goldstein       MO Bar No. 28698
Lisa A. Epps             MO Bar No. 48544
Eric L. Johnson          MO Bar No. 53131
**SPENCER FANE LLP**
1000 Walnut, Suite 1400
Kansas City, MO 64106
Office:  (816) 474-8100
Facsimile:  (816) 474-3216
sgoldstein@spencerfane.com
lepps@spencerfane.com
ejohnson@spencerfane.com

**COUNSEL TO DEBTOR**

**Dated: November 4, 2016**

# INTRODUCTION

Mid-States Supply Company, Inc., Debtor and Debtor-in-Possession in the above-captioned Chapter 11 Case and the Official Committee of Unsecured Creditors (together, the "Proponents") hereby jointly propose the following Chapter 11 plan of liquidation pursuant to § 1121 of the Bankruptcy Code. Reference is made to the Disclosure Statement for risk factors and a summary and analysis of the Plan and certain related matters. Debtor and Committee are the proponents of the Plan within the meaning of § 1129 of the Bankruptcy Code.

This Plan constitutes a liquidating Chapter 11 plan for Debtor. The Plan provides for Debtor's remaining assets to be liquidated the proceeds to be distributed to holders of Allowed Claims in accordance with the terms of the Plan and the priority of claims provisions of the Bankruptcy Code.  Except as otherwise provided by order of the Bankruptcy Court, distributions will occur on the Effective Date or as soon thereafter as is practicable and at various intervals thereafter.  Debtor will be dissolved as soon as practicable after the Effective Date.

Subject to the restrictions on modifications set forth in § 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, the Proponents expressly reserve the right to alter, amend or modify the Plan, one or more times, before its substantial consummation, for the resolution of its outstanding claims and equity interests.

**All holders of Claims against, and Interests in Debtor are encouraged to read the Plan, the Disclosure Statement, and the related solicitation materials in their entirety before voting to accept or reject the Plan.**

# ARTICLE I
## DEFINITIONS

**1.1.    Scope of Definitions**.  As used in the Plan, the following terms shall have the respective meanings specified below. Whenever the context requires, such terms shall include the plural as well as the singular number, the masculine gender shall include the feminine and the feminine gender shall include the masculine.

**1.2.    "Administrative Claim"** shall mean a claim under sections 503(b) or 1114(e)(2) of the Bankruptcy Code that is entitled to priority under section 507(a)(2) of the Bankruptcy Code, including, but not limited to, claims arising under section 503(b)(9) of the Bankruptcy Code (for the value of goods (i) sold to Debtor in the ordinary course of its business and (ii) received by Debtor within the 20 days immediately preceding the Petition Date), and any actual and necessary expenses of operating the business of Debtor or preserving the Estate incurred after the Petition Date, but not including Fee Claims.

**1.3.    "Administrative Claim Bar Date"** shall have the meaning set forth in Article 2.3 of the Plan.

**1.4.    "Administrative Claims Reserve"** shall have the meaning set forth in Article 7.3(a) of the Plan.

WA 8804524.1

1.5.    "**Allowed Claim**" shall mean: (a) any Claim, proof of which is Filed with the Bankruptcy Court on or before the Claims Bar Date, Rejection Claim Bar Date, or which has been or hereafter is listed in the Schedules by Debtor as liquidated in amount and not disputed or contingent and which, in either case, is a Claim as to which no objection to the allowance thereof has been Filed on or before the Claim Objection Deadline, or as to which any objection has been determined by Final Order of the Bankruptcy Court (allowing such Claim in whole or in part), or (b) a Claim that is allowed (i) in any contract, instrument, or other agreement entered into in connection with the Plan, (ii) in a Final Order or (iii) pursuant to the terms of the Plan, including, but not limited to, the settlement procedures set forth in Article 7.5 of the Plan.  In accordance with section 502(d) of the Bankruptcy Code, a Claim held by any Person or Entity that is subject to an Avoidance Action shall not be an Allowed Claim until such time as the avoidable transfer is returned, a final determination is made by the Bankruptcy Court that no avoidable transfer exists, or an agreement or settlement with respect thereto is reached between the Liquidating Trustee and such Person or Entity.

1.6.    "**APA**" shall mean the Amended and Restated Asset Purchase Agreement, dated as of April 13, 2016, by and between Debtor on the one hand, and Purchaser on the other.

1.7.    "**Asset Sale**" shall mean the sale, pursuant to the APA and section 363 of the Bankruptcy Code, of substantially all of Debtor's assets to the Purchaser, which closed on April 15, 2016.

1.8.    "**Avoidance Actions**" shall mean any and all claims and causes of action of Debtor as of the Effective Date, arising under the Bankruptcy Code, including, without limitation, sections 544 through 551 and 553 thereof.

1.9.    "**Ballot**" shall mean the form or forms that will be distributed along with the Disclosure Statement to holders of Allowed Claims in Classes that are Impaired under the Plan and entitled to vote, which the holders of Impaired Claims may use to vote to accept or reject the Plan.

1.10.    "**Bankruptcy Case**" shall refer to the chapter 11 case initiated in the Bankruptcy Court by Debtor.

1.11.    "**Bankruptcy Code**" shall mean the Bankruptcy Reform Act of 1978, 11 U.S.C. §§ 101 et seq., as now in effect or hereafter amended.

1.12.    "**Bankruptcy Court**" shall mean the United States Bankruptcy Court for the Western District of Missouri, Kansas City Division.

1.13.    "**Bankruptcy Rules**" shall mean the Federal Rules of Bankruptcy Procedure, in accordance with the provisions of 28 U.S.C. § 2075, as now in effect or hereafter amended, and the local rules of the Bankruptcy Court, as now in effect or hereafter amended.

1.14.    "**Bar Dates**" shall mean the Claims Bar Date and the Rejection Claim Bar Date.

**1.15.** "**Beneficiaries**" shall mean those holders of Allowed Claims entitled to receive a distribution from the Liquidating Trust pursuant to the Plan and the Liquidating Trust Agreement.

**1.16.** "**Business Day**" shall mean any day other than a Saturday, Sunday or "legal holiday" as such term is defined in Bankruptcy Rule 9006.

**1.17.** "**Cash**" shall mean cash and cash equivalents, including, but not limited to, wire transfers, checks and other readily marketable direct obligations of the United States of America and certificates of deposit issued by banks.

**1.18.** "**Chapter 11 Case**" shall mean the Bankruptcy Case.

**1.19.** "**Claim**" shall mean a claim against Debtor, whether or not asserted, as defined in section 101(5) of the Bankruptcy Code.

**1.20.** "**Claims Bar Date**" shall mean October 3, 2016.

**1.21.** "**Claim Objection Deadline**" shall mean the date that is one hundred and twenty (120) days after the Effective Date, as such deadline may be extended from time to time in accordance with the Plan.

**1.22.** "**Class**" shall mean a category of holders of Claims or Interests, which are substantially similar in nature to each other, as classified pursuant to Article III of the Plan.

**1.23.** "**Class 2 Reserve**" shall have the meaning set forth in Article 7.3(c) of the Plan.

**1.24.** "**Closing**" shall mean the consummation and effectuation of the transactions contemplated by and pursuant to the terms and conditions of the APA.

**1.25.** "**Committee**" shall mean the Official Committee of Unsecured Creditors appointed in the Chapter 11 Case in accordance with § 1102, as reconstituted from time to time and existing as of the Confirmation Date.

**1.26.** "**Confirmation**" shall mean the entry of the Confirmation Order on the docket in the Chapter 11 Case.

**1.27.** "**Confirmation Date**" shall mean the date of entry of the Confirmation Order on the docket in the Chapter 11 Case.

**1.28.** "**Confirmation Hearing**" shall mean the hearing to confirm the Plan.

**1.29.** "**Confirmation Order**" shall mean the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

**1.30.** "**Conveyance Documents**" shall mean all documents necessary to effect and evidence the transfer of assets from Debtor to the Liquidating Trust in accordance with and as set forth in Article VI of the Plan.

4

**1.31.** "**Creditor**" shall mean any Person or Entity having a Claim against Debtor, including, without limitation, a Claim that arose on or before the Petition Date or a Claim against (or administrative expense of) Debtor's Estate of any kind specified in sections 502(g), 502(h), 502(i), or 503 of the Bankruptcy Code.

**1.32.** "**Debtor**" shall mean Mid-States Supply Company, Inc., a Missouri corporation, as debtor and debtor-in-possession in the Chapter 11 Case under §§ 1107 and 1108. Any reference to Debtor in the Plan or Disclosure Statement shall be read to include Debtor both before and after the Confirmation Date and the Effective Date, as applicable.

**1.33.** "**Disclosure Statement**" shall mean the disclosure statement with respect to the Plan, as approved by the Bankruptcy Court as containing "adequate information" in accordance with section 1125 of the Bankruptcy Code, including all exhibits and annexes thereto and any amendments or modifications thereof.

**1.34.** "**Disputed Claim**" shall mean any Claim (i) as to which an objection has been interposed on or before the Claim Objection Deadline and that has not been Allowed, (ii) that has been listed in the Schedules as disputed, contingent or unliquidated, and which has not otherwise been Allowed, or (iii) which is the subject of an Avoidance Action as contemplated by section 502(d) of the Bankruptcy Code.

**1.35.** "**Effective Date**" shall mean the date on which each of the conditions set forth in Article 9.2 of the Plan has been satisfied or waived.

**1.36.** "**Entity**" shall have the meaning set forth in section 101(15) of the Bankruptcy Code.

**1.37.** "**Estate**" shall mean the estate created for Debtor in the Bankruptcy Case pursuant to section 541 of the Bankruptcy Code.

**1.38.** "**Excluded Assets**" shall mean the assets excluded from the Asset Sale, as more fully described in section 2.3 of the APA.

**1.39.** "**Fee Claim**" means a claim under sections 328, 330(a), 503 or 1103 of the Bankruptcy Code for the compensation of a Professional for services rendered or expenses incurred in the Chapter 11 Case on or prior to the Effective Date (including expenses of the members of the Committee).

**1.40.** "**Fee Claim Reserve**" shall have the meaning set forth in Article 7.3(b) of the Plan.

**1.41.** "**Fee Claim Bar Date**" shall have the meaning set forth in Article 2.4 of the Plan.

**1.42.** "**File**," "**Filed**" or "**Filing**" shall mean file, filed or filing with the Bankruptcy Court in accordance with their respective procedures.

**1.43.** "**Final Order**" shall mean an order entered by the Bankruptcy Court or any other court exercising jurisdiction over the subject matter and the parties, as to which (i) no appeal,

WA 8804524.1

certiorari proceeding or other review or rehearing has been requested or is still pending, and (ii) the time for filing a notice of appeal or petition for certiorari or further review or rehearing has expired.

**1.44.** "**General Unsecured Claim**" shall mean any Claim against Debtor, other than an Administrative Claim, Fee Claim, Priority Tax Claim, Other Priority Claim, or Wells Fargo Subordinated Claim.

**1.45.** "**Impaired**" shall have the meaning set forth in section 1124 of the Bankruptcy Code.

**1.46.** "**Initial Distribution Date**" shall have the meaning set forth in Article 7.1 of the Plan.

**1.47.** "**Interest**" shall mean, with respect to Debtor, any legal or equitable interest in Debtor, including any ownership interest or right to acquire any ownership interest in Debtor.

**1.48.** "**Liens**" shall mean valid, enforceable and perfected liens, mortgages, security interests, pledges, charges, encumbrances, or other legally cognizable security devices of any kind.

**1.49.** "**Liquidating Trust**" shall mean the grantor trust that is created pursuant to the Plan to be administered by the Liquidating Trustee for the benefit of the Estate, as provided for in the Plan and the Liquidating Trust Agreement.

**1.50.** "**Liquidating Trustee**" shall mean Areya Holder, in her capacity as the trustee of the Liquidating Trust, with the duties described herein and in the Liquidating Trust Agreement.

**1.51.** "**Liquidating Trust Agreement**" shall mean the trust agreement for the Liquidating Trust as described in Article 6.3 of the Plan, substantially in the form attached as **Exhibit A**.

**1.52.** "**Other Priority Claim**" shall mean any Claim against Debtor, other than an Administrative Claim or Priority Tax Claim, entitled to priority in payment under section 507(a) of the Bankruptcy Code.

**1.53.** "**Person**" shall mean a natural person, or any legal entity or organization including, without limitation, any corporation, partnership (general or limited), limited liability company, business trust, unincorporated organization or association, joint stock company, trust, association, governmental body (or any agency, instrumentality or political subdivision thereof), or any other form of legal entity.

**1.54.** "**Petition Date**" shall mean February 7, 2016, the date upon which Debtor filed its chapter 11 petition with the Bankruptcy Court.

**1.55.** "**Plan**" shall mean this Chapter 11 Plan of Liquidation, all exhibits hereto, and any amendments or modifications hereof.

WA 8804524.1

**1.56.** "**Plan Supplement**" shall mean the supplemental appendix to the Plan filed with the Bankruptcy Court on or before five (5) days prior to the Voting Deadline.

**1.57.** "**Post-Effective Date Limited Notice List**" shall mean the notice list described and created pursuant to Article 11.17 of the Plan.

**1.58.** "**Preferred Equity Interest**" shall have the meaning set forth in section 1.1 of the APA as modified by the Sale Order.

**1.59.** "**Priority Claims Reserve**" shall have the meaning set forth in Article 7.3(d) of the Plan.

**1.60.** "**Priority Tax Claim**" shall mean any Claim for taxes against Debtor, including without limitation any interest and penalties due thereon, entitled to priority in payment pursuant to section 507(a)(8) of the Bankruptcy Code.

**1.61.** "**Professionals**" shall mean those Persons or Entities (i) employed pursuant to an order of the Bankruptcy Court in accordance with sections 327 or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to sections 327, 328, 329, 330 and 331 of the Bankruptcy Code, or (ii) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

**1.62.** "**Property**" means all property of Debtor's Estate, other than the Purchased Assets, of any nature whatsoever, real or personal, tangible or intangible, previously or now owned by Debtor, or acquired by Debtor's Estate, including, but not limited to, all property contemplated by section 541 of the Bankruptcy Code.

**1.63.** "**Pro Rata**" means, as of any distribution date, with respect to any Allowed Claim in any Class, the proportion that such Allowed Claim bears to the aggregate amount of all Claims, including Disputed Claims, in such Class.

**1.64.** "**Purchased Assets**" shall mean the assets acquired by Purchaser pursuant to the APA, as more fully described in section 2.1 of the APA.

**1.65.** "**Rejection Claim Bar Date**" means the later of (a) the Claims Bar Date or (b) 30 days after the date of the entry of an order authorizing the rejection of such contract or lease unless otherwise set forth in any order authorizing the rejection of an executory contract or unexpired lease.

**1.66.** "**Released Parties**" shall have the meaning set forth in Article 11.7 of the Plan.

**1.67.** "**Remaining Actions**" shall mean any and all claims or causes of action of Debtor and the Estate as of the Effective Date, whether arising under any contract, tort, the Bankruptcy Code, or other federal or state law, which are not included within the Purchased Assets, specifically including any claims of the Estate against Debtor's directors and/or officers, and all other adversary proceedings and lawsuits, together with all products and proceeds thereof.

**1.68.** "**Sale Order**" shall mean the Order (A) Approving Asset Purchase Agreement and Authorizing The Sale of Substantially All of the Debtor's Assets Outside the Ordinary Course of Business; (B) Authorizing The Sale of Assets Free and Clear of All Liens, Claims, Rights, Encumbrances and Other Interests Pursuant to Bankruptcy Code Sections 105, 363(B), 363(F) And 363(M); (C) Authorizing The Assumption, Assignment, and Sale of Certain Executory Contracts and Unexpired Leases Pursuant to Bankruptcy Code Sections 363 and 365; and (D) Granting Related Relief [Docket # 369].

**1.69.** "**Schedules**" shall mean Debtor's Schedules of Assets and Liabilities Filed pursuant to Bankruptcy Rule 1007, as they may be amended from time to time.

**1.70.** "**Secured Claim**" shall mean that portion of a Claim that is secured by a properly perfected Lien on Property.

**1.71.** "**Seller**" shall refer to Debtor, with respect to the Asset Sale.

**1.72.** "**Staple Street**" or "**Purchaser**" shall mean SSC Mid States Supply, Inc., a Delaware Corporation and the purchaser of substantially all of Debtor's assets pursuant to the APA.

**1.73.** "**Trust Advisory Board**" means the committee to be formed to oversee the Liquidating Trustee, to be comprised of three members of the Official Committee of Unsecured Creditors, as more fully described in the Liquidating Trust Agreement.

**1.74.** "**Trust Assets**" shall mean all assets and Property of Debtor transferred to the Liquidating Trust pursuant to the Plan and the Liquidating Trust Agreement, including, but not limited to, the Preferred Equity Interest (as defined in section 1.1 of the APA) (specifically excluding that portion of the said interest to be retained by Wells Fargo Bank), the Excluded Assets (as defined in section 2.2 of the APA), the Avoidance Actions, and the Remaining Actions, that certain Real Estate owned by Debtor in North Dakota, the Administrative Expense Carve-Out (as defined in the Sale Order) and all claims and causes of action asserted by the Committee as may be limited by the Sale Order. The Trust Assets shall specifically exclude the Wind-Down Carve-Out and the Committee Carve-Out (as described in the Sale Order).

**1.75.** "**Trust Expenses**" shall mean all costs and expenses incurred by the Liquidating Trustee and the Liquidating Trust to the extent reasonably necessary for, and consistent with, the liquidating purpose of the Liquidating Trust, including, but not limited to, any fees and expenses of the Liquidating Trustee's attorneys, accountants, and financial advisors, if any.

**1.76.** "**Trust Expense Reserve**" shall have the meaning set forth in Article 7.3(e) of the Plan.

**1.77.** "**Unimpaired**" shall mean any Claim that is not Impaired within the meaning of section 1124 of the Bankruptcy Code.

**1.78.** "**Voting Deadline**" shall mean the deadline established by order of the Bankruptcy Court for receipt of Ballots voting to accept or reject the Plan.

**1.79.** "**Wells Fargo Subordinated Claim**" shall mean any and all claims of Wells Fargo Bank, National Association, against Debtor or the Estate that remain after satisfaction of Well Fargo's secured claim pursuant to section 21 and 32 of the Sale Order.

**1.80.** "**Wind-Down Carve-Out**" shall mean the carve-out referred to in the Sale Order, the residual amount of which shall be paid to Wells Fargo Bank on the Effective Date pursuant to agreement between Debtor's counsel, Winter Harbor LLC, and Wells Fargo Bank, and shall not constitute Trust Assets.

All terms not expressly defined herein shall have the respective meanings given to such terms in section 101 of the Bankruptcy Code or as otherwise defined in applicable provisions of the Bankruptcy Code or in the Sale Order. The rules of construction set forth in section 102 of the Bankruptcy Code shall apply. Further, in computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

Unless otherwise specified herein, any reference to an Entity as a holder of a Claim or Interest includes that Entity's successors, assigns and affiliates.

## ARTICLE II
## METHOD OF CLASSIFICATION OF CLAIMS AND INTERESTS AND GENERAL PROVISIONS

**2.1.** **General Rules of Classification**. Generally, a Claim is classified in a particular Class for voting and distribution purposes only to the extent the Claim qualifies within the description of that Class, and is classified in another Class or Classes to the extent any remainder of the Claim qualifies within the description of such other Class or Classes. Unless otherwise provided, to the extent a Claim qualifies for inclusion in a more specifically defined Class and a more generally defined Class, it shall be included in the more specifically defined Class.

**2.2.** **Administrative Claims, Priority Tax Claims and Fee Claims**. Administrative Claims, Priority Tax Claims and Fee Claims are not classified in the Plan. The treatment of and consideration to be received by holders of Allowed Administrative Claims, Allowed Priority Tax Claims, and Allowed Fee Claims is set forth in Article IV of the Plan.

**2.3.** **Bar Date for Administrative Claims**. Unless otherwise ordered by the Bankruptcy Court, requests for payment of Administrative Claims, for the period from February 7, 2016, through and including the Effective Date, must be Filed and served on the Liquidating Trustee and counsel to the Liquidating Trustee no later than the date that is thirty (30) days after the Effective Date (the "Administrative Claim Bar Date"). Any Person that is required to File and serve a request for payment of an Administrative Claim and fails to timely File and serve such request, shall be forever barred, estopped and enjoined from asserting such Claim or participating in distributions under the Plan on account thereof. Any objections to requests for payment of Administrative Claims must be Filed and served on the requesting party, the Liquidating Trustee, and counsel to the Liquidating Trustee no later than the date that is ninety (90) days after the Effective Date, unless extended by the Bankruptcy Court.

**2.4.** **Bar Date for Fee Claims**. Unless otherwise ordered by the Bankruptcy Court, requests for payment of Fee Claims incurred for the period beginning February 7, 2016 through

and including the date the request for payment of Fee Claims are Filed must be Filed and served on the Liquidating Trustee, counsel to the Liquidating Trustee and the United States Trustee, no later than the date that is forty-five (45) days after the Effective Date (the "Fee Claim Bar Date"). Any Person that is required to File and serve a request for payment of a Fee Claim and fails to timely File and serve such request, shall be forever barred, estopped and enjoined from asserting such Fee Claim or participating in distributions under the Plan on account thereof.  Any objections to Fee Claims must be Filed and served on the requesting party, the Liquidating Trustee, counsel to the Liquidating Trustee, and the United States Trustee no later than the date that is sixty (60) days after the Effective Date, unless extended by the Bankruptcy Court.

## ARTICLE III
## CLASSIFICATION OF CLAIMS AND INTERESTS

**3.1.    Classes of Claims and Interests**.  The following is the designation of the Classes of Claims and Interests under the Plan:

(a)    Class 1 Claims shall consist of all Other Priority Claims.

(b)    Class 2 Claims shall consist of all General Unsecured Claims.

(c)    Class 3 Claims shall consist of the Wells Fargo Subordinated Claim, which is comprised of any and all deficiency claims of Wells Fargo Bank, National Association, after the application of any and all proceeds of its collateral, which such Class 3 Claims shall be subordinated to all Class 2 General Unsecured Claims.

(d)    Class 4 Interests shall consist of all Interests in Debtor.

## ARTICLE IV
## TREATMENT OF UNIMPAIRED CLAIMS

**4.1.    Fee Claims**.  Fee Claims are not classified under the Plan.  Except to the extent that the holder of an Allowed Fee Claim agrees otherwise, each holder of an Allowed Fee Claim shall be paid in respect of such Allowed Claim the full amount thereof, as approved by the Bankruptcy Court, in Cash, after the later of (i) Effective Date, and (ii) the date that is five (5) Business Days after the date on which such Fee Claim is approved by the Bankruptcy Court. With respect to Debtor's counsel, it has agreed to limit its Fee Claim so that it will not seek any payment from the Trust Assets and will only seek payment from the Wind-Down Carve-Out, as limited by its agreed budgeted amount thereunder to conclude this case.

**4.2.    Administrative Claims**.  Administrative Claims are not classified under the Plan. Except to the extent that the holder of an Allowed Administrative Claim agrees otherwise, each holder of an Allowed Administrative Claim shall receive in respect of such Allowed Claim either (i) the full amount of the Allowed Administrative Claim in Cash on the later of (a) the Effective Date and (b) the date on which such Administrative Claim becomes an Allowed Claim, or (ii) their Pro Rata Share of the Trust Assets after payment of the Fee Claims.  Unless otherwise provided by an order of the Bankruptcy Court, no fees or penalties of any kind shall be paid to the holders of Administrative Claims.

WA 8804524.1

**4.3.     Priority Tax Claims**.  Priority Tax Claims are not classified under the Plan.  Except to the extent that the holder of an Allowed Priority Tax Claim agrees otherwise, each holder of an Allowed Priority Tax Claim shall receive in respect of such Allowed Claim either (i) the full amount of the Allowed Priority Tax Claim in Cash on the later of (a) the Effective Date and (b) the date on which such Priority Tax Claim becomes an Allowed Claim, or (ii) their Pro Rata Share of the Trust Assets after payment of the Fee Claims and Allowed Administrative Claims.  Unless otherwise provided by an order of the Bankruptcy Court, no fees or penalties of any kind shall be paid to the holders of Priority Tax Claims.

**4.4.     Class 1 Other Priority Claims**.  Class 1 Other Priority Claims are Unimpaired.  Except to the extent that the holder of an Allowed Other Priority Claim agrees otherwise, each holder of an Allowed Other Priority Claim shall receive their Pro Rata share of the Trust assets after payment of the Fee Claims, Allowed Administrative Claims, and Priority Tax Claims and in the order specified in 11 U.S.C. § 507.  Unless otherwise provided by an order of the Bankruptcy Court, no fees or penalties of any kind shall be paid to the holders of Other Priority Claims.

**ARTICLE V**
**TREATMENT OF IMPAIRED CLAIMS AND INTERESTS**

**5.1.     Class 2 General Unsecured Claims**.  Class 2 General Unsecured Claims are Impaired.  The holders of Allowed General Unsecured Claims shall receive their Pro Rata share of the Trust Assets after payment of the Allowed Administrative Claims, Priority Tax Claims, Fee Claims, and Class 1 Other Priority Claims. Unless otherwise provided by an order of the Bankruptcy Court, no fees or penalties of any kind shall be paid to the holders of General Unsecured Claims.  The holders of Claims in this Class are entitled to vote.

**5.2.     Class 3 Subordinated Wells Fargo Claim**. The Class 3 Subordinated Wells Fargo Claim is Impaired.  The holder of Allowed Subordinated Wells Fargo Claim shall receive its Pro Rata share of the Trust Assets after payment of the Allowed Administrative Claims, Priority Tax Claims, Fee Claims, Class 1 Other Priority Claims, and Class 2 General Unsecured Claims. Unless otherwise provided by an order of the Bankruptcy Court, no fees or penalties of any kind shall be paid to the holder of the Class 3 Subordinated Wells Fargo Claim.  The holder of Claims in this Class is entitled to vote.  For the avoidance of doubt, reclamation claims are subordinate to the claims of Wells Fargo, which was not paid in full and has a deficiency claim after exhausting all collateral in which it had a security interest.

With respect to any other creditor that claims secured status, the sale of substantially all of the Debtor's assets was free and clear of all secured claims, with liens to attach to the proceeds as set forth in paragraph 21 of the APA.  Paragraph 21 of the APA provided that $800,000.00 was set aside for the payment of any amounts determined by the Bankruptcy Court to be due and owing to secured creditors other than Wells Fargo (the "Other Secured Indebtedness Set-Aside").  The APA also provided, however, that to the extent the Other Secured Indebtedness Set-Aside was insufficient to pay any amount determined by the Bankruptcy Court by final and non-appealable order to be allocated to any such other secured creditor, other than Wells Fargo, Wells Fargo agreed to pay the difference.  Wells Fargo has agreed with the following creditors, each of which has waived any claim against the estate (and agreed to withdraw any proofs of claim):  Ford Motor Credit; Bank of The West; Caterpillar;

CCA Financial; Marlin Business Bank; Toyota and U.S. Bank. As a result, to the extent that any claims filed by these creditors have not been withdrawn, they are deemed withdrawn. Wells Fargo also has resolved its claim with Raymond Leasing, but Raymond Leasing has preserved its right to assert a deficiency claim, subject to objection. Any other alleged secured claims are subject to objection, and neither Debtor nor the Committee believe they are allowed secured claims and/or claims superior to Wells Fargo's secured claim. Therefore, as to any such other alleged secured claim, Debtor and/or the Committee shall object to the secured status of any such claim, subject to further order of the Bankruptcy Court and they are not separately classified pursuant to the Plan.

      **5.3.    Class 4 Interests**.  Class 4 Interests are Impaired.  The holders of Class 4 Interests shall receive no distribution.  On the Effective Date, all Interests shall be deemed canceled, null and void and of no force and effect.  Accordingly, the holders of Class 4 Interests are deemed to reject the Plan and are not entitled to vote.

**ARTICLE VI**
**MEANS FOR IMPLEMENTATION OF THE PLAN**

      **6.1.    Corporate Action and Execution of Documents**.  On the Effective Date and automatically and without further action, (i) each existing member of the board of directors of Debtor and all members and officers of Debtor shall be deemed to have resigned, and (ii) the Liquidating Trustee shall be deemed the sole officer, director, member and shareholder of Debtor.  The Plan shall be administered by the Liquidating Trustee and all actions taken hereunder in the name of Debtor shall be taken through the Liquidating Trustee.

      Debtor shall deliver to the Liquidating Trustee all documents including, without limitation, the Conveyance Documents, and perform all actions reasonably contemplated with respect to implementation of the Plan.  The Liquidating Trustee shall be the authorized representative to execute on behalf of Debtor, in a representative capacity and not individually, any documents or instruments to be executed by Debtor after the Effective Date in order to consummate the Plan.

      **6.2.    Execution of the Liquidating Trust Agreement**.  The Liquidating Trust Agreement shall be executed by all necessary parties thereto on or before the Effective Date.  On the Effective Date, the Liquidating Trust shall be established and become effective without further order of the Bankruptcy Court.

      **6.3.    The Liquidating Trust**.  The Liquidating Trust established pursuant to the Liquidating Trust Agreement is established for the purpose of satisfying Allowed Claims by making distributions from the Trust Assets, through liquidation or distribution in kind as specified herein, net of all Trust Expenses, to the holders of Allowed Claims in accordance with the terms of the Plan.  The Liquidating Trust shall have no objective of continuing or engaging in any trade or business, and shall not conduct business activities, except to the extent reasonably necessary to, and consistent with, the aforementioned purpose of the Liquidating Trust.

      It is intended that the Liquidating Trust be classified for federal income tax purposes as a "liquidating trust" within the meaning of section 301.7701-4(d) of the Treasury Regulations.  All

12

parties shall treat the transfers in trust as if all the transferred assets, including all the Trust Assets, had been first transferred to the Beneficiaries and then transferred by the Beneficiaries to the Liquidating Trust. The Beneficiaries shall be treated for all purposes of the Internal Revenue Code as the grantors of the Liquidating Trust and the owners of the Liquidating Trust. All income of the Liquidating Trust shall be taxed directly to its Beneficiaries (except to the extent the IRS is a Beneficiary).

The parties hereto, including the Liquidating Trustee and the Beneficiaries, shall value the Property transferred to the Liquidating Trust consistently for all federal income tax purposes. The Beneficiaries (except to the extent the IRS is a Beneficiary) shall be responsible for payment of any taxes due with respect to the operations of the Liquidating Trust.

The Liquidating Trust shall terminate as provided in the Liquidating Trust Agreement. During its existence, the Liquidating Trust shall not retain Cash in excess of a reasonable amount necessary to meet Claims and contingent liabilities (including Disputed Claims) or to maintain the value of the Trust Assets and reserves during liquidation.

The Liquidating Trust shall distribute at least annually to the Beneficiaries, unless the Liquidating Trustee, in consultation with the Trust Advisory Board, determines that it is not cost effective to do so, all its net income and all the net proceeds from any liquidation of Trust Assets, less such net income or net proceeds reasonably necessary to maintain the value of the Trust Assets or to meet Claims or contingent liabilities (including Disputed Claims) or reserves. The Liquidating Trustee shall use its continuing good faith efforts to dispose of the Trust Assets, make timely distributions, and shall not unduly prolong the duration of the Liquidating Trust.

The Liquidating Trustee shall make timely filings of annual federal income tax returns reflecting all items of income, gain or loss, deductions or credits of the Liquidating Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a). Consistent with its status as a grantor trust, the Liquidating Trust shall not be, and the Beneficiaries shall be, responsible for the payment of their allocable portion of any federal income tax liability related to the operation of the Liquidating Trust.

**6.4.    Transfer of Trust Assets to the Liquidating Trust**. On or before the Effective Date, Debtor (or to the extent applicable, the Committee) shall convey and transfer all of the Trust Assets to the Liquidating Trustee on behalf of the Liquidating Trust. Debtor shall convey and transfer to the Liquidating Trustee, on behalf of the Liquidating Trust and for the benefit of the Beneficiaries as detailed in the Liquidating Trust Agreement, the Trust Assets, free and clear of all Claims and Liens. The Liquidating Trust shall receive the Trust Assets and the proceeds thereof. No later than the Effective Date, pending the receipt of any necessary approvals and consents, the Conveyance Documents shall be fully executed and delivered to the Liquidating Trust. Pending delivery of the Conveyance Documents to the Liquidating Trust and subject to any necessary regulatory approvals and/or servicing consents, the Liquidating Trustee, in its sole discretion, may take actions as are necessary to protect the Liquidating Trust's interests pursuant to the terms of the Liquidating Trust Agreement.

Except as provided herein, no asset of the Estate shall be deemed abandoned, and no cause of action shall be deemed released or compromised by or as a result of this Plan, its

confirmation, or its treatment of any Claim or Creditor.  Further, no defense, setoff, counterclaim or right of recoupment of Debtor, the Estate or the Liquidating Trustee shall be deemed waived or compromised.

**6.5.   Rights, Powers and Duties of the Liquidating Trustee**.  Except as may be provided elsewhere in the Plan, the Liquidating Trustee shall have the authority and be empowered to take all steps necessary to carry out its responsibilities under the Plan, including, but not limited to, making distributions with respect to the Trust Assets, through liquidation or distribution of such assets in kind as described herein, and investigating and prosecuting any Avoidance Actions and Remaining Actions.  The Liquidating Trustee shall also be vested with all rights, powers and benefits afforded to a "trustee" under sections 704 and 1106 of the Bankruptcy Code.  The Liquidating Trustee shall have standing to pursue any Avoidance Actions and Remaining Actions, and may assert any defense that may otherwise be asserted by a "trustee" under the Bankruptcy Code.

In exercising its rights and powers and carrying out its duties under the Plan and the Liquidating Trust Agreement, the Liquidating Trustee shall have the authority, upon the approval of the Trust Advisory Board, to retain such professionals (including, without limitation, disbursing and transfer agents, legal counsel and/or other agents or advisors) on the Liquidating Trustee's own behalf and on behalf of the Liquidating Trust, as the Liquidating Trustee deems appropriate, and to compensate such professionals from the Trust Assets on customary terms reasonably acceptable to the Liquidating Trustee, without any requirement of approval by the Bankruptcy Court, subject to the terms of the Liquidating Trust Agreement.  Professionals so retained are not required to be "disinterested persons" (as such term is defined in the Bankruptcy Code) and may include, without limitation, counsel or financial advisors to Debtor or Creditor Committee.

Except as expressly set forth herein, the Liquidating Trustee shall have discretion, subject to the approval of the Trust Advisory Board, to pursue or not to pursue any and all claims, rights, causes of action or defenses, as it determines are in the best interests of the Beneficiaries and consistent with the purposes of the Liquidating Trust.  In all circumstances and in furtherance of and consistent with the purpose of the Liquidating Trust and the Plan, the Liquidating Trustee shall act in the best interests of all Beneficiaries.

In addition to the foregoing, the Liquidating Trustee's powers, duties, responsibilities and obligations shall include, but not be limited to, those set forth in Article 4 of the Liquidating Trust Agreement.

**6.6.   Dissolution of Debtor**.  From and after the Effective Date, Debtor shall be deemed dissolved.  Debtor or the Liquidating Trustee, as the case may be, shall prepare all final tax returns and the Confirmation Order shall provide for the dissolution, and the Liquidating Trustee shall be the authorized signatory to execute the final tax returns and any other documents necessary to accomplish such dissolution.  The deemed dissolution is intended to be a liquidation pursuant to Section 10.9 of the APA.

**6.7.   Designation of Liquidating Trustee and Terms of Compensation**.  Upon the Effective Date, the Liquidating Trustee shall be appointed.  The Liquidating Trustee shall serve

WA 8804524.1

until it resigns or is replaced in accordance with the Liquidating Trust Agreement. As consideration for the Liquidating Trustee's services, the Liquidating Trustee shall receive the compensation set forth in the Liquidating Trust Agreement.

**6.8.    The Liquidating Trust's Authority to Prosecute Causes of Action**.  Upon creation, the Liquidating Trust will be vested with all right, title, and interest in any Avoidance Actions and Remaining Actions belonging to Debtor and the Committee, and any proceeds from such Avoidance Actions and Remaining Actions, whether from insurance or from any other source.  Pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, the Liquidating Trustee shall have full and exclusive authority, without need for any Bankruptcy Court approval, but subject to the terms of the Liquidating Trust Agreement and, as applicable, the consent of the Trust Advisory Board, to prosecute Avoidance Actions and the Remaining Actions.  The Liquidating Trustee may commence or continue, in any appropriate court or tribunal, any suit or other proceeding for the enforcement of such causes of action, and, if deemed appropriate by the Liquidating Trustee, to compromise, settle or abandon such litigation with, as applicable, the consent of the Trust Advisory Board.

The failure of Debtor to specifically list any Avoidance Action, Remaining Action, right of action, suit or proceeding in the Schedules, the Disclosure Statement, or in the Plan does not, and will not be deemed to, constitute a waiver or release by Debtor of such Avoidance Action, Remaining Action, right of action, suit or proceeding, and the Liquidating Trustee will retain the right to pursue them in its discretion, and, therefore, no preclusion doctrine, such as collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise) or laches will apply to such Avoidance Action, Remaining Action, right of action, suit or proceeding upon or after Confirmation or consummation of the Plan.  Further, recovery of any proceeds of such Avoidance Action, Remaining Action, right of action, suit or proceeding will be deemed "for the benefit of the Estate" as contemplated by section 550 of the Bankruptcy Code.

**6.9.    The Trust Advisory Board**.  On or before the Effective Date, the Trust Advisory Board shall be formed pursuant to the Liquidating Trust Agreement.

**6.10.    Investments**.  Subject to the terms and conditions of the Liquidating Trust Agreement, all Cash held by the Liquidating Trustee in any accounts or otherwise shall be invested in accordance with section 345 of the Bankruptcy Code, or as otherwise permitted by a Final Order of the Bankruptcy Court.

**6.11.    Resignation, Death or Removal**.  The Liquidating Trustee may resign, be removed, or be replaced only in accordance with the terms and conditions set forth in the Liquidating Trust Agreement, except as otherwise provided by an order of the Bankruptcy Court.

**6.12.    Winding Up Affair**s.  Following the Confirmation Date, Debtor shall not engage in any business activities or take any actions, except those necessary to effectuate the Plan and wind up the affairs of Debtor.  On and after the Effective Date, the Liquidating Trustee may, in the name of Debtor, take such actions without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than any restrictions expressly imposed by this Plan, the Liquidating Trust Agreement or the Confirmation Order.

**6.13.   Release of Liens**.   Except as otherwise provided herein or in any contract, instrument or other agreement or document created in connection herewith, on the Effective Date, all mortgages, deeds of trust, Liens or other security interests against the Property shall be released, and all the right, title and interest of any holder of such mortgages, deeds of trust, Liens or other security interests shall revert to the Liquidating Trustee on behalf of the Liquidating Trust.

**ARTICLE VII**
**DISTRIBUTIONS UNDER THE PLAN**

**7.1.   Distributions for Claims Allowed as of the Effective Date**.   Except as otherwise provided herein or as ordered by the Bankruptcy Court, and subject to the terms of the Liquidating Trust Agreement, distributions to be made on account of Claims that are Allowed Claims as of the Effective Date shall be made on the Effective Date or as soon thereafter as is practicable (the "Initial Distribution Date").   Any distribution to be made on the Effective Date pursuant to the Plan shall be deemed as having been made on the Effective Date if such distribution is made on the Effective Date or as soon thereafter as is practicable.   Any payment or distribution required to be made under the Plan on a day other than a Business Day shall be made on the next preceding Business Day.

**7.2.   Subsequent Distributions**.   Any and all distributions made after the Initial Distribution Date shall be made, subject to the reservation of adequate funds contemplated by Article 7.3 of the Plan, in consultation with the Trust Advisory Board, but in no event more than one year after the immediately preceding distribution date.

**7.3.   Reserve Accounts**.

(a)   Reserve for Administrative Claims.   On or as soon as practicable after the Effective Date, the Liquidating Trustee shall establish and maintain a reserve from the Cash on hand on the Effective Date for Administrative Claims that may be asserted prior to or on the Administrative Claims Bar Date (the "Administrative Claims Reserve").   If, when, and to the extent any such Administrative Claim becomes an Allowed Administrative Claim, the relevant portion of the Cash held in reserve therefor shall be distributed by the Liquidating Trustee to the holder of the Allowed Administrative Claim in a manner consistent with distributions to similarly situated Allowed Administrative Claims.   The balance of the Administrative Claim Reserve, if any, remaining after all Administrative Claims have been resolved and paid, shall be distributed to other holders of Allowed Claims pursuant to the terms of the Plan and Liquidating Trust Agreement.

(b)   Reserve for Fee Claims.   To the extent necessary, with the understanding that any Fee Claims of Debtor's counsel and Winter Harbor, LLC, if any, owing on the Effective Date shall be paid only to the extent budgeted in the Wind-Down Carve-Out, and not from the Trust Assets, on the Effective Date, and subject to paragraph 4.1, the Liquidating Trustee shall establish and maintain reserves for payment of estimated unpaid Fee Claims (the "Fee Claim Reserve").   For purposes of establishing the Fee Claim Reserve, Cash will be set aside from the Cash on hand on the Effective Date in an amount that Debtor and Committee anticipate will be incurred for fees and expenses by

WA 8804524.1

Professionals retained in the Chapter 11 Case up to and including the Effective Date. If, when, and to the extent any such Fee Claim becomes an Allowed Claim by Final Order, the relevant portion of the Cash held in reserve therefor shall be distributed by the Liquidating Trustee to the Professional as set forth in Article 4.3 of the Plan. The balance of the Fee Claim Reserve, if any, remaining after all Fee Claims have been resolved and paid, shall be distributed to other holders of Allowed Claims pursuant to the terms of the Plan and the Liquidating Trust Agreement. No payments or distributions shall be made on account of a Fee Claim until such Fee Claim is Allowed by Final Order.

(c)     Reserves for Disputed Class 2 General Unsecured Claims and Certain Costs. Prior to any distributions to the holders of Allowed Class 2 General Unsecured Claims, the Liquidating Trustee shall establish and maintain reserves for all Disputed Class 2 General Unsecured Claims (the "Class 2 Reserve"). With respect to such Disputed Class 2 General Unsecured Claims, if, when, and to the extent any such Disputed Class 2 Claim becomes an Allowed Class 2 General Unsecured Claim, the relevant portion of the Cash held in reserve therefor shall be distributed by the Liquidating Trustee to the Creditor in a manner consistent with distributions to similarly situated Allowed Class 2 General Unsecured Claims. The balance of the Class 2 Reserve, if any, remaining after all Disputed Class 2 General Unsecured Claims have been resolved shall be distributed to other holders of Allowed Claims pursuant to the terms of the Plan and the Liquidating Trust Agreement.

(d)     Reserves for Disputed Administrative, Priority Tax, and Other Priority Claims. On or as soon as practicable after the Effective Date, the Liquidating Trustee shall establish and maintain reserves for all Disputed Administrative, Priority Tax, and Other Priority Claims (the "Priority Claims Reserve"). With respect to such Disputed Administrative, Priority Tax, and Other Priority Claims, if, when, and to the extent any such Disputed Administrative, Priority Tax, and Other Priority Claims becomes an Allowed Administrative, Priority Tax, or Other Priority Claim, the relevant portion of the Cash held in reserve therefor shall be distributed by the Liquidating Trustee to the Creditor in a manner consistent with distributions to similarly situated Allowed Administrative, Priority Tax, and Other Priority Claims. The balance of the Priority Claims Reserve, if any, remaining after all Disputed Administrative, Priority Tax, and Other Priority Claims have been resolved, shall be distributed to other holders of Allowed Claims pursuant to the terms of the Plan and the Liquidating Trust Agreement.

(e)     Reserve for Trust Expenses. On the Effective Date or as soon as practicable after the Effective Date, the Liquidating Trustee shall, in consultation with the Trust Advisory Board, establish and maintain a reserve to be used to pay Trust Expenses (the "Trust Expense Reserve"). Upon the closing of the Chapter 11 Case, the Liquidating Trustee shall distribute any balance remaining in the Trust Expense Reserve to the holders of Allowed Claims in accordance with the Plan and the Liquidating Trust Agreement.

**7.4.     Objections to Claims**. Objections to Claims shall be Filed with the Bankruptcy Court and served upon each affected Creditor no later than one hundred and twenty (120) days after the Effective Date, provided, however, that this deadline may be extended by the

WA 8804524.1

Bankruptcy Court upon motion of the Liquidating Trustee, with notice to the Post-Effective Date Limited Notice List.  Notwithstanding the foregoing and except as otherwise provided in the Plan, unless an order of the Bankruptcy Court specifically provides for a later date, any proof of Claim Filed after the Confirmation Date shall be automatically disallowed as a late Filed Claim, without any action by the Liquidating Trustee, unless and until the party Filing such Claim obtains an order of the Bankruptcy Court, upon notice to the Liquidating Trustee and the Post-Effective Date Limited Notice List, that permits the late Filing of the Claim.  In the event any proof of Claim is permitted to be Filed after the Confirmation Date, the Liquidating Trustee shall have one hundred and twenty (120) days from the date of such order to object to such Claim, which deadline may be extended by the Bankruptcy Court upon motion of the Liquidating Trustee, with notice to the Post-Effective Date Limited Notice List.  Late-filed Claims are deemed to be prejudicial and shall not be allowed except as otherwise set forth herein.

Objections to Claims that are based upon the rejection of an executory contract or unexpired lease under Article 8.1 of the Plan shall be Filed with the Bankruptcy Court and served upon each affected Creditor no later than one hundred and twenty (120) days after the later of (a) the date that such proof of Claim is Filed, and (b) the Effective Date, unless extended by order of the Bankruptcy Court.

**7.5.    Settlement of Disputed Claims, Avoidance Actions and Remaining Actions**. Objections to Claims may be litigated to judgment or withdrawn, and may be settled with the approval of the Bankruptcy Court, except to the extent that such approval is not necessary as provided in this section.  After the Effective Date, and subject to the terms of the Plan, the Liquidating Trustee may settle any Disputed Claim, Avoidance Action, Remaining Action, or any other matter, where the asserted amount of the Disputed Claim, Avoidance Action, Remaining Action, or other matter is $100,000 or less, without providing any notice to any Creditor or other party-in-interest or obtaining an order from the Bankruptcy Court, provided, however, that the Trust Advisory Board may designate, in its sole discretion, such additional parameters as it deems necessary within which the Liquidating Trustee must seek approval for settlement of such Disputed Claims, Avoidance Actions, Remaining Actions and other matters. All proposed settlements of Disputed Claims, Avoidance Actions, Remaining Actions, or other matters where the asserted amount of the Disputed Claim, Avoidance Action, Remaining Action, or other matters exceeds $100,000 shall be subject to (a) the consent of the Trust Advisory Board in accordance with the Liquidating Trust Agreement, and (b) the approval of the Bankruptcy Court in accordance with the following procedure:  (1) the Liquidating Trustee shall give notice of the proposed settlement to the Post-Effective Date Limited Notice List; (2) the parties receiving notice shall have ten (10) days in which to File objections to the proposed settlement; (3) if no objections are timely Filed, the Liquidating Trustee may consummate such settlement without order of the Bankruptcy Court or may, at the Liquidating Trustee's election, request entry of an order approving the proposed settlement by Filing such proposed order under certificate of counsel with no further notice to any party; and (4) if objections are timely Filed, the Liquidating Trustee shall notice the proposed settlement for hearing upon at least five (5) Business Days' notice.

**7.6.    Unclaimed Property**.  If any interim distribution remains unclaimed for a period of ninety (90) days after it has been delivered (or attempted to be delivered) in accordance with the Plan to the holder entitled thereto, such unclaimed property, along with any subsequent

WA 8804524.1

distribution to be made in accordance with the Plan, shall be forfeited by such holder whereupon all right, title and interest in and to the unclaimed property shall be held in reserve by the Liquidating Trustee to be distributed to other holders of Allowed Claims in accordance with the terms of the Plan, the Liquidating Trust Agreement and this paragraph. Distributions unclaimed for a period of ninety (90) days after they have been delivered (or attempted to have been delivered) in accordance with the Plan to the holders entitled thereto that:  (i) are intended to be final distributions; and (ii) do not exceed $10,000 in the aggregate, shall, as soon thereafter as practicable, be donated to an organization designated by the Liquidating Trustee and officially recognized by the Internal Revenue Service as a charitable organization, a contribution which would be deductible for federal income tax purposes, in the name of the unsecured Creditors of Debtor; provided, however, that if the giving over of such unclaimed property under this section would result in a donation greater than $10,000 but less than $100,000 in the aggregate, the Liquidating Trustee must obtain leave of the Bankruptcy Court to make such donation; and provided further than if the giving over of such unclaimed property would result in a donation exceeding $100,000 in the aggregate, then such unclaimed property shall not be eligible for donation under this section, and the unclaimed property shall be held in reserve by the Liquidating Trustee to be distributed to other holders of Allowed Class 2 General Unsecured Claims in accordance with the Plan.

**7.7.    Withholding from Distributions**.  Any federal, state, or local withholding taxes or other amounts required to be withheld under applicable law shall be deducted from distributions hereunder.  All Persons holding Claims shall be required to provide any information necessary to effect the withholding of such taxes.  The Liquidating Trustee may withhold from amounts distributable to any Person or Entity any and all amounts, determined in the Liquidating Trustee's reasonable, sole discretion, to be required by any law, regulation, rule, ruling, directive, or other governmental requirement.

**7.8.    Fractional Cents**.   Any other provision of the Plan to the contrary notwithstanding, no payment of fractions of cents will be made.  Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding down of such fraction to the nearest whole cent.

**7.9.    Payments of Less than Twenty-Five Dollars**.   If, in the aggregate, Cash payments otherwise provided for by the Plan with respect to an Allowed Claim would be less than twenty-five ($25.00) dollars, notwithstanding any contrary provision of the Plan, the Liquidating Trustee shall not be required to make such payment and such funds shall be held in reserve by the Liquidating Trustee to be distributed to the holders of other Allowed Claims in accordance with the Plan and the Liquidating Trust Agreement.

**7.10.    Setoffs**.  Except as otherwise provided for herein, the Liquidating Trustee may, but shall not be required to, set off against any Claim and the payments to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever Debtor or the Estate may have against the Creditor, but neither the failure to do so nor the allowance of a Claim hereunder shall constitute a waiver or release by Debtor or the Estate of any claim they may have against the Creditor.

WA 8804524.1

## ARTICLE VIII
## UNEXPIRED LEASES AND EXECUTORY CONTRACTS

**8.1.    Rejection of Unexpired Leases and Executory Contracts**.  Any and all unexpired leases or executory contracts not previously rejected by Debtor, unless expressly assumed pursuant to orders of the Bankruptcy Court prior to the Confirmation Date, or the subject of a motion to assume or assume and assign pending on the Confirmation Date, shall be deemed rejected by Debtor effective as of the Confirmation Date, but subject to the occurrence of the Effective Date.

**8.2.    Proof of Claim for Rejection Damages**.  All proofs of Claim with respect to Claims arising from the rejection of executory contracts or unexpired leases shall, unless another order of the Bankruptcy Court provides for an earlier date, be Filed with the Bankruptcy Court on or before the Rejection Claim Bar Date.  Unless otherwise permitted by Final Order, any holder of such a Claim that does not File a timely Claim in accordance with this paragraph shall be forever barred from asserting such Claim against Debtor, its Estate or Property or the Liquidating Trust.

## ARTICLE IX
## CONDITIONS PRECEDENT TO CONFIRMATION
## AND EFFECTIVENESS OF THE PLAN

**9.1.    Conditions Precedent to Confirmation of the Plan**.  Confirmation shall not occur unless and until each of the following conditions has been satisfied or waived:

      (a)    The Bankruptcy Court shall have entered the Confirmation Order; and

      (b)    [Reserved].

**9.2.    Conditions Precedent to Effectiveness of the Plan**.  The Plan shall not become effective unless and until each of the following conditions has been satisfied or waived:

      (a)    The parties to the Liquidating Trust Agreement shall have executed the same;

      (b)    The Bankruptcy Court shall have entered the Confirmation Order; and

      (c)    The Confirmation Order shall have become a Final Order.

**9.3.    Waiver of Conditions**.  The Proponents may at any time, without notice or authorization of the Bankruptcy Court, waive the condition set forth in Article 9.2(c).  The failure of the Proponents to satisfy or waive such condition may be asserted by the Proponents regardless of the circumstances giving rise to the failure of such condition to be satisfied or waived (including any action or inaction by the Proponents).  The Proponents reserve the right to assert that any appeal from the Confirmation Order is moot after "substantial consummation" of the Plan, as that term is defined in section 1101(2) of the Bankruptcy Code.

WA 8804524.1

**9.4.     Effect of Failure of Condition**.   In the event that the condition specified in Article 9.2(c) of the Plan has not occurred or been waived on or before sixty (60) days after the Confirmation Date, the Confirmation Order may be vacated upon order of the Bankruptcy Court after motion made by Debtor or Committee, or any party-in-interest and an opportunity for parties-in-interest to be heard.

**ARTICLE X
RETENTION OF JURISDICTION**

**10.1.   Retention of Jurisdiction by the Bankruptcy Court**.   Following the Confirmation Date and until such time as all payments and distributions required to be made and all other obligations required to be performed under the Plan have been made and performed by the Liquidating Trustee and a final decree has been entered closing this Chapter 11 Case, the Bankruptcy Court shall retain jurisdiction as is legally permissible, including, without limitation, for the following purposes:

(a)     Claims.  To determine the allowance, classification, or priority of Claims against Debtor upon objection by the Liquidating Trustee or any other party-in-interest;

(b)     Injunction, etc.  To issue injunctions or take such other actions or make such other orders as may be necessary or appropriate to restrain interference with the Plan or its execution or implementation by any Person, to construe and to take any other action to enforce and execute the Plan, the Confirmation Order, or any other order of the Bankruptcy Court, to issue such orders as may be necessary for the implementation, execution, performance and consummation of the Plan and all matters referred to herein, and to determine all matters that may be pending before the Bankruptcy Court in the Chapter 11 Case on or before the Effective Date with respect to any Entity;

(c)     Professional Fees.  To determine any and all applications for allowance of compensation and expense reimbursement of Professionals for periods before the Effective Date, as provided for in the Plan;

(d)     Dispute Resolution.  To resolve any dispute arising under or related to the implementation, execution, consummation or interpretation of the Plan, Liquidating Trust Agreement and/or Confirmation Order and the making of distributions hereunder and thereunder, including, without limitation, any dispute concerning payment of Trust Expenses;

(e)     Executory Contracts and Unexpired Leases.  To determine the allowance of any Claims resulting from the rejection of executory contracts and unexpired leases, and any other issues with respect to the assumption or rejection of such contracts and leases;

(f)     Actions.  To determine all applications, motions, adversary proceedings, contested matters, actions, and any other litigated matters instituted in the Chapter 11 Case by or on behalf of Debtor or the Liquidating Trustee, including, but not limited to, the Avoidance Actions and the Remaining Actions;

WA 8804524.1

(g)   General Matters.   To determine such other matters, and for such other purposes, as may be provided in the Confirmation Order or as may be authorized under provisions of the Bankruptcy Code or as may be requested by the Liquidating Trustee;

(h)   Plan Modification.   To modify the Plan, under section 1127 of the Bankruptcy Code, to remedy any defect, cure any omission, or reconcile any inconsistency in the Plan or the Confirmation Order so as to carry out its intent and purposes;

(i)   Aid Consummation.   To issue such orders in aid of consummation of the Plan and the Confirmation Order notwithstanding any otherwise applicable non-bankruptcy law, with respect to any Person or Entity, to the full extent authorized by the Bankruptcy Code;

(j)   Protect Property.   To protect the Property from adverse Claims or interference inconsistent with the Plan, including to hear actions to quiet or otherwise clear title to such Property based upon the terms and provisions of the Plan;

(k)   Abandonment of Property.   To hear and determine matters pertaining to abandonment of Property;

(l)   Implementation of Confirmation Order.   To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

(m)   Asset Purchase Agreement.   To determine any issues or disputes arising under the APA;

(n)   Orders.   Resolve any cases, controversies, suits, or disputes that may arise in connection with the interpretation or enforcement of any orders entered by the Bankruptcy Court during the Chapter 11 Case;

(o)   Trust Assets.   To determine any issues or disputes relating to the Trust Assets; and

(p)   Final Decree.   To enter a final decree closing the Chapter 11 Case.

## ARTICLE XI
## MISCELLANEOUS PROVISIONS

**11.1.   Pre-Confirmation Modification**.   On notice to and opportunity to be heard by the United States Trustee, the Plan may be altered, amended or modified by the Proponents before the Effective Date as provided in section 1127 of the Bankruptcy Code.

**11.2.   Post-Confirmation Immaterial Modification**.   After the Confirmation Date and prior to substantial consummation of the Plan, as defined in section 1101(2) of the Bankruptcy Code, Proponents under section 1127(b) of the Bankruptcy Code, institute proceedings in the Bankruptcy Court to remedy any defect, cure any omission or reconcile any inconsistencies in

WA 8804524.1

the Plan, the Disclosure Statement, or the Confirmation Order, and such matters as may be necessary to carry out the purposes and effects of the Plan; provided, however, that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or order of the Bankruptcy Court.

**11.3.   Withdrawal or Revocation of the Plan**.  The Proponents reserve the right to revoke or withdraw the Plan prior to the Effective Date.  If the Proponents revoke or withdraw the Plan, then the Plan shall be deemed null and void.

**11.4.   Payment of Statutory Fees**.  All fees payable pursuant to section 1930 of title 28 of the United States Code shall be paid on the Effective Date (if due) or by the Liquidating Trustee when otherwise due out of the Trust Expense Reserve.

**11.5.   Role of the Committee**.  Upon the Effective Date, the Committee shall be dissolved for all purposes.

**11.6.   Successors and Assigns**.  The rights, benefits and obligations of any Person or Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of the heirs, executors, administrators, successors and/or assigns of such Persons or Entities.

**11.7.   Exculpation**. **Except as otherwise provided by the Plan or the Confirmation Order, on the Effective Date, Debtor, the Committee, the members of the Committee in their representative capacities, and/or any of such parties' respective current or former members, officers, directors, employees, advisors, attorneys, business consultants, representatives, financial advisors, investment bankers, fund managers or agents and any of such parties' successors and assigns (collectively, the "<u>Released Parties</u>") shall be deemed released by each of them against the other, and by all holders of Claims or Interests, of and from any claims, obligations, rights, causes of action and liabilities for any act or omission in connection with, or arising out of, the Chapter 11 Case, including, without limiting the generality of the foregoing, all sales of Property, the Disclosure Statement, the pursuit of approval of the Disclosure Statement, the pursuit of Confirmation of the Plan, the consummation of the Plan or the administration of the Plan or the property to be distributed under the Plan, except for acts or omissions which constitute willful misconduct, gross negligence, breach of fiduciary duty, or intentional fraud, and all such Persons, in all respects, shall be entitled to reasonably rely on the advice of counsel with respect to their duties and responsibilities in connection with Debtor's Chapter 11 Case and under the Plan.**

**11.8.   Injunction**.  **Except as otherwise provided in the Plan or an order of the Bankruptcy Court, on and after the Confirmation Date, all Entities who have held, hold or may hold Claims against or Interests in Debtor are, with respect to any such Claims or Interests, permanently enjoined, from:  (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting Debtor, the Liquidating Trust, the Liquidating Trustee or the Released Parties, or any of their property, or any direct or indirect transferee of any property of, or direct or indirect successor-in-interest to, any of the foregoing Entities; (b) enforcing,**

WA 8804524.1

**levying, attaching (including, without limitation, any pre-judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, of any judgment, award, decree or order against Debtor, the Liquidating Trust, the Liquidating Trustee, or the Released Parties, any of their property, or any direct or indirect transferee of any property of, or direct or indirect successor-in-interest to, any of the foregoing Entities; (c) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against Debtor, the Liquidating Trust, the Liquidating Trustee, or the Released Parties, or any direct or indirect transferee of any property of, or direct or indirect successor-in-interest to, any of the foregoing Entities; (d) asserting any right of setoff or subrogation of any kind, directly or indirectly, against any obligation due Debtor, the Liquidating Trust, the Liquidating Trustee, or the Released Parties, or any of their property, or any direct or indirect transferee of any property of, or successor-in-interest to, any of the foregoing Entities; and (e) taking any actions in any place and in any manner whatsoever that do not conform to or comply with the provisions of the Plan.**

**11.9.    Satisfaction of Claims**.  The treatment of and consideration to be received by holders of Allowed Claims pursuant to this Plan shall be in full satisfaction, settlement and release of such holders' respective Allowed Claims against Debtor.

**11.10.    No Liability for Solicitation or Participation**.  Pursuant to section 1125(e) of the Bankruptcy Code, Persons that solicit acceptances or rejections of this Plan, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, shall not be liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan.

**11.11.    Term of Injunctions and Stays**.  Unless otherwise provided herein or in another order of the Bankruptcy Court, all injunctions or stays provided for in the Chapter 11 Case pursuant to sections 105, 362 and 524 of the Bankruptcy Code, or otherwise, and in effect on the Confirmation Date shall remain in full force and effect until the Effective Date.

**11.12.    Cancellation of Instruments**.  Unless otherwise provided for herein, on the Effective Date, all promissory notes, instruments, indentures, agreements, or other documents evidencing, giving rise to, or governing any Claim against Debtor shall represent only the right, if any, to participate in the distributions contemplated by this Plan.  All shares, instruments or other evidences of any Interest in Class 4 that constitute Interests in Debtor shall be cancelled as of the Effective Date.

**11.13.    Preservation of Insurance**.  Debtor's release from and payment of Claims as provided in the Plan shall not diminish or impair the enforceability of any insurance policy that may cover Claims against Debtor (including, without limitation, their officers or directors) or any other Person or Entity.

**11.14.    Cramdown**.  To the extent any Impaired Class of Claims entitled to vote on the Plan votes to reject the Plan, Debtor reserves the right to request Confirmation of the Plan under section 1129(b) of the Bankruptcy Code with respect to such Class(es).

WA 8804524.1

**11.15.  Governing Law**.  Except to the extent that the Bankruptcy Code is applicable, and except as otherwise provided herein, the rights and obligations arising under the Plan shall be governed by and construed and enforced in accordance with the laws of the State of Missouri, without giving effect to rules governing the conflict of laws which would otherwise require the application of the law of another jurisdiction.

**11.16.  Notices**.  Any notice required or permitted to be provided under the Plan prior to the Effective Date shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery or (c) reputable overnight courier service, freight prepaid, to be addressed as follows:

Prior to the Effective Date, if to Debtor:

> Mid-States Supply Company, Inc.
> 1716 Guinotte Avenue
> Kansas City, MO 64120

with a copy to:

> Scott J. Goldstein
> Lisa A. Epps
> Eric L. Johnson
> Spencer Fane LLP
> 1000 Walnut Street, Suite 1400
> Kansas City, MO 64106
> Telephone: (816) 474-8100
> Facsimile: (816) 474-3216
> sgoldstein@spencerfane.com
> lepps@spencerfane.com
> ejohnson@spencerfane.com

Prior to the Effective Date, if to the Committee:

> Counsel for the Committee:
> Marcus A. Helt
> Thomas A. Scannell
> GARDERE WYNNE SEWELL LLP
> 2021 McKinney Avenue
> Suite 1600
> Dallas, TX 75201
> Telephone: (214) 999-3000
> Facsimile: (214) 999-4667
> mhelt@gardere.com
> tscannell@gardere.com

**11.17.  Post-Effective Date Notice**.  As of the Effective Date, there shall be a Post-Effective Date Limited Notice List.  Persons on such Post-Effective Date Limited Notice List will be given notices of, and a right to object to, certain matters under the Plan (as described

herein).  Any Person desiring to be included in the Post-Effective Date Limited Notice List must (1) File a request to be included on the Post-Effective Date Limited Notice List and include thereon its name, contact person, address, telephone number, e-mail address and facsimile number, within thirty (30) days after the Effective Date, and (2) concurrently serve a copy of its request to be included on the Post-Effective Date Limited Notice List on the Liquidating Trustee. On or before sixty (60) days after the Effective Date, the Liquidating Trustee shall compile a list of all Persons on the Post-Effective Date Limited Notice List and File such list with the Bankruptcy Court and serve a copy of such list on the U.S. Trustee.  The U.S. Trustee and the Trust Advisory Board shall be automatically included on the Post-Effective Date Limited Notice List and need not file a request to be included thereon.

**11.18.  Saturday, Sunday or Legal Holiday**.  If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

**11.19.  Section 1146 Exemption**.  Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer or exchange of any security under the Plan or the making or delivery of any instrument of transfer pursuant to, in implementation of, or as contemplated by, the Plan or the revesting, transfer or sale of any real or personal property of Debtor pursuant to, in implementation of, or as contemplated by, the Plan shall not be taxed under any state or local law imposing a stamp tax or similar tax or fee.

**11.20.  Severability**.  If any term or provision of the Plan is held by the Bankruptcy Court prior to or at the time of Confirmation to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as so altered or interpreted.   In the event of any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan may, at Debtor's and/or the Committee's option, remain in full force and effect and not be deemed affected.  However, the [Debtor and the Committee] reserve the right not to proceed to Confirmation or consummation of the Plan if any such ruling occurs.   The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**11.21.  Headings**.  The headings used in the Plan are inserted for convenience only and neither constitutes a portion of the Plan nor in any manner affect the provisions of the Plan.

**11.22.  Preservation of Causes of Action**.  The Liquidating Trustee shall retain all rights and all causes of action accruing to Debtor and its Estate, including but not limited to, those arising under sections 505, 544, 547, 548, 549, 550, 551, 553 and 1123(b)(3)(B) of the Bankruptcy Code and the claims asserted in any pending civil action, and further including all tax setoff and refund rights arising under section 505.  Except as expressly provided in this Plan or the Confirmation Order, nothing contained in this Plan, including the release and exculpation provisions thereof, or the Confirmation Order shall be deemed to be a waiver or relinquishment

WA 8804524.1

of any such rights or causes of action.  Nothing contained in this Plan, including the release and exculpation provisions thereof, or the Confirmation Order shall be deemed a waiver or relinquishment of any claim, cause of action, right of setoff, or other legal or equitable defense that Debtor has.  Debtor shall have, retain, reserve, and the Liquidating Trustee shall be entitled to assert, all such claims, causes of action, rights of setoff and other legal or equitable defenses that Debtor has as fully as if the Chapter 11 Case had not been commenced, and all of Debtor's legal and equitable rights respecting any claims, causes of action, rights of setoff and other legal or equitable defenses that are not specifically waived or relinquished by this Plan may be asserted after the Effective Date to the same extent as if the Chapter 11 Case had not been commenced.

**ARTICLE XII**
**CONFIRMATION REQUEST**

The Proponents hereby requests Confirmation of the Plan pursuant to sections 1129(a) and (b) of the Bankruptcy Code.

Respectfully submitted,

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF MID-STATES SUPPLY COMPANY, INC.**

s/ _____

Name:

Title:

**MID-STATES SUPPLY COMPANY, INC., DEBTOR AND DEBTOR-IN-POSSESSION**

s/ _____

Name:

Title:

WA 8804524.1

# LIQUIDATING TRUST AGREEMENT

This Liquidating Trust Agreement (the "Trust Agreement") dated as of the Effective Date of the Plan (as defined below) between (i) Mid-States Supply Company, Inc., and (ii) Areya Holder, as Liquidating Trustee (the "Liquidating Trustee"), is executed to facilitate the implementation of the *Chapter 11 Plan of Liquidation* (the "Plan"), which, among other things, provides for the establishment of the Liquidating Trust (the "Trust") to retain and preserve assets for the benefit of the holders of Allowed Administrative, Priority Tax, and Fee Claims in addition to the Allowed Claims in Classes 1, 2, and 3 under the Plan. The Trust is being established in connection with the liquidation of the Debtor pursuant to Section 10.9 of the APA (as defined in the Plan) and Section 6.6 of the Plan.

## ARTICLE I
## DEFINITIONS

Unless otherwise defined below, all capitalized terms contained herein shall have the respective meanings as specified in the Plan or in the Bankruptcy Code as in effect on the Effective Date:

1.1. **Definitions**. As used in the Plan, the following terms have the following meanings:

"Avoidance Actions" means all statutory causes of action preserved for the Estate under §§ 510, 542, 543, 544, 545, 547, 548, 549, 550, and 724(a) that Debtor or the Estate may have against any Person. Failure to list an Avoidance Action in the Plan does not constitute a waiver or release by Debtor, Committee, or the Liquidating Trustee of such Avoidance Action.

"Bankruptcy Court" means the United States District Court for the Western District of Missouri, Kansas City Division having jurisdiction over the Chapter 11 Case and, to the extent of any reference under 28 U.S.C. § 157, the bankruptcy unit of such District Court under 28 U.S.C. § 151.

"Beneficiaries" means, collectively, holders of the Allowed Class 2 General Unsecured Claims and the Allowed Class 3 Subordinated Wells Fargo Claim entitled to receive a distribution from the Liquidating Trust pursuant to the Plan and this Liquidating Trust Agreement.

"Causes of Action" means any and all actions, proceedings, causes of action, obligations, suits, judgments, damages, demands, debts, accounts, controversies, agreements, promises, liabilities, powers to avoid transfers, legal remedies, equitable remedies, and claims (and any rights to any of the foregoing) that belong to Debtor or its Estate as of the Effective Date that have been or may be asserted against any third party, whether core or non-core, reduced to judgment, not reduced to judgment, liquidated, unliquidated, known or unknown, foreseen or unforeseen, fixed, contingent, matured, unmatured, disputed, undisputed, then existing or thereafter arising, secured or unsecured, and whether asserted or assertable directly or derivatively or as a defense, counterclaim or cross-claim, in law, equity or otherwise including any recharacterization, subordination, avoidance or other claim, power or right arising under or pursuant to § 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of

WA 8804603.1

applicable state or federal law.  Causes of Action include (i) rights of setoff, counterclaim or recoupment, and claims on contracts or for breaches of duties imposed by law, (ii) the right to object to claims or interests, (iii) all non-bankruptcy law claims and defenses, whether in tort or based on a contract, including without limitation, fraud, negligent misrepresentations, intentional or negligent mismanagement, mistake, professional malpractice, duress and usury, (iv) Avoidance Actions, (v) claims for tax refunds, (vi) claims to recover outstanding accounts receivable, (vii) such claims and defenses as alter ego and substantive consolidation, and (viii) any other claims which may be asserted against third parties.

"Chapter 11 Case" means the case administered under Chapter 11 of the Bankruptcy Code in which Debtor is Debtor and debtor-in-possession, pending before the Bankruptcy Court.

"Claims" means, collectively, the Allowed Claims under the Plan.

"Disclosure Statement" means the *Disclosure Statement in Support of the Chapter 11 Plan of Liquidation* as approved by the Bankruptcy Court.

"Distribution" means the payment of Cash or transfer of property to the holders of Allowed Claims pursuant to the Plan.

"Distribution Date" means, with respect to all Claims, the date that is within ninety (90) days after the date on which the Liquidating Trustee determines in its sole and absolute discretion, that sufficient funds exist to (a) pay Allowed Claim of the highest priority of previously unpaid Claims and (b) deposit sufficient funds in the Distribution Reserve Account.

"Distribution Reserve Account" means an account established by the Liquidating Trustee to hold Cash reserved for the purpose of making Distributions to Disputed Claims if such Claims later become Allowed Claims. To the extent that the amount in the Distribution Reserve Account exceeds the amount necessary to pay the Allowed portion of originally Disputed Claims, that excess amount shall be redistributed pursuant to the Plan.

"Estate Property" means all rights, title, and interest in and to any property of every kind or nature owned by Debtor or the Estate as of the Effective Date, including generally all property covered and included by § 541.

"Estate" means the estate for Debtor created in the Chapter 11 Case in accordance with § 541.

"General Operating Account" means a separate trust account maintained by the Liquidating Trustee at a national banking association.

"Grantor" means Debtor.

"Liquidating Trust" means the Liquidating Trust created by this Trust Agreement.

"Liquidating Trustee" means the person named as such in the introductory paragraph of this Trust Agreement, as trustee, or any successor thereto appointed as provided herein.

WA 8804603.1

**EXHIBIT A**

**Page 2 of 19**

"Person" means any individual, corporation, partnership, limited liability company, limited liability partnership, joint venture, association, joint-stock company, trust, unincorporated association or organization, governmental agency or associated political subdivision.

"Plan" means the *Chapter 11 Plan of Liquidation* as confirmed by the Bankruptcy Court.

"Pro Rata" means a proportionate share, such that the ratio of the consideration distributed on account of an Allowed Claim or Equity Interest in a Class to the amount of such Allowed Claim or Equity Interest is the same as the ratio of the amount of the consideration distributed on account of all Allowed Claims or Equity Interests in such Class to the amount of all Allowed Claims or Equity Interests in such Class.

"Quarterly Report" means the unaudited written report and account mentioned in the Plan to be filed by the Liquidating Trustee with the Bankruptcy Court no later than thirty (30) days after the end of each quarter, and as soon as practicable after termination of the Liquidating Trust. This unaudited written report and account shall contain (a) the value of the Trust Assets and the amount of Liquidating Trust's liabilities at the beginning and end of each quarter or upon termination of the Liquidating Trust, as applicable; (b) all Distributions made by the Liquidating Trust during that quarter; and (c) any action taken and deemed material by the Liquidating Trustee, in its sole and absolute discretion, in the performance of its duties under the Plan and the Liquidating Trust Agreement that has not previously been reported.

"Schedules" means the schedules of assets and liabilities, the list of holders of interests, and the statements of financial affairs filed by Debtor under § 521 and Bankruptcy Rule 1007, as such schedules, list, and statements may have been or may be supplemented or amended from time to time.

"Trust Administrative Expenses" means all costs, expenses and fees, including, without limitation, all costs, expenses, and fees incurred by the Liquidating Trustee in employing attorneys, accountants, experts, consultants, advisors, investigators, or other professionals to represent or assist the Liquidating Trustee in carrying out the Liquidating Trustee's powers and duties under this Trust Agreement, incurred or reasonably estimated by the Liquidating Trustee in connection with (a) maintaining the Liquidating Trust and the Trust Assets, and (b) costs of compliance with applicable laws, and all sums payable hereunder to the Beneficiaries, Trust Advisory Board, and parties entitled to indemnification pursuant to this Trust Agreement.

"Trust Advisory Board" means the committee to be formed to oversee the Liquidating Trustee, to be comprised of three members of the Official Committee of Unsecured Creditors.

"Trust Assets" means all Estate Property not sold or otherwise disposed of or abandoned as of the Effective Date that is transferred to the Liquidating Trust under the Plan.

"Unimpaired Claims" means, collectively, holders of Administrative Claims, Priority Tax Claims, Fee Claims, and Class 1 Other Priority Claims that are Allowed and entitled to be paid in accordance with the Plan.

WA 8804603.1

**EXHIBIT A**
**Page 3 of 19**

## ARTICLE II
## ESTABLISHMENT OF TRUST

2.1.  **Declaration of Liquidating Trust**.  To declare the terms and conditions of the Liquidating Trust and in consideration of the Plan's confirmation pursuant to the Bankruptcy Code, Debtor has executed this Trust Agreement and hereby absolutely transfers and assigns to the Liquidating Trustee all of its right, title, and interest in and to the Trust Assets to have and to hold unto the Liquidating Trustee forever, in trust nevertheless, under and subject to the terms and conditions set forth herein, for the benefit of the Beneficiaries.

2.2.  **Purpose**.  The parties to this Trust Agreement hereby declare and agree that the Liquidating Trust is being established for the purpose of liquidating the Trust Assets and distributing the proceeds of such liquidation to the Beneficiaries, in accordance within the meaning of sections 671 *et seq.* of the Internal Revenue Code, with no objective to continue or engage in the conduct of a trade or business.  The Liquidating Trust shall not be deemed a successor-in-interest of Debtor for any purpose other than as specifically set forth herein.  The Liquidating Trust is intended to qualify as a "Grantors trust" for federal income-tax purposes and, to the extent permitted by applicable law, state and local income-tax purposes, with the Beneficiaries treated as Grantors and owners of the Liquidating Trust.

2.3.  **Liquidating Trustee's Acceptance**.  The Liquidating Trustee accepts its appointment as the Liquidating Trustee and the obligations and duties imposed on it by this Trust Agreement.  The Liquidating Trustee agrees to observe and perform those obligations and duties subject to the terms and conditions set forth herein.

2.4.  **Title to Trust Assets**.  From and after the Effective Date, pursuant to, and at such times set forth in, the Plan, title to and all rights and interests in the Trust Assets shall be transferred to the Liquidating Trust free and clear of all liens, Claims, encumbrances or interests of any kind in such property of any other Person (including all liens, Claims, encumbrances or interests of creditors of, or holders of Claims against or Interests in Debtor) in accordance with Sections 1123, 1141 and 1146(a) of the Bankruptcy Code, except as otherwise expressly provided for in the Plan, and the Liquidating Trustee, on behalf of the Liquidating Trust, shall receive the Trust Assets when they are transferred to the Liquidating Trust under the Plan.  The transfer of the Trust Assets to the Liquidating Trust by Debtor is made for the benefit and on behalf of the Beneficiaries.  Upon the transfer of the Trust Assets, the Liquidating Trustee succeeds to all of Debtor's and the Estate's right, title and interest in the Trust Assets and Debtor and the Estate will have no further right or interest in or with respect to the Trust Assets or this Liquidating Trust.

2.5.  **Reporting Of Transfer Of Trust Assets**.  For United States federal and applicable state income tax purposes, the transfer of the Trust Assets to the Liquidating Trust pursuant to, and in accordance with, the Plan shall be deemed to be, and shall be reported as, a disposition of the Trust Assets directly to, and for the benefit of, the Beneficiaries, for all purposes of the Internal Revenue Code (including, but not limited to, sections 61(a)(12), 483, 1001, 1012 and 1274), as provided for in the Plan in satisfaction of the Allowed Claims held by such Beneficiaries, immediately followed by a contribution of the Trust Assets by the Beneficiaries to the Liquidating Trust in exchange for the Beneficial Interests of the

WA 8804603.1

Beneficiaries.  Upon the transfer of the Trust Assets to the Liquidating Trust, neither Debtor nor the Estate will have any further interest in or with respect to the Trust Assets or the Liquidating Trust.  The Beneficiaries will be treated as the grantors and deemed owners of the Liquidating Trust.

2.6.     **Reservation of Bankruptcy Rights**.  To the full extent permitted by law, and without excluding or limiting other rights transferred to the Liquidating Trust, all rights under the Bankruptcy Code are preserved for the benefit of the Liquidating Trust and its Beneficiaries, and may be exercised by the Liquidating Trustee subject to the provisions hereof.

2.7.     **Preservation of Privileges**.  To the fullest extent permitted by law, Debtor will be deemed to irrevocably transfer to the Liquidating Trustee, as its legal successor, all rights of Debtor and the Estate (including the Estate after the Confirmation Date) to exercise or waive any attorney-client privilege, accountant-client privilege, work-product privilege or other privilege or immunity attaching to any documents or communications (whether written or oral) (collectively, the "Privileges"), and Debtor and the Liquidating Trustee are authorized to take all necessary actions to effectuate the transfer of the Privileges.  All such Privileges also shall vest in the Liquidating Trust and the Liquidating Trustee, to the fullest extent permitted by law.  This transfer is self-executing, provided however, that the Liquidating Trustee and Debtor are authorized and directed to take any and all necessary actions to effectuate the transfer of such Privileges.  After the Effective Date, the Liquidating Trustee shall have the exclusive power and authority to waive the Privileges.

2.8.     **No Assumption of Liabilities**.  The Liquidating Trustee, on behalf of the Liquidating Trust, shall receive the Trust Assets and agrees that all Trust Assets are being transferred, assigned and conveyed to the Liquidating Trust subject to no liabilities of Debtor or the Estate.

## ARTICLE III
## CONDUCT OF LITIGATION

3.1.     **Prosecution of Causes of Action, Defense of Counterclaims, and Settlements Thereof**.

(a)     The Liquidating Trustee shall be empowered to prosecute and settle any and all Causes of Action.

(b)     The Liquidating Trustee may settle any Causes of Action in accordance with this Trust Agreement and the Plan.

3.2.     **Status of Liquidating Trustee**. The Liquidating Trustee shall be the "Estate Litigation Claims Representative" as the sole authorized representative of the Estate from and after the Effective Date within the meaning of Section 1123(a)(5), (a)(7) and (b)(3)(B) of the Bankruptcy Code for purposes of administrating, investigating, litigating, and settling, the Causes of Action, and with respect thereto shall have all the rights and powers of Debtor and the Estate as provided for in the Bankruptcy Code with respect to the Liquidating Trust and the Trust Assets in addition to any rights and powers granted in this Agreement and in the Plan.  The

5

Liquidating Trustee shall be a party in interest as to all matters relating to the Trust Assets over which the Bankruptcy Court has jurisdiction.

### 3.3.  **Retention of Attorneys, Accountants, and Other Professionals**.

(a)     The Liquidating Trustee may retain such law firms as counsel to the Liquidating Trust as the Liquidating Trustee may select to address Claims, prosecute Causes of Action, and to perform such other functions as may be appropriate in furtherance of the intent and purpose of this Trust Agreement.

(b)     The Liquidating Trustee may retain such other experts, advisors, consultants, or other professionals as the Liquidating Trustee may deem necessary or appropriate to assist the Liquidating Trustee in carrying out its powers and duties under this Trust Agreement.

(c)     The Liquidating Trustee may commit the Liquidating Trust to and provide such professional persons or entities compensation and reimbursement from the Trust Assets for services rendered and expenses incurred.  The Liquidating Trustee shall make all reasonable and customary arrangements for payment or reimbursement of such compensation and expenses of the professionals (including, without limitation, negotiating schedules of payments, contingency fees, consenting to the withdrawal of professionals for non-payment of their fees, providing for substitution of professionals, etc.).  The Liquidating Trustee shall pay compensation and expenses due to professionals from the Trust Assets as Trust Administrative Expenses.

### 3.4.  **Exoneration and Protection**.

(a)     Third parties dealing with the Liquidating Trust shall look only to the Trust Assets to satisfy any liability incurred by the Liquidating Trust or the Liquidating Trustee to such parties.  Neither the Liquidating Trustee nor any Liquidating Trust Beneficiary shall be individually or personally liable to any third party for any expense, claim, damage, loss, obligation, or liability of or incurred by the Liquidating Trust or incurred in connection with the administration of the Liquidating Trust or by reason of this Trust Agreement or any action taken hereunder or as a result hereof.

(b)     In engaging in any activity or transaction, the Liquidating Trustee shall conduct the operations of the Liquidating Trust in such a manner as to protect the Beneficiaries against any liability for liabilities of the Liquidating Trust.

(c)     The Liquidating Trustee and each member of the Trust Advisory Board shall be entitled to be indemnified by and receive reimbursement from the Trust Assets for any expense, claim, damage, loss, obligation, or liability of or to which any Liquidating Trust Beneficiary may be subject by reason of this Trust Agreement or any action taken hereunder or as a result hereof.  The benefits of this Section 3.3(c) shall extend on the same terms to each officer and director of, and each person (if any) that controls, any indemnified party.

WA 8804603.1

## ARTICLE IV
## GENERAL POWERS, RIGHTS, AND OBLIGATIONS OF THE LIQUIDATING TRUSTEE

4.1.    **General Powers**. The Liquidating Trustee shall be vested with all the power and authority granted to a trustee pursuant to sections 1106(a) and 1123(b)(3)(B) of the Bankruptcy Code. In all circumstances, when dealing with the Liquidating Trust Assets, the Liquidating Trustee shall act as the fiduciary of the Beneficiaries.

4.2.    **Duties of the Liquidating Trustee**.  In particular, and without limitation, the Liquidating Trustee shall do the following:

(a)    carry out the terms of the Plan with respect to payments of the Beneficiaries and the Trust;

(b)    accept the Liquidating Trust Assets transferred and provided to the Liquidating Trust pursuant to the Liquidating Trust Agreement and the Plan;

(c)    pay Unimpaired Claims as provided in the Plan and this Liquidating Trust Agreement;

(d)    file any and all tax returns with respect to the Liquidating Trust and pay taxes properly payable by the Liquidating Trust, if any;

(e)    pay the fees, costs and expenses of the Liquidating Trust and Trust Advisory Board incurred after the Effective Date (without the necessity of Bankruptcy Court approval) including any insurance insuring the Liquidating Trustee or the Trust Advisory Board from the Liquidating Trust Assets as provided in the Plan and this Liquidating Trust Agreement;

(f)    perfect and secure its right, title and interest to any and all Liquidating Trust Assets;

(g)    act as custodian of the Liquidating Trust Assets and liquidate and reduce such assets to Cash at such times as the Liquidating Trustee deems appropriate to accomplish the purpose of the Liquidating Trust, in accordance with the Plan and this Liquidating Trust Agreement;

(h)    prosecute objections to Claims in its name or the name of Debtor as the Liquidating Trustee deems appropriate, subject to the approval of the Trust Advisory Board;

(i)    pursue Avoidance Actions and other Causes of Action and claims of the Estate pursuant to this Liquidating Trust Agreement and the Plan, including, without limitation, analyzing, resolving and, if necessary, prosecuting all known claims and Causes of Action that the Estate may have against third parties as the Liquidating Trustee deems appropriate, subject to the approval of the Trust Advisory Board;

WA 8804603.1

(j)      enter into and consummate agreements to liquidate the Trust Assets and such other agreements as the Liquidating Trustee deems appropriate;

(k)      enforce contract rights in favor of the Liquidating Trust as the Liquidating Trustee deems appropriate;

(l)      enter into modifications or terminate existing contracts as the Liquidating Trustee deems appropriate;

(m)     reject any Unexpired Leases and Executory Contracts, in accordance with the Plan;

(n)      make any and all distributions from the Trust Assets subject to the reservation of adequate funds, to holders of unpaid Allowed Claims as they become Allowed and to holders of Allowed Interests in accordance with the terms of the Plan and this Liquidating Trust Agreement;

(o)      comply with all applicable laws and file any returns or audits required by federal and state law or regulation;

(p)      pay amounts owed to the Office of the U.S. Trustee when due;

(q)      in the event that the Liquidating Trustee determines that the Beneficiaries or the Liquidating Trust may, will or have become subject to adverse tax consequences, take such commercially reasonable actions that will, or are reasonably intended to, alleviate such adverse tax consequences;

(r)      take any and all necessary actions as it shall deem appropriate to have the Liquidating Trust classified as a partnership for federal tax purposes under Treasury Regulations Section 301.7701-3 (but not a publicly traded partnership under Tax Code section 7704), including, if necessary, creating or merging in to a Missouri limited liability partnership or limited liability company that is so classified, in the event that the Liquidating Trust shall fail or cease to qualify as a liquidating trust within the meaning of Treasury Regulations Section 301.7701-4(d);

(s)      request any appropriate tax determination, including, without limitation, a determination pursuant to Section 505 of the Bankruptcy Code;

(t)      prepare the annual and final reports regarding the Liquidating Trust in accordance with the terms of the Plan and this Liquidating Trust Agreement;

(u)      consult with and report to the Trust Advisory Board;

(v)      in its capacity as Plan Agent and in accordance with the Plan and applicable nonbankruptcy law, may dispose of in accordance with applicable law or take such steps as may be necessary or appropriate to file with governmental or regulatory authorities any and all necessary documentation or filings in connection with the wind down and dissolution of Debtor and any non-debtor subsidiaries and branches; and

8                                                WA 8804603.1

**EXHIBIT A**
**Page 8 of 19**

(w)     take any and all other actions that may be necessary and appropriate to accomplish the purpose of and carry out the provisions of this Liquidating Trust Agreement and the Plan, including, without limitation, retaining and maintaining the books and records of Debtor and making such books and records available to other parties in interest, upon reasonable request.

4.3.    **Reserve Accounts**.

(a)     The Liquidating Trustee shall maintain separate reserve accounts in accordance with the Plan.

(b)     The Liquidating Trustee shall make any payments to the Unimpaired Claims through the reserve accounts as required under the Plan.

(c)     The Liquidating Trustee shall make distributions to the Beneficiaries as of the Initial Distribution Date and Subsequent Distribution Date, subject to the reservation of adequate funds, through reserve accounts as required under the Plan.

(d)     The Liquidating Trustee, in consultation with the Trust Advisory Board, shall pay Trust Administrative Expenses from the Trust Expense Reserve required to be maintained under the Plan and distribute any remaining balance in the Trust Expenses Reserve in accordance with the Plan.

4.4.    **Records to be Kept and Reports to be Filed by the Liquidating Trustee**.  The Liquidating Trustee shall maintain good and sufficient records of receipts, disbursements, and reserves of the Liquidating Trust.  Such books and records shall be open to inspection at reasonable times upon reasonable request by any Liquidating Trust Beneficiary.  Not later than thirty (30) days after the end of each quarter, and as soon as practicable after termination of the Liquidating Trust, the Liquidating Trustee shall file with the Bankruptcy Court a Quarterly Report.

4.5.    **Limitations on the Liquidating Trustee**. Notwithstanding anything contained herein to the contrary, the Liquidating Trustee shall not conduct any trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidating Trust. The Liquidating Trustee shall, on behalf of the Liquidating Trust, hold the Liquidating Trust out as a trust in the process of liquidation and not as an investment company. The Liquidating Trustee shall not engage in any investments or activities inconsistent with the treatment of the Liquidating Trust as a liquidating trust within the meaning of Treasury Regulations Section 301.7701-4(d) while the Liquidating Trust qualifies as a liquidating trust, provided, however, that if the Liquidating Trust (or a Missouri limited liability or limited liability partnership into which it shall be converted) shall be classified as a partnership for federal tax purposes under Treasury Regulations 301.7701-3, the foregoing restrictions shall not apply. The Liquidating Trustee shall not become a market-maker for the Liquidating Trust Interests or otherwise attempt to create a secondary market for the Liquidating Trust Interests. The Liquidating Trustee shall be restricted to the liquidation of the Liquidating Trust Assets on behalf, and for the benefit, of the Beneficiaries and the distribution and application of assets of the Liquidating Trust for the purposes set forth in this Liquidating Trust Agreement, the Plan and

WA 8804603.1

the Confirmation Order, and the conservation and protection of the assets of the Liquidating Trust and the administration thereof in accordance with the provisions of this Liquidating Trust Agreement, the Plan, and the Confirmation Order.

## ARTICLE V
## RIGHTS, POWERS, AND DUTIES OF LIQUIDATING
## TRUST BENEFICIARIES

5.1.    **Identification of Beneficiaries; Allocation of Interests**.

(a)    <u>Trust Beneficiaries</u>.  In accordance with the Plan, the Beneficiaries of the Liquidating Trust shall be the holders of Allowed Class 2 Claims and the Allowed Class 3 Claim entitled to receive a distribution from the Liquidating Trust pursuant to the Plan and the Liquidating Trust Agreement.

(b)    <u>Allocation of Interests</u>.  In accordance with the Plan, each Beneficiary entitled to receive a distribution from the Liquidating Trust pursuant to the Plan and the Liquidating Trust Agreement shall receive uncertificated beneficial interests in the Liquidating Trust (and which shall include any underlying or related economic or other interest within or as a part thereof), which beneficial interests solely shall entitle the holder thereof to the Distributions from the Trust Assets as provided for herein and in the Plan.

(c)    <u>Interests Beneficial Only</u>.  The ownership of a Beneficial Interest shall not entitle any Beneficiary to any title in or to the Trust Assets (which title shall be vested in the Liquidating Trustee) or to any right to call for a partition or division of the Trust Assets or to require an accounting or make any investment decision with respect to or in respect of the Trust Assets.

5.2.    **Evidence of Beneficial Interest**.  The beneficial interests of the Beneficiaries of the Liquidating Trust shall not be evidenced by any certificate, security, receipt or other writing. The Liquidating Trustee shall at all times maintain a register (the "**Register**") reflecting the names and addresses of all Beneficiaries and their respective Allowed Claims and amounts or percentages of beneficial ownership in Trust Assets.

5.3.    **Exemption from Registration**.  The Parties hereto intend that the rights of the Beneficiaries arising under this Trust Agreement shall not be "securities" under applicable law. But none of the Parties hereto represents or warrants that such rights shall not be treated as securities by Persons not a party to this Trust Agreement, nor do the Parties represent or warrant that such rights, if treated as securities, are exempt from registration under applicable securities laws.  Should such rights be treated as securities, however, the Parties intend for the exemption to registration provided section 1145 of the Bankruptcy Code to apply.

5.4.    **Transferability**.  Except as otherwise expressly provided in this Trust Agreement or in the Plan, all Distributions from the Liquidating Trust on account of Allowed Claims shall be made (or in the case of Disputed Claims, reserved on behalf of) to the holders of such Claims as determined as of the Effective Date.

WA 8804603.1

5.5.    **Distributions to the Beneficiaries.**

(a)    <u>Conditions to Distributions; Warranty of Entitlement</u>.  No Liquidating Trust Beneficiary shall be entitled to a Distribution from the Liquidating Trust unless and until such Liquidating Trust Beneficiary provides to the Liquidating Trustee such Liquidating Trust Beneficiary's tax-identification number.  Each and every Person who receives and accepts a Distribution from the Liquidating Trust on account of an Allowed Claim is deemed to have warranted to the Liquidating Trust and the Liquidating Trust Trustee that such Person is the lawful holder of the Allowed Claim, such Person is authorized to receive the Distribution, and that there are no outstanding commitments, agreements, or understandings, express or implied, that may or can, in any way, defeat or modify the Person's right to receive the Distribution.

(b)    <u>Withholding Taxes</u>.  Any federal, state or local withholding taxes or other amounts required to be withheld under applicable law in relation to a Distribution from the Liquidating Trust shall be deducted from the Distribution and remitted by the Liquidating Trustee to the applicable taxing authority(ies).  To the extent that this provision affects a Liquidating Trust Beneficiary, such Liquidating Trust Beneficiary shall provide to the Liquidating Trustee all such information as the Liquidating Trustee requires to comply with such law(s), and no Distribution shall be made to such Liquidating Trust Beneficiary unless and until such information is provided.

(c)    <u>Setoffs</u>.  The Liquidating Trustee may set off against any Claim and the payments or Distributions to be made pursuant to the Plan in respect of such Claim, any claim, right, or Cause of Action of any nature whatsoever that Debtor, the Estate, the Liquidating Trust, or the Liquidating Trustee may have against the holder of such Claim; *provided, however*, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by Debtor, or the Liquidating Trustee of any such claim, right, or Cause of Action that Debtor or the Estate may have against such holder.  Such setoffs shall not be subject to the requirements or restrictions of Bankruptcy Code section 553 concerning mutuality or when the respective items subject to setoff under this section of the Plan arose but shall be subject to the defenses and rights of the non-Debtors party.  The holder of a Disputed Claim that asserts a right of setoff will retain that right, subject to any defenses of Debtor, the Estate, the or the Liquidating Trustee until the earlier of the time when (a) the Disputed Claim becomes Allowed, in whole or in part, and (b) the Claim is Disallowed by a Final Order of the Bankruptcy Court.  Nothing contained in the Plan will constitute or be deemed a waiver of any claim, right, or Cause of Action that Debtor, the Estate, or Liquidating Trustee may have against any Person in connection with or arising out of any Claim.

(d)    <u>Forms of Distributions</u>.  Any Cash payment to be made from the Liquidating Trust pursuant to this Trust Agreement and the Plan may be made by check or wire transfer, at the option of the Liquidating Trustee in its sole and absolute discretion.

(e)    <u>Delivery of Distributions</u>.  Subject to Bankruptcy Rule 9010, Distributions to holders of Allowed Claims shall be made pursuant to the Plan and at the address of

WA 8804603.1

each such holder as set forth on the proofs of Claim filed by such holders (or at the last known address of such a holder, per the Schedules or records, if no proof of Claim is filed or if Debtor has been notified in writing of a change of address).  If any Distribution is returned as undeliverable, no further Distributions to such holder shall be made unless and until the Liquidating Trustee, or its designee, is notified in writing of such holder's then-current address; at which time, all missed Distributions shall be made to such holder without interest.  Amounts in respect of undeliverable Distributions made through the Liquidating Trustee shall be returned to the Liquidating Trustee until such Distributions are claimed.  All claims for undeliverable Distributions shall be made in writing to the Liquidating Trustee on or before the first anniversary of the returned Distribution.  After such date, all unclaimed property shall revert to the Liquidating Trustee or any successor thereto, and the Claim of any holder with respect to such property shall be discharged and forever barred.  The Liquidating Trustee may employ or contract with other entities to assist in or make the Distributions required under the Plan.  The Liquidating Trustee and its agents and professionals are under no duty to take any action to either attempt to locate any holder of a Claim, or obtain an executed Internal Revenue Service Form W-9 from any holder of a Claim.

(f)    <u>Fractional Cents; <em>De Minimis</em> Distributions</u>.  Notwithstanding any other provision of the Plan, payments of fractions of cents will not be made.  Whenever any payment of a fraction of a cent under the Plan would otherwise be called for, the actual payment made will reflect a rounding down of the fraction to the nearest whole cent. The Liquidating Trustee will not make any payment of less than twenty-five dollars ($25.00) on account of any Allowed Claim, and the Liquidating Trustee shall hold any such payment in reserve.

(g)    <u>Interim and Final Distributions to the Beneficiaries</u>.  The Liquidating Trustee may make interim and final Distributions in accordance with the Plan.

(h)    <u>Disputed Distributions</u>.  If a dispute arises as to the rightful owner of an Allowed Claim, thereby calling into question the rightful recipient of a Distribution from the Liquidating Trust, the Liquidating Trustee may, in lieu of making the Distribution, either (i) deposit the Distribution into the Distribution Reserve Account until a determination is made as to the rightful owner of the Distribution by the Bankruptcy Court or by written agreement between each of the Persons making claim to the Distribution, or (ii) interplead the Distribution into the registry of the Bankruptcy Court or such other court having jurisdiction over the disputed Distribution and the Persons making claim to such Distribution, reserving the right to assert any and all claims that the Liquidating Trust/Liquidating Trustee may have in relation to such interpleader action.

WA 8804603.1

## ARTICLE VI
## GENERAL OBLIGATIONS OF THE GRANTOR

6.1.  **Cooperation.**

(a)  The Grantor shall reasonably provide the Liquidating Trustee with such access to its books and records as the Liquidating Trustee shall reasonably require for the purpose of performing its duties and exercising its powers hereunder.

(b)  The Grantor shall use its reasonable efforts to cause its former employees to be reasonably available as witnesses and to be available for such depositions, interviews, and other proceedings as the Liquidating Trustee shall reasonably deem necessary or appropriate in connection with the performance of its duties. The Grantor shall be entitled to reimbursement for reasonable out-of-pocket expenses incurred in connection with the foregoing as Trust Administrative Expenses.

(c)  The Grantor shall execute and deliver to the Liquidating Trustee such power of attorney and other documents satisfactory to the Liquidating Trustee to enable the Liquidating Trustee to file pleadings and execute any documents as necessary or appropriate to prosecute the Causes of Action and defend any counterclaims.

## ARTICLE VII
## THE LIQUIDATING TRUSTEE

7.1.  **Liquidating Trustee Not a Liquidating Trust Beneficiary**. The Liquidating Trustee may not be a Liquidating Trust Beneficiary.

7.2.  **Resignation**. The Liquidating Trustee may resign as such by executing and delivering an instrument in writing to the Trust Advisory Board. In the event of its resignation, the Liquidating Trustee shall give at least sixty (60) days' notice of such resignation to the Trust Advisory Board. Such resignation will not be effective until expiration of that sixty-day notice period; *provided, however*, that the Liquidating Trustee shall continue to serve as Liquidating Trustee after resignation until such resignation is effective under this paragraph or appointment of a successor Liquidating Trustee by the Bankruptcy Court, whichever occurs earlier.

7.3.  **Removal**. For cause shown, the Trust Advisory Board may remove and replace the Liquidating Trustee upon filing a motion with the Bankruptcy Court and after notice and hearing.

7.4.  **Appointment of Successor Liquidating Trustee**. The Liquidating Trustee must continue to serve as the Liquidating Trustee until its death or incompetency (in the case of a Liquidating Trustee that is a natural person), dissolution (in the case of a Liquidating Trustee that is a corporation or other entity), resignation, or removal by the Bankruptcy Court. Such appointment shall specify the date on which such appointment shall be effective. Every successor Liquidating Trustee appointed hereunder shall execute, acknowledge, and deliver to the Trust Advisory Board and to the retiring Liquidating Trustee an instrument accepting such appointment, and thereupon such successor Liquidating Trustee, without any further act, deed, or

WA 8804603.1

conveyance, shall become vested with all the rights, powers, trusts, and duties of the retiring Liquidating Trustee.

7.5.   **Trust Continuance**.  The death or incompetency (in the case of a Liquidating Trustee that is a natural person), dissolution (in the case of a Liquidating Trustee that is a corporation or other entity), resignation, or removal of the Liquidating Trustee shall not operate to terminate the Liquidating Trust created by this Trust Agreement or to revoke any existing agency created pursuant to the terms of this Trust Agreement or invalidate any action theretofore taken by the Liquidating Trustee.  In the event of the resignation or removal of the Liquidating Trustee, such Liquidating Trustee shall promptly (a) execute and deliver such documents, instruments, and other writings as may be requested by the Trust Advisory Board or reasonably requested by the successor Liquidating Trustee to effect the termination of the Liquidating Trustee's capacity under this Trust Agreement and the conveyance of the Trust Assets then held by the Liquidating Trustee to his successor; (b) deliver to the Trust Advisory Board or the successor Liquidating Trustee all documents, instruments, records, and other writings related to the Liquidating Trust as may be in the possession of the Liquidating Trustee; and (c) otherwise assist and cooperate in effecting the assumption of its obligations and functions by such successor Liquidating Trustee.

7.6.   **Compensation**.  To maximize the dollar amount of Trust Assets available for Distributions on account of Allowed Claims, the Liquidating Trustee shall be compensated as follows:

(a)     A flat rate of $[_____] per month; and

(b)     A commission equal to [_____] of all disbursements paid pursuant to the terms and conditions of the Plan, less the balance of the funds in the registry of the Court on the Effective Date.

In addition, the Liquidating Trustee shall be reimbursed 100% of all expenses incurred in the fulfillment of its duties pursuant to the Plan and the Liquidating Trust Agreement.  The Liquidating Trustee may receive compensation and expense reimbursements on a quarterly basis at any time before the Liquidating Trust is terminated.

7.7.   **Standard of Care; Exculpation**.  The Liquidating Trustee shall perform the duties and obligations imposed on the Liquidating Trustee by this Trust Agreement with reasonable diligence and care under the circumstances.   Along with its agents and representatives, the Liquidating Trustee shall not be personally liable, however, to the Liquidating Trust or to any Liquidating Trust Beneficiary except for their own acts that are judicially determined to be fraudulent or willful misconduct or gross negligence.  Except as aforesaid, the Liquidating Trustee shall be defended, held harmless, and indemnified from time to time from the Trust Assets as a Trust Administrative Expense against any and all losses, claims, costs, expenses, and liabilities (including legal costs and expenses), and any costs of defending any action to which the Liquidating Trustee may be subject by reason of the Liquidating Trustee's execution in good faith of its duties under this Trust Agreement.  The Liquidating Trustee's agents and representatives may be likewise defended, held harmless, and indemnified.  The Liquidating Trustee may obtain for its benefit, the benefit of its agents and

14

representatives, and the benefit of the Liquidating Trust, at the expense of the Liquidating Trust, as a Trust Administrative Expense, insurance against claims of liability, damage awards, and settlement.

7.8.    **Reliance by Trustee**.  The Liquidating Trustee may rely, and shall be fully protected personally in acting on, any resolution, statement, certificate, instrument, opinion, report, notice, request, consent, order, or other instrument or document that it has no reason to believe to be other than genuine and to have been signed or presented other than by the proper party or parties or, in the case of digital facsimile transmissions, to have been sent other than by the proper party or parties, in each case without obligation to satisfy itself that the same was given in good faith and without responsibility for errors in delivery, transmission, or receipt.  In the absence of its willful misconduct or gross negligence, the Liquidating Trustee may rely as to the truth of statements and correctness of the facts and opinions expressed therein and shall be fully protected personally in acting thereon.  The Liquidating Trustee may consult with legal counsel and shall be fully protected in respect of any action taken or suffered by it in accordance with the written opinion of legal counsel.

# ARTICLE VIII
# THE TRUST ADVISORY BOARD

8.1.    **Trust Advisory Board**.  On the Effective Date, a Trust Advisory Board shall be established and continue for the purpose of monitoring and overseeing: (a) the implementation of the Plan; (b) the Claims objection-and-resolution process; (c) the Distribution process, and (d) the pursuit and settlement of Causes of Action.  The Liquidating Trustee shall consult with the Trust Advisory Board on a quarterly basis or as otherwise agreed by the Liquidating Trustee and the Trust Advisory Board.  The Trust Advisory Board shall continue to exist until such time as either the Trust Advisory Board deems it appropriate by a majority vote to dissolve itself or all members of the Trust Advisory Board resign; *provided, however*, that the Trust Advisory Board shall be dissolved no later than the date on which the Final Decree is entered.

8.2.    **Approval of the Trust Advisory Board**.  Notwithstanding anything in this Agreement to the contrary, the Liquidating Trustee shall submit to the Trust Advisory Board for its review and prior approval the following matters and any other matters that the Trust Advisory Board may direct the Liquidating Trustee to submit for its approval or that expressly require the approval of the Trust Advisory Board pursuant to the terms of this Agreement:

(a)    Any proposed final settlement or disposition in connection with a Trust Asset that has an asserted value of less than $250,000 net of defenses, if any, which have been demonstrated to the reasonable satisfaction of the Liquidating Trustee; provided, that the Liquidating Trustee will be authorized and empowered to take such action without any further (i) action by the Trust Advisory Board or (ii) order of the Bankruptcy Court, after at least four business days written notice to the members of the Trust Advisory Board  and either (A) no objection is received from any member of the Trust Advisory Board  or (B) subject to a further written agreement between the Liquidating Trustee and the Trust Advisory Board;

15

(b)      Any proposed final settlement or disposition in connection with the litigation or any other Trust Asset that has an asserted value of equal to or more than $250,000 net of defenses, if any, which have been demonstrated to the reasonable satisfaction of the Litigation Trustee;

(c)      Any transaction to sell, assign, transfer or abandon any other Trust Assets in which the amount of the transaction exceeds such amount as may be determined from time to time by the Trust Advisory Board;

(d)      Determinations of the amounts of the Trust Assets available for distribution;

(e)      Determinations of the date and amount of all distributions made;

(f)      Any determinations to retain attorneys, accountants or other professionals;

(g)      Any determinations to initiate lawsuits or proceedings other than objections to disputed claims;

(h)      Any actions that would give rise to or alleviate adverse tax consequences to the Liquidating Trust or the Beneficiaries; and

(i)      The reports and budgets described in Section 4.4.

8.3.    **Review of Books and Records**.  The Trust Advisory Board shall have the right to review all books and records maintained by the Liquidating Trustee in the administration of the Liquidating Trust.  Upon reasonable request, the Liquidating Trustee shall make all such books and records available to the Trust Advisory Board.

8.4.    **Resignation**.  A member of the Trust Advisory Board may resign in such capacity by executing and delivering an instrument in writing to the Liquidating Trustee and each of the remaining members of the Trust Advisory Board evidencing such resignation.

8.5.    **Initial Members.**  The initial members of the Trust Advisory Board shall be Xavier D. Jordan, Andrew Hodges, and [_____].

8.6.    **Successor Members**.  In the event of the death or resignation of a member of the Trust Advisory Board, the remaining members of the Trust Advisory Board shall have the authority to, and shall promptly, appoint a successor member to the Trust Advisory Board (who holds or is serving as the representative of a Person that holds an Allowed General Unsecured Claim in the Bankruptcy Case).  Upon the appointment of a successor member to the Trust Advisory Board, the Trust Advisory Board shall promptly notify the Liquidating Trustee of such appointment.  In the event of an inability to find a successor member willing to serve and the remaining members are less than three, then the Trust Advisory Committee shall be disbanded.

WA 8804603.1

## ARTICLE IX
## RETENTION OF JURISDICTION

9.1.    **Bankruptcy Court Jurisdiction.** The Bankruptcy Court shall retain original but not exclusive jurisdiction over the Causes of Action and counterclaims, the Liquidating Trust, the Liquidating Trustee, and the Trust Assets, including, without limitation, the determination of all controversies and disputes arising under or in connection with this Trust Agreement.

## ARTICLE X
## TERMINATION

10.1.    **Duration of Liquidating Trust**.  The Liquidating Trust shall continue to exist until the Liquidating Trustee has (a) administered all Trust Assets and made a final Distribution to the Beneficiaries, and (b) performed all other duties required by the Plan and the this Trust Agreement.

## ARTICLE XI
## MISCELLANEOUS

11.1.    **Notices**.  All notices, requests, or other communications required or permitted to be made in accordance with this Trust Agreement shall be (i) in writing, (ii) served on the parties at the addresses set forth below by certified mail, return-receipt requested, hand delivery, overnight delivery, first-class mail, or fax transmission, and (iii) deemed to have been given or made when actually delivered or received:

If to the Liquidating Trustee, at:

> Areya Holder
> Liquidating Trustee
> 800 West Airport Freeway, Suite 800
> Irving, Texas 75062

If to the Trust Advisory Board, at:

> Xavier D. Jordan
> Trust Advisory Board
> Cameron International Corp.
> 1333 West Loop South, Suite 1700
> Houston, Texas 77027

> and

> Andrew Hodges
> Trust Advisory Board
> Lamons Gasket Company
> c/o TriMas Corporation
> 39400 Woodward Ave., Suite 130
> Bloomfield Hills, Michigan 48304

WA 8804603.1

**EXHIBIT A**
**Page 17 of 19**

If to the Beneficiaries, then to such Persons at their respective addresses set forth in the Register.

Any Person may change the address at which it is to receive notices under this Trust Agreement by furnishing written notice in accordance with the provisions of this Section 11.1(b) to the Liquidating Trustee.

11.2.  **Effectiveness**.  This Trust Agreement shall become effective on the Effective Date.

11.3.  **Counterparts**.  This Trust Agreement may be executed in one or more counterparts, each of which shall be deemed an original but which together shall constitute but one and the same instrument.

11.4.  **Governing Law**.  This Trust Agreement shall be governed by, construed under, and interpreted in accordance with the laws of the State of Missouri.

11.5.  **Headings**.  Sections, subheadings, and other headings used in this Trust Agreement are for convenience only and shall not affect the construction of this Trust Agreement.

11.6.  **Severability**.  Any provision of this Trust Agreement which is prohibited or unenforceable in any jurisdiction shall not invalidate the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable any such provision in any other jurisdiction.

11.7.  **No Waiver**.  The failure or delay on the Liquidating Trustee's to exercise any right or remedy conferred on his pursuant to this Trust Agreement shall not affect such right or remedy, nor shall it constitute the Liquidating Trustee's waiver of such a right or remedy. Similarly, the resort to one form of remedy by the Liquidating Trustee shall not constitute a waiver of any alternative remedies available to them under this Agreement.

11.8.  **Modification of Agreement.**  This Trust Agreement may only be amended, modified or otherwise altered by an instrument in writing signed by each of the Parties and approved by the Bankruptcy Court.

11.9.  **Successors**.  This Trust Agreement shall bind and inure to the benefit of the Beneficiaries and the parties hereto and their respective successors and assigns; provided, however, that the benefits hereunder may not be assigned or otherwise transferred by any Liquidating Trust Beneficiary other than (a) to any relative, spouse, or relative of the spouse of such holder; (b) to any trust or estate in which such holder has a majority of the beneficial interest (excluding contingent interests); (c) to any corporation, partnership, or other organization in which such holder is the beneficial owner of a majority of the voting securities or equity interest, or which owns a majority of the voting securities or beneficial interest of such holder; and (d) upon the death or dissolution of such holder in accordance with the operation of law; provided, however, that any such transfer shall be effected in compliance with the Securities Act of 1933, as amended, and the rules and regulations of the Securities and Exchange Commission thereunder, and any other applicable federal or state securities law.

18

WA 8804603.1

**EXHIBIT A**
**Page 18 of 19**

11.10.  **Inconsistency with the Plan**.  In the event of any inconsistency between the Plan and any provision of this Trust Agreement, the applicable terms of the Plan shall be controlling.

**IN WITNESS WHEREOF**, the parties hereto have executed this Trust Agreement or caused this Trust Agreement to be duly executed by their respective officers thereunto duly authorized as of the day and year first above written.

Dated: November ___, 2016

_____

By:_____

Name:_____

Title:_____


**LIQUIDATING TRUSTEE:**


By:_____

19

WA 8804603.1